UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL SWOPE, | ) | |
|     PLAINTIFF | ) | CIVIL ACTION NO.: |
| | ) | 4:12-cv-832-CDP |
| VS. | ) | |
| | ) | |
| CREDIT MANAGEMENT, LP, and | ) | JURY TRIAL DEMAND |
| CHARTER COMMUNICATIONS, | ) | |
|     DEFENDANTS | ) | |

## AMENDED COMPLAINT-CLASS ACTION

### INTRODUCTION

1.   The Telephone Consumer Protection Act, 47 U.S.C. §227(b) ("TCPA"), restricts the use of automated equipment and prerecorded voice messages to dial cellular telephones. Calls to cell phones using predictive dialing equipment are prohibited unless the caller or creditor has the "prior express consent" of the called party to make the automated calls.

2.   At some point in or before October 2010, defendant Charter Communications ("Charter") hired debt collection agency defendant Credit Management, LP ("Credit Management") to collect alleged debts. As part of its efforts to collect debts on behalf of Charter, Credit Management made thousands of debt collection calls, including dozens of calls to plaintiff, who is a non-debtor and has no relationship with Credit Management at all.

3.   Under these circumstances, according to the Federal Communications Commission ("FCC"), Charter is treated as if it had made the calls itself, and both Charter and Credit Management are liable for calls. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 565, (¶10), *available at* 2008 WL 65485 (Jan. 4, 2008).

4. The TCPA was designed to prevent calls like these, and to protect the privacy of citizens like plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

5. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

6. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

7. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act ... is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

8. Plaintiff seeks statutory damages of between $500 and $1,500 per violation for herself and the class, a declaration that defendants violated the TCPA, and an injunction prohibiting future violations.

**VENUE AND JURISDICTION**

9. This Court has federal question jurisdiction because this case arises out of violation of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. Venue and personal jurisdiction in this District are proper because a substantial portion of the events complained of occurred in this District. Furthermore, both defendants regularly transact business in this District.

**PARTIES AND PERSONAL JURISDICTION**

4. Plaintiff Cheryl Swope is a natural person and a citizen of the State of Missouri who resides in the County of Ste. Genevieve, State of Missouri. Plaintiff's cellular telephone number is (314) xxx-1106. The calls to plaintiff were made while she resided here.

5. Defendant Credit Management, LP (hereinafter referred to as "CMLP") is believed to be a New York corporation operating from an address located at 4200 International Parkway, Carrollton, TX 75007-1912 and doing business in the State of Missouri. Upon information and belief, CMLP has no registered agent in the State of Missouri.

6. Defendant Charter Communications is a telecommunications company that is publically traded. Its headquarters are in St. Louis, Missouri.

**FACTS**

7. Defendant CMLP has been calling plaintiff's cell phone in attempts to collect an alleged debt from someone named Kevin Koper.

8. Most calls made by CMLP to plaintiff were made during 2010 and 2011, and most or all of them were made through use of a predictive dialer. At least five included unattended messages that had been recorded ahead of time, and automatically played when plaintiff answered.

9. CMLP made the calls to plaintiff's cell phone on behalf of, and at the direction of, Charter.

10. The prerecorded messages CMLP included the following statement:

> **"this call is for Kevin Koper. If you are not Kevin Koper, you will have a few moments to disconnect."**

11. Plaintiff's phone service was provided by Tracfone, and she incurred a charge for each call and minute expended as a result of these calls.

12. Each time she heard this message, plaintiff disconnected as instructed by the message, and in order to avoid incurring further minutes.

13. During the relevant time period, it was the practice of defendant CMLP to obtain phone numbers from sources other than from the persons it was calling.

14. For example, CMLP regularly used "skip trace" services to obtain phone numbers for debtors who were difficult to locate.

15. Using skip trace services is not a violation of the TCPA, nor is obtaining cell phone numbers from sources other than from the called party, such as the Internet or the white pages.

16. Calling cell phone numbers obtained through use of skip tracing or similar services is *not* a violation of the TCPA in-and-of-itself, as long as no "automatic telephone dialing system" or "artificial or prerecorded voice" is used. 47 U.S.C. §227(b)(1)(A)(iii).

17. However, after it skip traced telephone numbers or obtained them from sources other than from the party it was calling, CMLP sometimes loaded those numbers into its predictive dialer without first obtaining consent to call them. That is what it did with respect to plaintiff and the class.

18. Defendants violated the TCPA even if they were only negligent. Plaintiff alleges alternatively that defendants' violations were willful or knowing.

19. Defendants should be enjoined from committing similar violations in the future.

20. Plaintiff and the class have been substantially damaged by the illegal phone calls. Plaintiff was charged for each call, her privacy was improperly invaded and she was inconvenienced and forced to deal with unwanted telephone calls.

## COUNT I – TCPA

21. Plaintiff incorporates all previous paragraphs.

22. Defendants violated the TCPA by placing automated calls to plaintiff and the class members' cell phones.

## CLASS ALLEGATIONS

23. Plaintiff brings this claim on behalf of a class, consisting of:

All persons nationwide whose cell phone either defendant called using an automatic telephone dialing system and/or artificial or prerecorded voice, where the phone number was obtained from some source other than from the called party, for example, where either defendant's records show that the number called was obtained through skip tracing, the Internet or captured by equipment from an inbound call.

24.     The class is so numerous that joinder of all members is impractical.

25.     It was CMLP's practice to obtain phone numbers from sources other than from the called party, such as skip tracing in 2010 and 2011.

26.     Plaintiff's claims are typical of those of the class members. Everyone was called using the same dialing equipment, and each received similar prerecorded messages.

27.     There are questions of law and fact common to the class which predominate over any questions affecting only individual class members.  The predominant common questions include:

    a.     Whether defendants' equipment and prerecorded messages are covered by the TCPA; and

    b.     Damages, including whether the violations were negligent, willful or knowing.

28.     Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action for the class.

29.     A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

30.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    A.    Statutory damages;

    B.    An injunction against further violations;

    C.    A declaration that defendant's equipment and messages are regulated by the TCPA;

    D.    Costs of suit;

    E.    Reasonable attorney's fees as part of a common fund, if any;

    F.    Such other or further relief as the Court deems just and proper.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

/s/ Cheryl Swope
**Cheryl Swope**

## HEALEY LAW, LLC

/s/ Robert T. Healey
Robert T. Healey
EDMO # 34138MO
Attorney at Law
640 Cepi Drive, SuiteA
Chesterfield, MO 63005
Telephone:    (636) 536-5175
Fax:    (636) 590-2882
Email:    bob@healeylawllc.com

and

**BURKE LAW OFFICES, LLC**

<u>/s/  Alexander H. Burke</u>
Alexander H. Burke
155 N. Michigan Ave.
Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Fax: (312) 729-5289
Email: aburke@burkelawllc.com
Co-Counsel for Plaintiffs