MANATT, PHELPS & PHILLIPS, LLP
BECCA WAHLQUIST (State Bar No. 215948)
E-mail:  bwahlquist@manatt.com
LYDIA M. MENDOZA (State Bar No. 247916)
E-mail: lmendoza@manatt.com
JUDD GRUTMAN (State Bar No. 275304)
E-mail:  jgrutman@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Defendant
DIRECTV, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY BROWN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, LLC, THE CMI GROUP, INC., THE CMI GROUP, LLC, and CREDIT MANAGEMENT, LP,<br><br>Defendants. | Case No.  2:13-cv-01170-DMG-E<br><br>(PUTATIVE CLASS ACTION COMPLAINT)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECTV'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT<br><br>Hearing Date:    December 13, 2013<br>Time:                 9:30 a.m.<br>Place:                Courtroom 7<br><br>Hon. Dolly M. Gee |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   PROCEDURAL AND FACTUAL BACKGROUND ................................ 3

III.  LEGAL ARGUMENT:  THIS COURT SHOULD STRIKE
      PORTIONS OF THE FAC PURSUANT TO RULE 12(F) ........................ 5

      A.    The Class Allegations Should Be Stricken Because The Class Is
            "Fail-Safe" And Depends On Individual Inquiries To Ascertain
            Membership ................................................................................ 6

      B.    It Is Clear From The Complaint And A Relevant Federal Statute
            That Class Treatment Will Not Be Superior ................................ 10

            1.    The TCPA Itself Demonstrates That Class Treatment Of
                  Plaintiff's Action Is Not Superior ...................................... 11

            2.    Class Treatment Cannot Be Superior When DIRECTV Is
                  Prohibited by Federal Statute From Disclosing
                  Information To Plaintiff That Would Be Necessary To
                  Identify The Members Of Her Proposed Class ................... 13

IV.   PLAINTIFF LACKS ARTICLE III STANDING TO SEEK
      INJUNCTIVE RELIEF, AND THE REQUEST FOR THIS REMEDY
      IN THE PRAYER FOR RELIEF SHOULD BE STRICKEN ................... 18

V.    CONCLUSION ......................................................................... 20

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

i

MEMORANDUM  IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

# TABLE OF AUTHORITIES

**Page**

## CASES

*Balthazor v. Central Credit Services, Inc.*,
  No. 10-62435-CIV, 2012 WL 6725872 (S.D. Fla., Dec. 27, 2012)...................10

*Brazil v. Dell, Inc.*,
  585 F.Supp.2d 1158 (N.D. Cal. 2008)..................................................................7

*California ex rel. State Lands Comm'n v. United States*,
  512 F.Supp. 36 (N.D. Cal. 1981)...................................................................3, 5

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ..............................................................................................9

*Collins v. Gamestop Corp.*,
  No. C10-1210 TEH, 2010 WL 3077671 (N.D. Cal., Aug. 6, 2010)...................5

*Deitz v. Comcast Corp.*,
  C 06-06352 WHA, 2006 WL 3782902 (N.D. Cal., Dec. 21, 2006)..................19

*Dish Network LLC v. Fun Dish, Inc.*,
  1:08CV1540, 2012 WL 4322605 (N.D. Ohio, Sept. 20, 2012) ........................15

*Forman v. Data Transfer, Inc.*,
  164 F.R.D. 400 (E.D. Pa. 1995) .........................................................................9

*G.M. Sign, Inc. v. Franklin Bank, SSB*,
  Case No. 06 C 9492007, WL 4365359 (N.D. Ill., Dec. 13, 2007)...................10

*Gannon v. Network Telephone Services, Inc,*.
  No. CV 12-9777-RGK, 2013 WL 2450199 (C.D. Cal., June 5, 2013)...........8, 9

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................6

*Gene & Gene LLC v. BioPay LLC*,
  541 F.3d 318 (5th Cir. 2008)..............................................................................9

*Genenbacher v. CenturyTel Fiber Co. II*,
  244 F.R.D. 485 (C.D. Ill. 2007).........................................................................8

*Goldie's Bookstore, Inc. v. Superior Court of State of California*,
  739 F.2d 466 (9th Cir. 1984) ............................................................................18

*Heffelfinger v. Electronic Data Systems Corp.*,
  No CV-07-00101 MMM, 2008 WL 8128621 (C.D. Cal., Jan. 7, 2008).............7

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

ii

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO. 2:13-CV-01170-DMG-E

1

2

# TABLE OF AUTHORITIES
## (continued)

Page

3

4

*Hicks v. Client Services, Inc.*,
   No. 07-61822-CIV, 2008 WL 5479111 (S.D. Fla., Dec. 11, 2008)..............9, 10

5

*Hovsepian v. Apple, Inc.*,
   No. 08-5788 JF, 2009 WL 5069144 (N.D. Cal., Dec. 17, 2009) .........................5

6

7

*In re Intel Laptop Battery Litig.*,
   C 09-02889 JW, 2011 WL 7290487 (N.D. Cal., Apr. 7, 2011) .........................18

8

9

*Kenro, Inc. v. Fax Daily, Inc.*,
   962 F.Supp. 1162 (S.D. Ind. 1997) ....................................................................9

10

*Levitt v. Fax.com*,
   No. WMN–05–9492007, WL 3169078 (D. Md., May 25, 2007) ......................9

11

12

13

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
   CV 11-2113-ODW FMOX, 2012 WL 2529404 (C.D. Cal., July 2, 2012)
   *aff'd*, 520 F. App'x 505 (9th Cir. 2013) ............................................................19

14

*Mazur v. eBay Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009) .......................................................................7

15

16

*Meyer v. Portfolio Recovery Associates*,
   707 F.3d 1036 (9th Cir. 2012) (as amended December 28, 2012)......................6

17

*Mims v. Arrow Financial Services, L.L. C.*,
   132 S.Ct. 740 (2012) ........................................................................................12

18

19

*Sanders v. Apple, Inc.*,
   672 F.Supp.2d 978 (N.D. Cal. 2009)..................................................................5

20

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746 JF, 2009 WL 4723366 (N.D. Cal., Dec. 4, 2009) .........................1

21

22

*Thorpe v. Abbott Labs., Inc.*,
   534 F.Supp.2d 1120 (N.D. Cal. 2008)..............................................................5,6

23

*Tietsworth v. Sears Roebuck & Co.*,
   720 F.Supp.2d 1123 (N.D. Cal. 2010)................................................................5

24

25

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996)...........................................................................11

26

27

*Vandervort v. Balboa Capital Corp.*,
   287 F.R.D. 554 (C.D. Cal. 2012) ......................................................................7

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Walsh v. Nevada Dept. of Human Resources,*
  471 F.3d 1033 (9th Cir. 2006) ................................................................. 19

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) ............................................................................... 18

*Younger v. Harris,*
  401 U.S. 37 (1971) ................................................................................. 19

*Zeisel v. Diamond Foods, Inc.,*
  No. C10-01192 JSW, 2011 WL 2221113 (N.D. Cal., June 7, 2011) .................. 7

*Zinser v. Accufix Research Inst., Inc.,*
  253 F.3d 1180 *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th
  Cir. 2001) ............................................................................................. 11

## STATUTES

Satellite Home Viewers Extension and Reauthorization Act of 2004
  ("SHVERA"), Pub. L. No. 108-447, 118 Stat. 2809, 3393 (codified at 47
  U.S.C. § 338, *et seq.*) .................................................... 11, 13, 14, 15

## OTHER AUTHORITIES

Remarks of Senator Hollings, 137 Cong. Rec. S16204-01 (1991) ........... 12, 13, 17

## RULES

Fed. Rule Civ. Proc. 12(f) .......................................................................... 5

Fed. Rule Civ. Proc. 23 .............................................. 6, 7, 9, 10, 11, 17

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO. 2:13-CV-01170-DMG-E

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Jenny Brown ("Plaintiff") has repeatedly tried to define a certifiable class, but simply cannot do so.  After meeting and conferring with DIRECTV on her Third Amended Complaint ("TAC"),  Plaintiff recognized that by defining her class as those who had not provided "prior express consent" to be called, her proposed class was an unascertainable, improper "fail safe" class because it carved out all putative members for whom DIRECTV had a complete defense.  Plaintiff therefore received permission to file a Fourth Amended Complaint ("FAC").  The FAC seeks to avoid the obvious ascertainability and fail-safe problems merely by excising the word "consent" from the class definition.  Plaintiff now says her class would be persons who received collections calls related to debts owed on a DIRECTV account, but "who did not provide their cellular phone numbers on an initial application for DIRECTV services."  *See* FAC [Dkt. 122], ¶ 55. However, merely redlining the ***word*** "consent" out of the definition does not fix the fundamental problem because consent is inextricably intertwined in Plaintiff's TCPA claims.  To determine if a person is or is not a member of Plaintiff's class, it is imperative to examine on an individual basis the following:  did the person provide the number (consent) or did she not (no consent).  Plaintiff's effort to "hear no evil, see no evil" by deleting the word "consent" does not hide the fact that actual and final membership in her proposed class will not be certain until after DIRECTV's proof of consent for each potential class member has been evaluated.

Because membership inherently depends on whether or not a person "consented" to be called, the FAC still proposes to move forward on behalf of an amorphous class.  A plaintiff whose **fourth** complaint still fails to define an ascertainable class should not be permitted to drag a company through the massive expense of resources and fees involved in defending itself on a classwide basis. *See, e.g., Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

1

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

4723366, *14 (N.D. Cal., Dec. 4, 2009) (granting motion to strike class allegations and noting, "Although Plaintiffs contend that Defendants' motion to strike is premature, it is procedurally proper to strike futile class claims at the outset of litigation to preserve time and resources."). *See* Part III.A.

Further, as explained in Part III.B, there is an additional problem insofar as class procedures would be unmanageable not only because of the required individual mini-trials on consent, but because of a federal statute that prevents DIRECTV from disclosing its customers' personal information to Plaintiff absent prior consent from each of those customers. This unique superiority and manageability problem also supports this Court's use of its discretion to strike the class allegations from the FAC and require Plaintiff to proceed on an individual basis. Indeed, as addressed in Part III.B.1, in apparent recognition of the individual nature of TCPA claims (was this particular call unwanted and if so, is this particular person so bothered by the annoyance of a ringing phone that he wants to pursue a claim) the sponsors of the TCPA expressed the view that the superior method for individuals to pursue TCPA rights of action was in small claims court without need of an attorney. Class procedures were never considered, and that is why attorneys' fees were not included and statutory damages were set at the not insignificant amount of $500 per call (with possibility of trebling) – to incent individuals to pursue their own claims while still preserving fairness to telemarketer defendants.[1]

Finally, as detailed in Part IV, this Court should also strike from the Prayer for Relief the injunctive remedy sought by Plaintiff. She is in no danger of future harm when she does not allege to have received a DIRECTV-debt-related call in over two years, and when she can be made more than whole by the generous TCPA

---

[1] The TCPA was not originally intended to cover anything other than telemarketing calls. While the FCC has expanded its interpretation of the TCPA over time to address certain levels of consent required to make calls in the collections context, and while DIRECTV accepts the premise that collections calls are subject to the TCPA for the purposes of responding to Plaintiff's FAC, DIRECTV does not waive its arguments that collections calls are not within the intended scope of the TCPA.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

2

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO. 2:13-CV-01170-DMG-E

statutory monetary damages.  Striking an injunctive remedy for which Plaintiff lacks Article III standing could assist the parties in assessing and potentially resolving Plaintiff's claims, and will streamline the litigation.  *See, e.g., California ex rel. State Lands Comm'n v. United States*, 512 F.Supp. 36, 38 (N.D. Cal. 1981) ("where the motion may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken.").

## II.   <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

Back in November 2012, Jenny Brown became involved in this lawsuit then-pending in the Eastern District of Missouri, where the putative class action had been brought against Credit Management, Inc. ("CMI") by Cheryl Swope.  *See* Dkt. No. 46.  On February 3, 2013, after joining in Ms. Swope's complaint, Plaintiff asked to have her case transferred to California because she had heard that the calls made to her concerned a debt owed to DIRECTV, and she wished to join with a case pending in the Central District of California that had been brought against DIRECTV and CMI by Plaintiff Josh Brown (who is apparently no relation).  *See* Dkt. No. 69 (Mot. to Transfer) at 1.  Plaintiff's case was transferred on February 27, 2013 (*see* Dkt. No. 80 (Order)), and assigned to this Court on March 7, 2013.  *See* Dkt. No. 83 (Order).

The Court granted leave on August 12, 2013 for Plaintiff to file the TAC that would add DIRECTV as a defendant.  *See* Dkt. No. 108.  Following meet and confer discussions between counsel for Plaintiff and DIRECTV concerning DIRECTV's planned response to the TAC, the parties stipulated to Plaintiff's filing of the FAC so that Plaintiff could attempt to address the problems detailed by DIRECTV's counsel during the meet and confer.  *See* Dkt. Nos. 120, 122.

The FAC alleges that Plaintiff received six (6) calls placed by CMI over two years ago, on the following dates:

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

- July 13, 2011;
- July 15, 2011;
- July 19, 2011 (two calls);
- July 21, 2011; and
- September 28, 2011.

FAC, ¶ 47.  Plaintiff alleges that CMI made these calls "on behalf of" DIRECTV to collect a debt owed to DIRECTV (*id.*, ¶ 53), and claims that she has "no relationship" with CMI or with DIRECTV.  *See id*, ¶¶ 49-50.  She nowhere alleges (nor could she) that she has any reasonable expectation of future calls relating to a DIRECTV account.

Based on the calls she claims to have received, Plaintiff seeks to represent a nationwide class of persons called by DIRECTV (or by any third-party debt collector in relation to a debt owed to DIRECTV) who did not provide DIRECTV with the called cell-phone number.  *Id.*, ¶ 53.  Plaintiff's TAC defined her proposed class as persons "who did not provide prior express consent for such call(s) during the transaction that resulted in the debt owed."  *See* Dkt. No. 111, ¶ 55.  Plaintiff has now replaced the "prior express consent" language from the TAC with its functional equivalent:  persons "**who did not provide the cellular phone number called on any initial application for DIRECTV service.**"  *See* Dkt. No. 122, ¶ 55 (emphasis added).  FAC Paragraph 55 thus defines the purported class as follows:

> All persons residing within the United States who, on or after four years prior to the filing of this action, received a non-emergency telephone call(s) **from DIRECTV and/or its third-party debt collectors** regarding a debt allegedly owed to DIRECTV, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice **and who did not provide the cellular phone number called on any initial application for DIRECTV service**.

*Id.* (emphasis added).  But while the class definition in the FAC is phrased differently than that in the TAC, as detailed below, it is a distinction without a difference.  Membership in the class will depend on consent: those who provided a cell phone number (i.e., prior consent) would be excluded from the class.  Indeed, it

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

would not be clear whether the class had **any** members at all until after the consent for each was proven or disproven (and, further, after it had been adjudicated whether the call had been placed "on DIRECTV's behalf" under the applicable principles of federal common law of agency).

## III.   LEGAL ARGUMENT:  THIS COURT SHOULD STRIKE PORTIONS OF THE FAC PURSUANT TO RULE 12(F).

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  *See also Tietsworth v. Sears Roebuck & Co.,* 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010) (same).  Thus, a court may—and should—grant a motion to strike class allegations if it is clear from the complaint that class claims cannot be maintained.  *See Sanders v. Apple, Inc.*, 672 F.Supp.2d 978, 990 (N.D. Cal. 2009) (granting motion to strike class allegations and noting, "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."); *see also Collins v. Gamestop Corp*., No. C10-1210 TEH, 2010 WL 3077671, *2 (N.D. Cal., Aug. 6, 2010) (same); *see also Hovsepian v. Apple, Inc.*, No. 08-5788 JF, 2009 WL 5069144, *2 (N.D. Cal., Dec. 17, 2009) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.").

It is true that motions to strike can be regarded with disfavor.  "However, where the motion may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken."  *California ex rel. State Lands Comm'n*, 512 F.Supp. at 38.  And while class allegations are usually tested after one party has filed a motion for class certification (*e.g., Thorpe v. Abbott Labs., Inc*., 534 F.Supp.2d 1120, 1125 (N.D. Cal. 2008)), the Supreme Court has explained,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

"[s]ometimes the issues are plain enough from the pleadings" to determine whether class claims are appropriate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Here, it is apparent from the face of the FAC that the proposed class against DIRECTV is not ascertainable and is an improper fail-safe class. *See* Part A, below. Moreover, it is also clear from the FAC that this class will be riddled with manageability problems, and thus does not satisfy the "superiority" requirement of Rule 23. *See* Part B, below.

Because of these failings obvious in the FAC, as well as the inherent nature of TCPA claims and the special circumstances impacting manageability here, it is not only proper for the Court to assess these clear problems, but to strike Plaintiff's class allegations from the FAC, before wasting resources of the Court and the parties.

**A.    The Class Allegations Should Be Stricken Because The Class Is "Fail-Safe" And Depends On Individual Inquiries To Ascertain Membership.**

Plaintiff's FAC defines a proposed class membership containing persons called "by or on behalf" of DIRECTV on a cellular phone where the called party "did not provide the cellular phone number called on any initial application for DIRECTV service." *See* FAC at ¶ 55. By cutting the word "consent" from the TAC's class definition and replacing it with a functionally equivalent phrase, Plaintiff hoped to avoid the ascertainability and fail safe issues evident on the face of the TAC. But Plaintiff has not solved the problem of ascertainability because the same individualized inquiry is still required: did this individual provide the number to DIRECTV (consent) or did she not (no consent). [2] Thus, the ascertainability

---

[2] DIRECTV notes that Plaintiff's attempt to create a "factual inquiry" of whether someone provided consent on an **initial application** actually misstates the legal standard for consent: under recent Ninth Circuit precedent, an *en banc* panel of the Ninth Circuit determined that prior express consent to call cell phone numbers in connection with a debt may be obtained from debtors ***at any time***, so long as that consent is obtained before the call at issue is placed. *See Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036 (9th Cir. 2012) (as amended December 28, 2012). Thus, the factual inquiry on "consent" will be even more individualized, as DIRECTV would be able to defend itself by showing provision of consent by each

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO. 2:13-CV-01170-DMG-E

problem remains, and no amount of word-smithing can fix it.  The individual factual inquiries involving a class member's consent to be called will dwarf any common disputed issues, rendering the class not ascertainable.  "[T]he class definition must definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member."  *Zeisel v. Diamond Foods, Inc.*, No. C10-01192 JSW, 2011 WL 2221113, *6 (N.D. Cal., June 7, 2011).  Moreover, "[a] class must be ascertainable without inquiring into the merits of the case."  *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557 (C.D. Cal. 2012).  *See also Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) ("As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists.").

The central problem with Plaintiff's class definition is that it creates a "fail-safe" class whose membership is defined by the merits of individual members' legal claims, and so membership is not ascertainable prior to a finding of liability in the plaintiff's favor.  *See Brazil v. Dell, Inc.*, 585 F.Supp.2d 1158 (N.D. Cal. 2008). For example, in *Brazil v. Dell*, the court granted a motion to strike class allegations which defined the proposed class as persons who had purchased computer products that the defendant had "falsely advertised."  *Id.*  The court held in the context of a Motion to Strike that because it would be first necessary for the court to reach a legal determination that the defendant had "falsely advertised" before it could be determined who was a member of the class, the class could not be ascertained as defined.  *See id.*, *see also Heffelfinger v. Electronic Data Systems Corp.,* No CV-07-00101 MMM, 2008 WL 8128621, *10 (C.D. Cal., Jan. 7, 2008) ("plaintiffs now

---

and every called customer "at any time" during that customer's tenure with DIRECTV.  Further, as it did with Joshua Brown, DIRECTV will have the opportunity to move to compel arbitration with any putative class member required by contract to individually arbitrate his or her disputes over collections calls.  This again will involve individual factual inquiries to determine class membership.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

1   seek to define the class in terms of workers who were denied overtime in violation

2   of the law.  A class defined in this fashion constitutes an impermissible 'fail-safe'

3   class, whose members would be 'bound only by a judgment favorable to plaintiffs

4   but not by an adverse judgment.'"); *Genenbacher v. CenturyTel Fiber Co. II*, 244

5   F.R.D. 485, 488 (C.D. Ill. 2007) ("This type of class definition is called a 'fail safe'

6   class because the class definition precludes the possibility of an adverse judgment

7   against class members; the class members either win or are not in the class . . . The

8   proposed class definition, thus, is improper because the Court cannot enter an

9   adverse judgment against the class").

10          Here, in trying to avoid the classic "fail-safe" definition inherent in defining

11   a TCPA class, which requires examination of individual "consent," Plaintiff has

12   tried to couch the inquiry in "factual terms" of whether someone provided a cell

13   phone number to DIRECTV on an application for DIRECTV programming

14   services.  But in doing so, Plaintiff  only highlights the problems with her proposed

15   class:  Plaintiff submits that she can determine whether the number called was

16   provided to DIRECTV by conducting individual inquiries into *DIRECTV's* records.

17   *See, e.g.,* FAC ¶ 58 ("The identity of the Class and Subclass members can be

18   readily ascertained from the records of Defendants.").  If DIRECTV's records show

19   that the number was provided by a potential class member, then that person does

20   not get to join the class after all, since the class only includes those who did not

21   provide a  number.  The class definition thus remains a classic, and improper, "fail-

22   safe" class.

23          Courts have found that putative classes similar to that proposed by Plaintiff

24   cannot be certified because of the need to make individual inquires to determine

25   class membership.  In *Gannon v. Network Telephone Services, Inc*,. No. CV 12-

26   9777-RGK, 2013 WL 2450199, *2 (C.D. Cal., June 5, 2013), the court declined to

27   certify a TCPA class consisting of "[a]ll persons in the United States and its

28   Territories who received one or more unauthorized text messages sent by or on

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

behalf of Defendants, or their agents or affiliates nationwide..." on the grounds that the "proposed class is unascertainable and unidentifiable."  The court concluded that it could not determine whether an individual is part of the class "without extensive individual inquiry into the merits of Plaintiff's claim, which ultimately makes identification of the class administratively unfeasible."  *Id*.  The court noted that Plaintiff's class definition "would require individual inquiry into whether the potential class members consented to receiving text messages" and that based on the facts before it, the court "would have to hold 'mini-trials' to determine who received" unauthorized text messages and thus, who is a class member."  *Id*. at *2-3.  The court concluded:  "[s]uch circumstances render the proposed class not ascertainable or identifiable, because significant inquiry as to each individual class member would be required, as well as inquiry into the merits of the claim."  *Id*. at *3.

Other courts have reached similar conclusions.  In *Hicks v. Client Services, Inc*., No. 07-61822-CIV, 2008 WL 5479111 (S.D. Fla., Dec. 11, 2008), the court denied certification of a TCPA class related to voice mail messages plaintiff allegedly received —even though the proposed class definition cautiously avoided using the word "consent"—based on a general finding that no matter how it is phrased, the issue of consent "is an essential individual issue under the TCPA" that would have to be determined as to each member and that "makes class certification inappropriate."  *Id*. at *7-8, *citing Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326–27 (5th Cir. 2008); *Levitt v. Fax.com*, No. WMN–05–9492007, WL 3169078 at *3 (D. Md., May 25, 2007); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1169–70 (S.D. Ind. 1997) (ruling that the consent issue made class certification inappropriate because of lack of typicality, commonality, and predominance); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (same).  Moreover, the *Hicks* court concluded that plaintiff failed to "describe how she intends to [show a lack of express consent] without the trial degenerating into mini-

9

1    trials on consent of every class member." *Id.* Based on this finding, the court held

2    that class certification of the TCPA claims would be improper for lack of

3    commonality under Rule 23(a), and predominance under Rule 23(b)(3). *See also*

4    *Balthazor v. Central Credit Services, Inc.*, No. 10-62435-CIV, 2012 WL 6725872,

5    *4 (S.D. Fla., Dec. 27, 2012) (similarly rejecting the plaintiff's argument that

6    consent was not an issue with respect to a proposed TCPA class because the

7    defendant had not produced any evidence of consent, noting that "while it is true

8    that [defendant] will ultimately bear the burden of establishing prior express

9    consent, at the class certification stage, the burden is on the Plaintiff to establish the

10   Rule 23 factors.")[3] *See also G.M. Sign, Inc. v. Franklin Bank*, *SSB*, Case No. 06 C

11   9492007, WL 4365359, *3 (N.D. Ill., Dec. 13, 2007) (rejecting TCPA class where

12   "the proposed class definition improperly includes a component of a lack of

13   defense, namely proof of express permission or invitation prior to the receipt of the

14   fax advertisement.").

15        Here, Plaintiff proposes to remove all those who provided consent (via an

16   initially-provided phone number) to DIRECTV; membership thus depends on

17   determining legal liability towards each individual class member. When it is so

18   clear that Plaintiff will not be able to meet the ascertainability requirement, the

19   Court should strike the class allegations rather than force the parties to engage in

20   expensive and time-consuming class certification briefing.

21   **B.    It Is Clear From The Complaint And A Relevant Federal Statute**
22   **That Class Treatment Will Not Be Superior.**

23        The class allegations and Paragraphs 54-66 should also be stricken because

24   of the intersection of a unique federal law with the facts Plaintiff purports to put at

---

[3] It is also worth noting that in *Balthazor*, the plaintiff's TCPA class claim based on a vicarious liability argument – similar to the one Plaintiff sets forth here – was dismissed on summary judgment. *See Balthazor v. Central Credit Services, Inc. et al.*, Case No. 0:10-CV-62435, Dkt. No. 116 (granting summary judgment for co-defendant where plaintiff set forth TCPA class claim under a theory of vicarious liability when debt collector was an independent contractor of co-defendant).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO. 2:13-CV-01170-DMG-E

issue for class members.  It is readily apparent that class treatment of TCPA claims against DIRECTV is not superior to individual treatment, as required by Rule 23.  *See* Fed.R.Civ.P 23(b)(3) (court must determine whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy).  As detailed below, it is clear from the FAC that the class action format will not be manageable or efficient, and that Plaintiff and other putative class members have superior alternatives to pursue under the TCPA.  Indeed, the constraints placed upon DIRECTV by the Satellite Home Viewers Extension and Reauthorization Act of 2004 ("SHVERA"), Pub. L. No. 108-447, 118 Stat. 2809, 3393, (codified at 47 U.S.C. § 338, *et seq.*) simply will not allow the kind of classwide discovery that Plaintiff says would be required in order to ascertain the class membership, since the inquiries would depend on DIRECTV's account records—records containing subscribers' personally identifiable information ("PII").

In evaluating superiority, the court must consider the likely difficulties in managing the case, specifically "the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 164, (1974).  "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (citation omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) (holding that a "class action is the superior method for managing litigation if no realistic alternative exists").

### 1.    The TCPA Itself Demonstrates That Class Treatment Of Plaintiff's Action Is Not Superior.

Here, class treatment is not a superior procedure for adjudicating TCPA claims because the inquiries to determine liability are inherently individualized (as discussed above).  Recognizing this fact, the drafters crafted the statute with

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

individual actions in mind as the superior method for handling claims. When discussing the provision allowing for private rights of action before passage of the TCPA, its author, Senator Hollings, expressed his "hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court." Remarks of Senator Hollings, 137 Cong. Rec. S16204-01, 1991. He continued: "Small claims court or a similar court *would allow the consumer to appear before the court without an attorney*. The amount of damages in this legislation is *set to be fair to both the consumer and the telemarketer*." *Id.* (emphasis added). While the Supreme Court has since made clear that TCPA plaintiffs are not required to remain in the State court system, since the TCPA is a federal statute that allows for a federal right of action (*see Mims v. Arrow Financial Services, L.L. C.*, 132 S.Ct. 740 (2012)), it is significant that the TCPA makes no mention of classwide procedures being available, and omits recovery of attorneys' fees. Allowing class complaints to proceed with threats of millions or billions of dollars of statutory damages is directly contrary to the intent of its drafters, and the balance of fairness the drafters were attempting to strike in setting the statutory damages figure.

Unlike the kinds of cases where tiny or insignificant damages would keep claims from being pursued absent class treatment, TCPA cases involve significant dollar amounts for every alleged offending call or text. Plaintiff, who claims the "harm" of receiving a handful of collections-based calls from CMI more than two years ago, could quickly and inexpensively seek the not-insubstantial damages of $500/$1500 for these calls. Indeed she (and every putative class member) would certainly recover a higher amount of damages for valid claims outside the class action context, particularly in view of the fact that attorneys' fee are not recoverable under the statute so fees come straight out of any settlement or award. As evidenced by the comments of the drafters of the TCPA, the disproportionate level of statutory damages of $500 per call, when compared to the nuisance of an

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

12

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO. 2:13-CV-01170-DMG-E

1   unwanted phone call, was set at that level to incentivize consumers to pursue their

2   claims in small claims court without an attorney in an effort to balance fairness to

3   consumers and to the telemarketers who called them in violation of the TCPA.  *See*

4   Remarks of Senator Hollings, 137 Cong. Rec. S16204-01, 1991.  That balance of

5   fairness is thrown completely off kilter when class actions, such as this one, are

6   allowed to proceed.

7        With the TCPA designed to afford consumers a quick and simple resolution

8   for their claims, problems with manageability such as those detailed in Part III.B.2

9   below weigh in favor of a finding from this Court that class allegations should be

10  stricken here, because class treatment cannot be superior given the barriers to the

11  discovery the FAC claims is necessary to identify potential class members.

### 2. Class Treatment Cannot Be Superior When DIRECTV Is Prohibited by Federal Statute From Disclosing Information To Plaintiff That Would Be Necessary To Identify The Members Of Her Proposed Class.

15       The FAC claims that members of Plaintiff's class will be identifiable through

16  a review of DIRECTV's records or of the DIRECTV subscriber information

17  provided to CMI.  *See* FAC ¶ 58 ("The identity of the Class and Subclass members

18  can be readily ascertained from the records of Defendants.").[4]  Putting aside for

19  now the points raised above (that the class is not ascertainable absent individualized

20  inquiries), there is another problem with Plaintiff's plan to "figure out later" which

21  persons to remove from the class membership:  the Satellite Home Viewers

22  Extension and Reauthorization Act of 2004 ("SHVERA"), Pub. L. No. 108-447,

23  118 Stat. 2809, 3393, (codified at 47 U.S.C. § 338, *et seq.*).

24       SHVERA is a federal statute applicable to DIRECTV and other providers of

25  satellite television programming that controls DIRECTV's ability to allow third

26  parties (such as Plaintiff and her attorneys) access to its subscribers' Personally

---

[4] The "Subclass" that Plaintiff identifies is not a class with claims against DIRECTV, and thus DIRECTV's focus in this section is only on the "Class" as defined in Paragraph 55 of the FAC.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

13

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

Identifiable Information ("PII").  Under this federal statute – which is specific to satellite carriers – DIRECTV is not permitted to share any personal information related to its subscribers (even with a court order) unless each subscriber affirmatively consents in writing or electronically to the provision of that information.  As detailed below, a protective order will not suffice.

In general, SHVERA requires DIRECTV to protect its subscribers' PII.  *See generally* 47 U.S.C. § 338(i) (detailing subscribers' privacy rights).  But more specifically, SHVERA prohibits DIRECTV from disclosing – **without subscribers' written or electronic consent** – subscribers' PII.  *See id*., 338(i)(4)(A) (consent required for disclosure).  Section 338(i)(4)(A) states in particular:

> Except as provided in subparagraph (B), **a satellite carrier** shall not disclose personally identifiable information concerning any subscriber **without the prior written or electronic consent of the subscriber concerned** and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or satellite carrier.

*Id.* (emphasis added).  The exceptions discussed in Section 4(B) of the personal information section do not permit disclosure to Plaintiff or her attorneys of subscribers' PII (such as names or telephone numbers), which DIRECTV can disclose only in limited ways when necessary to conduct its legitimate business or in a few other specified instances. [5]  For example, in the "exceptions" provisions, Section 338(i)(4)(B)(ii) explains that disclosure to a third party can be made pursuant to a court order, but only if a subscriber has been notified of that order and has a chance to object:

> (B) Exceptions
>
> A satellite carrier may disclose such information if the disclosure is--

---

[5] Businesses with whom DIRECTV shares its subscribers' PII as part of DIRECTV's legitimate business operations (such as third-party debt collectors) are prohibited by contract from disclosing that PII to third parties; indeed, as Plaintiff's counsel are aware, DIRECTV's contract with CMI does not allow that entity to share with third parties any PII that was provided by DIRECTV.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

14

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

. . . .

> (ii) subject to paragraph (9), made pursuant to a court order authorizing such disclosure, **if the subscriber is notified of such order by the person to whom the order is directed**;

*See id.*, 338(i)(4)(B)(ii) (emphasis added).  A court order alone is thus not enough to protect DIRECTV from allegations that it has violated SHVERA.[6]

Another federal court recently considered SHVERA's impact on discovery when it was considering a discovery dispute involving a different satellite carrier, DISH Network.  That Ohio district court recognized the impact of this federal statute on the disclosure of information:  "The Court finds that SHVERA, at 47 U.S.C. § 338(i)(4)(A)and (B), requires that, before disclosing subscribers' confidential, **personally identifiable information,** the party holding such subscriber information **must provide the subscriber notice of a court order requiring such disclosure to which a subscriber may object."**  *Dish Network LLC v. Fun Dish, Inc.*, 1:08CV1540, 2012 WL 4322605, *7 (N.D. Ohio, Sept. 20, 2012) (emphasis added).  The *Dish Network* court noted that SHVERA could not be ignored, when significant penalties existed for any violation of that law.  *Id.  See also* Section 338(i)(7) ("Penalties", establishing that each subscriber is entitled to pursue an action against DIRECTV to recover statutory damages of $100 for each day that PII was disclosed without consent, up to $1,000, as well as punitive damages and reasonable attorneys' fees).  The *Dish Network* court then found that with SHVERA governing discovery, a Special Master would need to be appointed to oversee discovery in that case between two corporations to ensure that PII was not shared absent a subscriber's consent.  *See id.*  It is apparent how much more difficult the discovery process would be in the context of a putative nationwide class.

As Plaintiff asserts, she is not a DIRECTV subscriber.  *See* FAC, ¶ 50.

---

[6] Moreover, that exception for court orders arguably contemplates only orders sought by government entities, pursuant to a later paragraph 9.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DIRECTV cannot simply hand over customer records showing the PII of the subscribers who owed it debt and the telephone numbers associated with those subscribers and records showing when those telephone numbers were provided; similarly, DIRECTV cannot allow persons doing business with it from handing over a subscriber's PII to anyone other than that subscriber.  And yet, it is clear from the FAC that Plaintiff thinks she can  identify her potential class members by perusing records containing PII of DIRECTV's subscribers (and conducting mini-trials on whether an individual provided the number).  *See* FAC, ¶ 58 ("The identity of the Class and Subclass members can be readily ascertained from the records of Defendants.").[7]  Further, DIRECTV would not be able to develop its defenses, such as express consent, without recourse to its customer records, to show which persons should be excluded from Plaintiff's fail-safe class.

It is clear from the requirements of SHVERA detailed above that the discovery nightmares would be horrendous (in defending claims brought under a statute that did not contemplate class treatment, and indeed contemplated individual actions hoped to be brought in State courts or small claims court).  It would be an unfair burden (and it would be a nightmare to manage) to require DIRECTV to acquire consent from **all** of its subscribers who have received calls related to debts owed so that Plaintiff can comb through those customers' PII (names, phone numbers, addresses, and so on) and try to constitute a class (a class that would likely not include many, if any, of the persons from whom information was sought).  Essentially, it would require notice and a chance to opt-out to **every single subscriber** out of tens of millions of subscribers who may have received a collections-based call in the past four years **before records could even be checked**

---

[7] This is a stretch since Plaintiff herself was not aware that CMI may have been calling her for debts related to a DIRECTV customer account, until CMI's counsel told her that the calls had been made in relation to a DIRECTV customer's account.  *See, e.g.,* Dkt. No. 69 (Mot. to Trans.), ¶ 2 (telling this Court that she learned "for the first time" on January 14, 2013, that the debt stemmed from a DIRECTV customer's account when she was told this fact by CMI's counsel).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

16

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E

to see whether a person could indeed join the putative class based on what number that customer provided.[8]  The management and expense of such a process would be unwieldy and extremely burdensome both on the parties and on the Court, and thus it is clear that class treatment of Plaintiff's TCPA claim is not a superior method of adjudication, as required for certification under Rule 23.  This conclusion is, again, reinforced by the TCPA itself, as discussed above.

Plaintiff is not without recourse absent her class action lawsuit.  She can pursue her individual claims for $500-$1500 for each of the six calls she claims to have received—a substantial amount of statutory damages when Plaintiff does not allege (because she cannot) actual harm from the call attempts.[9]  Thus, when DIRECTV's requirements under federal statute preclude Plaintiff from accessing the information that the FAC state she needs to identify her class, it is apparent from the outset that class procedures will not be superior.  For this reason, too, Plaintiff's class allegations should be stricken from the FAC.

_____

[8] Further, a potential class member's agreement to arbitrate on an individual basis would also need to be shown through customer records.  For example, Joshua Brown (named plaintiff of the predecessor action) could claim to be a member of Jenny Brown's proposed class, since he alleges he never provided the cellular telephone number at which he received autodialed collections calls.  However, as this Court is aware, DIRECTV was able to show through a detailed factual inquiry and analysis that he was bound to individual arbitration.  Joshua Brown put his own records at issue, and DIRECTV had provided his own records to his counsel; however, DIRECTV would not have been able to provide **Joshua Brown's** records to Plaintiff here without first acquiring his consent to do so.

[9] Indeed, this Court should consider why Plaintiff would include class allegations at all, when the statutory remedy of $500-$1500 *per call* was set to incent individual plaintiffs to pursue more than adequate compensation for the potential aggravation of receiving unwanted calls in small claims court.  *See* 137 Cong. Rec. S16204-01 (1991) (remarks of Senator Hollings).  The only logical explanation is that Plaintiff's *counsel* is interested in keeping threatened class litigation, and the hopes of staggering classwide statutory damages, alive in order to recoup a large fee for themselves out of the proceeds.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

17

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO. 2:13-CV-01170-DMG-E

**IV.   PLAINTIFF LACKS ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF, AND THE REQUEST FOR THIS REMEDY IN THE PRAYER FOR RELIEF SHOULD BE STRICKEN.[10]**

The focus of Plaintiff's complaint is recovery of statutory damages of $500-$1,500 for each call allegedly received by Plaintiff and class members.  However, the FAC also requests injunctive relief.  *See* FAC at p. 16, Section A (seeking a permanent injunction prohibiting future violations of the TCPA).  To pursue an injunctive remedy, a plaintiff must have standing to do so; the Supreme Court has "repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  Moreover, "[s]peculative injury, however, does not constitute irreparable injury." *Goldie's Bookstore, Inc. v. Superior Court of State of California*, 739 F.2d 466, 472 (9th Cir. 1984).  Here, as discussed below, Plaintiff is not entitled to seek injunctive relief because she fails to meet the requirements for such relief.

First, there is no credible, let alone serious, risk of continuing injury to Plaintiff where she received collections calls from CMI long ago, with several calls in July 2011 and one in September 2011).  *See* FAC, ¶ 47.  Plaintiff makes no reasonable claim (nor could she) that she is in danger of future calls when it has been **more than two years** since she received the complained-of calls from CMI.  *See* FAC, ¶ 47.  And yet, case law is clear that in order to have Article III standing to pursue injunctive relief, a plaintiff must demonstrate that she is likely to suffer injury *in the future* in order to have standing.  *See e.g.*, *In re Intel Laptop Battery Litig.*, C 09-02889 JW, 2011 WL 7290487, *2 (N.D. Cal., Apr. 7, 2011) (when a plaintiff's "cause of action is based entirely on a past transaction", then a plaintiff

---

[10] Plaintiff requests "declaratory relief" on two occasions in her FAC, but not in the Prayer for Relief.  *See* FAC, ¶¶ 60 and 66.  While DIRECTV assumes that Plaintiff's omission of "declaratory relief" from her Prayer indicates that Plaintiff actually does not seek such relief here, DIRECTV further notes that Plaintiff does not get to demand unnecessary equitable remedies.  *See* Part IV, below.

"as a matter of law, fails to allege that it is under any threat of suffering actual and imminent future harm"); *Walsh v. Nevada Dept. of Human Resources,* 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff had no standing to pursue injunctive relief claim where she no longer worked for defendant and where she did not allege in complaint that she was interested in returning to work for defendant); *Deitz v. Comcast Corp.*, C 06-06352 WHA, 2006 WL 3782902, *3 (N.D. Cal., Dec. 21, 2006) (dismissing injunctive claim because "[a]s to plaintiff, the alleged wrong is over. His saga, while relevant, does not establish standing to seek future relief, at least without some continuing, present adverse effect."). Plaintiff's allegations simply do not demonstrate sufficient standing to seek injunctive relief because she fails to allege that she personally is under any threat of suffering imminent future harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (holding that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.")

Moreover, Plaintiff does not get to demand an unnecessary ***equitable*** remedy such as injunctive relief when there is an adequate remedy ***at law***, such as the statutory damages she seeks. The "basic doctrine of equity jurisprudence [provides] that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris,* 401 U.S. 37, 43–44 (1971). Thus, "injunctive relief should not be granted if irreparable harm is absent and there exists an adequate remedy at law." *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, CV 11-2113-ODW FMOX, 2012 WL 2529404, at *3 (C.D. Cal., July 2, 2012) *aff'd*, 520 F. App'x 505 (9th Cir. 2013). Plaintiff has an adequate remedy at law for any TCPA violations: statutory damages of $500 to $1500 per call. Such damages are more than adequate relief (especially when no actual injury has occurred).

Thus, the Court should strike from the FAC the Prayer for Relief's Section

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

19

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO. 2:13-CV-01170-DMG-E

A, which asks for an equitable remedy unavailable to Plaintiff. [11]

## V.   CONCLUSION

Here, where the *in terrorem* nature of TCPA class actions often force defendants into settling before class certification decisions (because of the risks of staggering statutory damages untethered to any actual harm), and where the face of Plaintiff's FAC makes clear that individualized consent inquiries are required to determine class membership and that such consent would require review of documents that DIRECTV cannot provide without prior notice to all putative class members, it is appropriate for the Court to exercise its discretion to strike the faulty class allegations [FAC ¶¶ 54-66] and not permit Plaintiff to proceed on a classwide basis.  To delay consideration of these points would be to force the parties and the Court into extensive and expensive litigation practice tied to a class that is clearly not certifiable from the face of the FAC.

Furthermore, where Plaintiff lacks standing to assert claims for injunctive relief, her request for injunctive relief pursuant to the TCPA should be stricken. FAC, Prayer for Relief, ¶ A.  This, too, could help the parties focus on what is actually put at issue by Plaintiff's FAC.

Dated:  October 22, 2013          MANATT, PHELPS & PHILLIPS, LLP


                                  By:  /s/ Becca Wahlquist
                                       Becca Wahlquist
                                       Attorneys for DIRECTV, LLC

---

[11] DIRECTV notes that it made similar arguments to this Court about the unavailability of injunctive relief in the Joshua Brown matter (he, too, had alleged no risk of future harm), but that the Court never assessed the merits of these arguments before granting DIRECTV's motion to compel arbitration. *See Joshua Brown v. DIRECTV*, 2:12-cv-08382-DMG-E. Dkt. No. 81 (Order compelling arbitration).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20

MEMORANDUM IN SUPPORT OF DIRECTV'S
MOTION TO STRIKE
CASE NO.  2:13-CV-01170-DMG-E