LIEFF CABRASER HEIMANN
  & BERNSTEIN LLP
Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
Douglas I. Cuthbertson (admitted *pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF CABRASER HEIMANN
  & BERNSTEIN LLP
Daniel M. Hutchinson (State Bar No. 239458)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

BURKE LAW OFFICES, LLC
Alexander H. Burke (admitted *pro hac vice*)
ABurke@BurkeLawLLC.com
155 N. Michigan Ave. Suite 9020
Chicago, IL 60601
Telephone: (312)729-5288
Facsimile: (312) 729-5289

MEYER WILSON CO., LPA
Matthew R. Wilson
(State Bar No. 290473)
mwilson@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

PARISI & HAVENS LLP
David C. Parisi (162248)
dcparisi@parisihavens.com
15233 Valleyheart Drive
Sherman Oaks, CA 91403
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Attorneys for Plaintiff *Jenny Brown and the
Proposed Classes*

[*Additional Counsel Appear on Signature Page*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JENNY BROWN, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DIRECTV, LLC, <br><br> Defendant. | Case No. 2:13-cv-01170-DMG-E <br><br> **OPPOSITION TO MOTION TO CONTINUE STAY OF ACTION** <br><br> HEARING DATE: April 22, 2016 <br> Time: 9:30 a.m. <br> Place: Courtroom 7 <br> Judge: Dolly M. Gee |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL BACKGROUND. .......................................................................... 2

III.   LEGAL STANDARD. ..................................................................................... 3

IV.   ARGUMENT. .................................................................................................. 5

      A.      DIRECTV Has No Prior Express Consent for a "Wrong Number" Class, No Matter What the D.C. Circuit Decides. ................ 5

      B.      The 2015 FCC Ruling Does Not Directly Control the Definition of an Automatic Telephone Dialing System. ........................................ 9

      C.      Plaintiff Does Not Oppose a Stay for the Purpose of Further Mediation. ......................................................................................... 12

V.     CONCLUSION ............................................................................................. 13

- i -

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abrantes v. Northland Group, Inc.,*
No. 14-cv-5311, 2015 WL 1738255 (N.D. Cal. Apr. 13, 2015)...........................9

*ACA, Int'l v. FCC,*
No. 15-1211 (D.C. Cir.) ................................................................................7, 8

*Cartrette v. Time Warner Cable, Inc.,*
___F. Supp. 3d., 2016 WL 183483 (E.D.N.C. Jan. 14, 2016)..........................11

*CMAX, Inc. v. Hall,*
300 F.2d 265 (9th Cir.1962)..............................................................................4

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.,* 498 F.3d 1059,
1066-67 (9th Cir. 2007).....................................................................................4

*Derby v. AOL, Inc.,*
No. 5:15–CV–452–RMW, 2015 WL 5316403 (N.D. Cal. Sept. 11,
2015)...............................................................................................................11

*Fontes v. Time Warner Cable, Inc.,*
2015 WL 9272970 (C.D. Cal. Dec. 17, 2015) ...................................................8

*Gager v. Dell Fin. Servs., LLC,*
727 F.3d 265 (3d Cir. 2013)..............................................................................6

*Gutierrez v. Barclays Group,*
No. 10–cv–1012, 2011 WL 579238 (S.D. Cal. Feb. 9, 2011) ............................7

*Heinrichs v. Wells Fargo Bank, N.A.,*
No. C 13-05434 WHA, 2014 WL 985558 (N.D. Cal. Mar. 7, 2014) ...................6

*Kafatos v. Uber Techs., Inc.,*
No. 15-cv-3727, 2016 WL 97489 (Jan. 8, 2016) ................................................9

*King v. Time Warner Cable,*
___F. Supp. 3d ——, 2015 WL 4103689 (S.D.N.Y. July 7, 2015) ...................11

*Kolloukian v. Uber Techs., Inc.,*
2015 WL 9598782 (C.D. Cal. Dec. 14, 2015) ...................................................8

*Landis v. N. Am. Co.,*
299 U.S. 248 (1936)..........................................................................................4

*Lathrop v. Uber Techs., Inc.,*
No. 14-cv-5678, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016)................................8

*Leyse v. Bank of America, N.A.,*
804 F.3d 316 (3d Cir. 2015)..............................................................................6

*Leyva v. Certified Grocers of Cal., Ltd.,*
593 F.2d 857 (9th Cir.1979)..............................................................................4

*Lockyer v. Mirant Corp.*
398 F.3d 1098 (9th Cir. 2005)...........................................................................4

*Luna v. Shac, LLC,*
—— F. Supp. 3d ——, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015)..............11

1
2

### TABLE OF AUTHORITIES
#### (continued)

**Page**

3
*Moore v. Dish Network, LLC,*
  57 F. Supp. 3d 639 (N.D.W. Va. 2014) ................................................................ 6

4
*Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.,*
5
  545 U.S. 967 (2005) ................................................................................... 7, 11

6
*Olney v. Progressive Cas. Ins. Co.,*
  No. 13–cv–2058, 2014 WL 294498 (S.D. Cal. Jan. 24, 2014) ............................ 7

7
*Page v. Regions Bank,*
  917 F. Supp. 2d 1214 (N.D. Ala. 2012) ................................................................ 6

8
*Paradise v. Commonwealth Fin. Sys., Inc.,*
  No. 3:13-cv-00001, 2014 WL 4717966, at * 3 (M.D. Pa. Sept. 22, 2014) ............ 6

9
*Soppet v. Enhanced Recovery Co., LLC,*
10
  679 F.3d 637 (7th Cir. 2012) ................................................................. 5, 6, 7, 8

11
**Statutes**

28 U.S.C. § 2342(1) ................................................................................................ 8
12
28 U.S.C. § 2344 .................................................................................................. 12

13
**Other Authorities**

14
*In the Matter of Rules and Regulations Implementing the Telephone*
  *Consumer Protection Act of 1991,*
15
  30 FCC Rcd. 7961, 2015 WL 4387780 (July 10, 2015) .............................. passim

16
*In the Matter of Rules and Regulations Implementing the Telephone*
  *Consumer Protection Act of 1991,*
17
  7 FCC Rcd. 8752 (Oct. 16, 1992) ................................................................. 7, 12

18
*In the Matter of the Rules and Regulations Implementing the*
  *Telephone Consumer Protection Act of 1991,*
  23 FCC Rcd. 559 (2008) ..................................................................................... 12

19
20
21
22
23
24
25
26
27
28

1    **I.       INTRODUCTION**

2          Defendant DIRECTV, LLC ("DIRECTV")'s Motion to Continue the Stay in

3    this case represents a bait-and-switch.  DIRECTV asserts that the stay should

4    continue so that the United States Court of Appeals for the District of Columbia

5    Circuit may consider a series of challenges to rulings by the FCC with regard to

6    "wrong number" calls under the TCPA.  The FCC rulings in question

7    unambiguously hold that the calling party is liable for calls made to individuals

8    without prior express consent, even if the calling party was attempting to reach

9    some other party for whom it did have prior express consent.  *In the Matter of Rules*

10   *and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30

11   FCC Rcd. 7961, 2015 WL 4387780 (July 10, 2015) ("2015 FCC Declaratory

12   Ruling") ¶ 78.  In doing so, the FCC also held that calling parties had a one-call

13   "safe harbor" for wrong number calls.  *Id.* ¶ 90.  Finally, the FCC held that an

14   autodialer is defined as a system that *could be used* to make calls randomly or

15   sequentially, whether or not it was set to do so at the time of the calls in question.

16   *Id.* ¶ 15.  DIRECTV admits that these rulings endorse Plaintiff's position in full, but

17   hope that the D.C. Circuit will throw them a lifeline by setting aside the FCC's

18   well-reasoned Declaratory Ruling.

19         DIRECTV has requested this exact stay before.  After the FCC's July 10,

20   2015 ruling, which favored Plaintiff's position, DIRECTV moved to continue the

21   stay pending an appeal before the D.C. Circuit.  *See* Dkt. No. 202.  This Court did

22   not rule on that request, and instead continued the existing stay for a completely

23   different purpose:  so that the parties could mediate the case.  *See* Dkt. No. 203.

24   Since that order, the parties engaged in a productive mediation session, but that did

25   not resolve the litigation.  Accordingly, the parties scheduled an additional

26   mediation session (Dkt. No. 204), but DIRECTV subsequently declined to proceed

27   with a second mediation.  Dkt. No. 205.  The status of the mediation process is now

28   uncertain.

1      Insofar as DIRECTV wishes to continue the mediation process, as

2 contemplated by the Court's previous order, Plaintiff will participate and would

3 agree that a continued stay of the case is appropriate.  If, however, DIRECTV no

4 longer wishes to engage in mediation, then the underlying purpose for keeping a

5 stay in place is gone, and the stay should be lifted.  As set forth below, there is no

6 reason to keep the stay in place pending the D.C. Circuit cases, because they are

7 highly unlikely to help DIRECTV or to make the proceedings before this Court

8 more efficient.  As such, continuing a stay in this already protracted case would

9 serve no purpose other than further delay.

10 **II.   FACTUAL BACKGROUND.**

11      The original complaint in this matter was filed in the United States District

12 Court for the Eastern District of Missouri on May 9, 2012, with Cheryl Swopes as

13 the named plaintiff and Credit Management, LP,[1] as a defendant.  *See* Dkt. No. 1.

14 On November 21, 2012, Plaintiffs filed a Second Amended Complaint, adding

15 Jenny Brown as a named plaintiff.[2]  *See* Dkt. No. 48.  On February 19, 2013, the

16 case was transferred to this Court (*see* Dkt. No. 71); the Court subsequently granted

17 Plaintiffs' leave to file a Fourth Amended Complaint, adding DIRECTV as a

18 defendant.  *See* Dkt. No. 120.  On October 22, 2013, DIRECTV filed a motion to

19 strike Plaintiff's class allegations (*see* Dkt. No. 124), which the Court denied on

20 May 27, 2014.  *See* Dkt. No. 153.

21      On August 22, 2014, DIRECTV filed a motion to stay the case, pending a

22 decision from the FCC regarding petitions from ACA International and United

23 Healthcare.  *See* Dkt. No. 158.  The Court denied DIRECTV's motion.  *See* Dkt.

24 No. 166.  On November 14, 2014, DIRECTV sought reconsideration of the Court's

---

[1] Defendant Credit Management, LP, was dismissed pursuant to stipulation.  *See* Dkt. No. 142.

[2] Cheryl Swopes was dismissed as a plaintiff at the same time Brown has added. *See* Dkt. No. 49.

1  order regarding the stay (*see* Dkt. No. 180), which the Court granted.  *See* Dkt. No.

2  198.

3        On July 10, 2015, the FCC issued its declaratory ruling with regard to the

4  ACA and United Health petitions.  *See* 2015 FCC Declaratory Ruling.  Subsequent

5  to the FCC's ruling, the parties filed a joint status report.  *See* Dkt. No. 202.  In that

6  joint status report, DIRECTV argued that the stay should continue pending an

7  appeal of the 2015 FCC Declaratory Ruling to the United States Court of Appeals

8  for the D.C. Circuit.  *Id.* at 2.  Plaintiff opposed a stay on this basis, but stated that a

9  stay pending mediation would be appropriate.  *Id.* at 2-3.  On August 7, 2015, the

10  Court ordered "[i]n light of the foregoing, and for good cause shown, IT IS

11  HEREBY ORDERED that the case is stayed *pending the completion of mediation*

12  *by the parties*." (emphasis added).  Dkt. No. 203.

13        On February 29, 2016, DIRECTV filed the instant motion, seeking, once

14  again, a stay on the basis of the pending D.C. Circuit challenge to the 2015 FCC

15  Declaratory Ruling.  Dkt. No. 209.

16  **III.   LEGAL STANDARD.**

17        The standard for a stay pending the consideration of an unrelated case in

18  another Court was articulated long ago by Justice Cardozo:

19        [T]he power to stay proceedings is incidental to the power inherent in

20        every court to control the disposition of the causes on its docket with

21        economy of time and effort for itself, for counsel, and for litigants.

22        How this can best be done calls for the exercise of judgment, which

23        must weigh competing interests and maintain an even balance.  True,

24        the supplicant for a stay must make out a clear case of hardship or

25        inequity in being required to go forward, if there is even a fair

26        possibility that the stay for which he prays will work damage to some

27        one else. Only in rare circumstances will a litigant in one cause be

28

1    compelled to stand aside while a litigant in another settles the rule of

2    law that will define the rights of both.

3    *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

4        The Ninth Circuit subsequently articulated the requirements that must be met

5    in order for a "*Landis* stay" to apply.  *See generally Dependable Highway Exp., Inc.*

6    *v. Navigators Ins. Co.,*

7    498 F.3d 1059 (9th Cir. 2007).  First, "judicial economy" is necessary, but not

8    sufficient, grounds for a stay.  *See Dependable,* 498 F.3d at 1066 (citing *Lockyer v.*

9    *Mirant Corp.* 398 F.3d 1098, 1112 (9th Cir. 2005)).  Second, "if there is even a fair

10   possibility that the stay ... will work damage to some one [*sic*] else, the stay may be

11   inappropriate absent a showing by the moving party of hardship or inequity."  *Id.*

12   (quoting *Landis*, 299 U.S. at 255 (internal quotation marks omitted)).  Said another

13   way, a stay is inappropriate unless: (1) there is no "fair possibility" of harm to the

14   other side; or (2) the party seeking the stay can demonstrate "hardship or inequity."

15   With regard to the second part, "being required to defend a suit, without more, does

16   not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."

17   *Lockyer,* 398 F.3d at 1112.  Third, "[a] stay should not be granted unless it appears

18   likely the other proceedings will be concluded within a reasonable time."

19   *Dependable,* 498 F.3d at 1066 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*,

20   593 F.2d 857, 864 (9th Cir.1979)).  Finally, the party moving for a stay must

21   articulate "the orderly course of justice measured in terms of the simplifying or

22   complicating of issues, proof, and questions of law which could be expected to

23   result from a stay."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

24       DIRECTV's motion to continue the stay on the basis of the pending ACA

25   Petition clearly fails the third prong—a stay will not simplify clarify issues, proof,

26   and/or questions of law.

27

28

## IV.  **ARGUMENT.**

### A.  **DIRECTV Has No Prior Express Consent for a "Wrong Number" Class, No Matter What the D.C. Circuit Decides.**

DIRECTV admits that "DIRECTV has verified that Plaintiff's telephone number (ending in 1695) was a telephone number that had been provided to DIRECTV by one of its subscribers."  Stay Motion at 3.  If that is true, then this case represents the classic "wrong number" scenario under the TCPA.  Insofar as DIRECTV or its debt collectors made these calls using an ATDS, the facts line up perfectly with the scenario described in *Soppet v. Enhanced Recovery Co., LLC*, with Plaintiff filling the role of "Bystander":

> The situation is this: Customer incurs a debt and does not pay. Creditor hires Bill Collector to dun Customer for the money.  Bill Collector puts a machine on the job and repeatedly calls Cell Number, at which Customer had agreed to receive phone calls by giving his number to Creditor.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559 ¶¶ 9, 10 (Jan. 4, 2008) (2008 TCPA Order).  The machine, called a predictive dialer, works autonomously until a human voice comes on the line.  If that happens, an employee in Bill Collector's call center will join the call. But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander.  A human being who called Cell Number would realize that Customer was no longer the subscriber.  But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master. Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail. (We use Bill Collector as the caller, but this simplified description could as easily use an advertiser that relies for consent on earlier transactions

1     with Customer, or a box that Consumer checked on a vendor's web

2     site.).

3  *Soppet*, 679 F.3d 637, 638-39 (7th Cir. 2012).  *Soppet* addresses the question of who,

4  for purposes of "prior express consent" is considered to be the "called party."  To the

5  extent a debt collector provides evidence of prior express consent, *Soppet* holds that

6  the caller must provide evidence of consent provided *by the person who received*

7  *the call*, not from the person the debt collector was *attempting* to reach.  *Id.*

8       The Eleventh Circuit has also considered the question and endorsed the

9  rationale in *Soppet*.  *See Osorio,* 746 F.3d at 1251 (adopting *Soppet*).[3]  Moreover,

10  while not directly addressing the question, the Third Circuit has issued two

11  opinions that support the idea that the "called party" for TCPA purposes is the

12  "recipient" of the call, not the party the caller was intending to reach.  *See Leyse v.*

13  *Bank of America, N.A.,* 804 F.3d 316, 325 (3d Cir. 2015) ("There are good reasons

14  to doubt the equation of 'intended recipient' with 'called party,'" (citing *Soppet* and

15  *Osorio*); *Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 268-69 (3d Cir. 2013)

16  ("Under its rulemaking authority, the FCC has stated that autodialed calls—to both

17  cellular phones and land-lines—are lawful so long as *the recipient* has granted

18  'permission to be called at the number which they have given, absent instructions to

19  the contrary.'" (emphasis added) (quoting *In the Matter of Rules and Regulations*

20  *Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752,

21  8769 ¶ 31 (Oct. 16, 1992)).  Although the Ninth Circuit has not yet ruled on this

22  issue, district courts within the Ninth Circuit agree.  *See, e.g.*, *Heinrichs v. Wells*

23  *Fargo Bank, N.A.*, No. C 13-05434 WHA, 2014 WL 985558, at *2 (N.D. Cal. Mar.

24  7, 2014) ("[T]he undersigned judge is inclined to agree with the analysis set forth in

25  *Soppet*."); *Olney v. Progressive Cas. Ins. Co.*, No. 13–cv–2058, 2014 WL 294498,

26

---

27  [3] *See also, e.g., Paradise v. Commonwealth Fin. Sys., Inc.,* No. 3:13-cv-00001, 2014 WL 4717966, at * 3 (M.D. Pa. Sept. 22, 2014); *Moore v. Dish Network, LLC,*

28  57 F. Supp. 3d 639, 649 (N.D.W. Va. 2014); *Page v. Regions Bank,* 917 F. Supp. 2d 1214, 1219 (N.D. Ala. 2012) (all citing *Soppet*).

at *3 (S.D. Cal. Jan. 24, 2014) (holding that TCPA claims are not limited to intended recipient); *Gutierrez v. Barclays Group*, No. 10–cv–1012, 2011 WL 579238 (S.D. Cal. Feb. 9, 2011) (finding that subscriber may bring TCPA claims).

Last July, the FCC issued its 2015 FCC Declaratory Ruling and endorsed these courts' interpretation of the "wrong number" question described above. Indeed, the FCC specifically referenced and endorsed the *Soppet* decision in its Declaratory Ruling. 2015 FCC Declaratory Ruling, 2015 WL 4387780 at ¶ 78, fn. 278.

Put another way, and contrary to DIRECTV's misleading framing of the issue, the 2015 FCC Declaratory Ruling did not appear out of a vacuum, but instead endorsed the long-held conclusion adopted by *each* Circuit Court of Appeals to consider the question. For this reason, it is highly unlikely that the D.C. Circuit will contradict the well-reasoned holdings of its sister Circuits and the FCC by handing the banks and the debt collection industry an unprecedented victory.

The 2015 FCC Declaratory Ruling is currently on appeal. *See ACA, Int'l v. FCC,* No. 15-1211 (D.C. Cir.). The D.C. Circuit appeal is brought pursuant to 28 U.S.C. § 2342(1), which grants Courts of Appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47[.]" Therefore, for the D.C. Circuit to rule definitively on the question of what "called party" means under the TCPA in a manner contrary to the FCC's interpretation, it must include that the meaning of "called party" is so unambiguous that the federal agency had no discretion to interpret it the way that it did. *See Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.,* 545 U.S. 967 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."). Given that the FCC found

the statute ambiguous, and the two Courts of Appeal to directly consider the

question have found the TCPA's language to cut *against* Defendant's position,[4] the

most likely result of even a *successful* (from Defendants' standpoint) D.C. Circuit

appeal would be a return to the *status quo* prior to the 2015 FCC Declaratory

Ruling—a *status quo* in which, as discussed above, the overwhelming weight of

authorities have definitively held that the "called party" is the actual recipient of the

call.

     Although a handful of other Courts have granted similar stays,[5] Plaintiff

would respectfully suggest that those court did not analyze how extreme a ruling

favoring DIRECTV's position would be.   Unlike an appeal of a district court

decision, the D.C. Circuit cannot give an up or down vote that would resolve the

situation.  Rather, the D.C. Circuit could – at most – only "enjoin, set aside,

suspend" the 2015 FCC Declaratory Ruling.  Even under that scenario, the entirety

of relevant case law on this topic – which supports Plaintiff's position – would

remain in place.  Therefore, given that the outcome of the D.C. Circuit appeal does

not directly impact the adjudication of this case, staying the action to wait for its

resolution will accomplish nothing.  For this reason, a continued stay is

inappropriate.  *See Lathrop v. Uber Techs., Inc.,* No. 14-cv-5678, 2016 WL 97511,

at * 4 (N.D. Cal. Jan. 8, 2016) (denying a stay pending, *inter alia, ACA*

*International*); *Kafatos v. Uber Techs., Inc.,* No. 15-cv-3727, 2016 WL 97489, at *

---

[4] *Compare* 2015 FCC Declaratory Rule, 30 FCC Rcd. 7961, ¶ 74 ("As a threshold matter, we find the term 'called party' to be ambiguous for TCPA purposes. The statute does not define 'called party,' nor does it include modifiers such as 'intended' that would clarify its meaning in the way that Petitioners urge.") *with Soppet,* 679 F.3d at 640-41 ("The phrase 'intended recipient' does not appear anywhere in § 227, so what justification could there be for equating 'called party' with 'intended recipient of the call'?."); *Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1251 (11th Cir. 2014) (quoting *Soppet*).

[5] *E.g. Fontes v. Time Warner Cable, Inc.,* 2015 WL 9272970 at *4 (C.D. Cal. Dec. 17, 2015); *Kolloukian v. Uber Techs., Inc.,* 2015 WL 9598782, at *1 (C.D. Cal. Dec. 14, 2015).

1   2 (N.D. Cal. Jan. 8, 2016) (same); *Abrantes v. Northland Group, Inc.,* No. 14-cv-

2   5311, 2015 WL 1738255, at * (N.D. Cal. Apr. 13, 2015) (denying a stay pending

3   *ACA International*).

4         **B.**    **The 2015 FCC Ruling Does Not Directly Control the Definition of**

5               **an Automatic Telephone Dialing System.**

6        DIRECTV also seeks a stay pending the D.C. Circuit appeal to clarify the

7   meaning of an "automated telephone dialing system."  But the 2015 FCC

8   Declaratory Ruling stated "[w]e reaffirm our previous statements that dialing

9   equipment generally has the capacity to store or produce, and dial random or

10  sequential numbers (and thus meets the TCPA's definition of "autodialer") even if

11  it is not presently used for that purpose, including when the caller is calling a set list

12  of consumers."  2015 FCC Declaratory Ruling, ¶ 10.  The FCC also held that so-

13  called "predictive dialers" qualify as autodialers for the purposes of the TCPA.  *Id.*

14  In doing so, it rejected the "present capacity test" proposed by the telemarketing

15  and debt collection industries, which would have limited the scope of TCPA

16  liability to calls generated by systems that were set up at the time of the call to

17  make calls "randomly or sequentially."  *Id.* ¶ 15.  Instead, a system is an autodialer

18  if could be used to make calls randomly or sequentially, whether or not it was set to

19  do so at the time of the calls in question.  *Id.*  It also rejected the so-called "human

20  intervention" test, which would have limited the definition of an autodialer to those

21  systems which made calls with any human intervention at any point in the process.

22  *Id.* ¶ 20.

23       As with the "called party" question, it is unlikely the D.C. Circuit will give

24  DIRECTV the result for which it hopes.  In the 2015 FCC Declaratory Ruling, the

25  FCC took pains to emphasize that it was breaking no new ground with regard to the

26  definition of an autodialer.  *See id.* at 17 ("Given the scope of the Petitioners'

27  requests, we do not at this time address the exact contours of the 'autodialer'

28  definition or seek to determine comprehensively each type of equipment that falls

1   within that definition that would be administrable industry-wide.  Rather, *we*

2   *reiterate what the Commission has previously stated regarding the parameters of*

3   *the definition of 'autodialer.'* (emphasis added)); ¶ 22 ("*Because our decision is*

4   *based on the TCPA's terms and past Commission interpretation*, we need not reach

5   the policy arguments from Glide and other commenters, such as claims related to

6   class-action lawsuits, that could be viewed as being offered to support reversing the

7   Commission's prior decisions; in a declaratory ruling we only clarify existing law

8   or resolve controversy regarding the interpretation or application of existing law,

9   rules, and precedents." (emphasis added))  Unlike the "called party" issue, where

10  the FCC had not previously addressed the meaning of the statutory term, the FCC

11  has taken a consistent position with regard to the meaning of the term "automated

12  telephone dialing system," as expressed in various pieces of FCC rulemaking dating

13  back to the immediate aftermath of the enactment of the TCPA.  *See id.* at ¶ 13;

14  (discussing the 2003 FCC Declaratory Ruling and *In the Matter of the Rules and*

15  *Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23

16  FCC Rcd. 559 (2008)); ¶ 16 (discussing *In the Matter of the Rules and Regulations*

17  *Implementing the Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752

18  (1992)).

19        Thus, insofar as DIRECTV hopes for a change in the current FCC

20  interpretation of the meaning of an "automated telephone dialing system," it seeks

21  to overturn the entire body of FCC rulemaking on the subject, and not simply the

22  2015 FCC Declaratory Ruling.  Under the Hobbs Act, the D.C. Circuit has no

23  jurisdiction to overturn prior rulemaking because the time to appeal FCC Rulings

24  extending as far back as 1992 has long since expired.  *See* 28 U.S.C. § 2344 ("Any

25  party aggrieved by the final order may, within 60 days after its entry, file a petition

26  to review the order in the court of appeals wherein venue lies.").  As discussed

27  above with regard to the "called party" issue, the D.C. Circuit can substitute its own

28  definition of "automated telephone dialing system" for the FCC's only if it finds

1   that the statutory language is unambiguous.  *Brand X,* 545 U.S. at 982.  In the face

2   of years of consistent FCC interpretation of the statute, it is highly unlikely that the

3   D.C. Circuit will conclude that the FCC is not only wrong, but that it is so wrong

4   that the language is *unambiguous* in a way directly contrary to the FCC's

5   interpretation.

6        A far more likely *successful* outcome for petitioners (although still unlikely)

7   would be that the D.C. Circuit would void the 2015 FCC Declaratory Ruling and

8   return the question to the *status quo* existing before July 2015.  But that *status quo*

9   is a series of FCC Rulings that defined an automated telephone dialing system as a

10  system that has the capacity to dial numbers randomly or sequentially, regardless of

11  whether or not it was currently being used in that manner for the specific calls at

12  issue—the very same standard that governs *after* the 2015 FCC Declaratory Ruling.

13       Once again, therefore, the outcome of the D.C. Circuit appeal will not impact

14  the law governing this case with regard to a definition of an "automated telephone

15  dialing system."  Either the D.C. Circuit will affirm the 2015 FCC Declaratory

16  Ruling, in which case staying the case pending that outcome will have served no

17  purpose except further delay, or the D.C. Circuit will send the 2015 FCC

18  Declaratory Ruling back to the FCC, in which case a series of prior FCC decisions

19  that articulate the same standards as those found in the 2015 FCC Declaratory

20  Ruling would govern.  One way or the other, this Court will apply the same

21  standard to the specific equipment used by the DIRECTV and/or its debt collectors

22  to determine whether the equipment qualifies as an automated telephone dialing

23  system.[6]

24

25
_____

26  [6] *See also Cartrette v. Time Warner Cable, Inc.,* -- F. Supp. 3d. --, 2016 WL
    183483, at ** 6-8 (E.D.N.C. Jan. 14, 2016); *Derby v. AOL, Inc.,* No. 5:15–CV–

27  452–RMW, 2015 WL 5316403, at *3–4 (N.D. Cal. Sept. 11, 2015); *Luna v. Shac,
    LLC*, ––– F. Supp. 3d ––––, 2015 WL 4941781, at *2–4 (N.D. Cal. Aug. 19, 2015);

28  *King v. Time Warner Cable,*___ F. Supp. 3d at ––––, 2015 WL 4103689, at *4
    (S.D.N.Y. July 7, 2015) (all adopting the 2015 FCC Declaratory Ruling).

**C.**      **Plaintiff Does Not Oppose a Stay for the Purpose of Further Mediation.**

DIRECTV's Motion to Continue the Stay gives the false impression that the current stay was premised on waiting for the FCC's guidance:

> The Court stayed this TCPA putative class action on December 11, 2014, pending a ruling by the FCC that would likely control key determinations in the case.  *See* Dkt. No. 198.  When a three-commissioner majority of the FCC issued that anticipated order on July 10, 2105, the other two commissioners filed strenuous objections.  The dissenters' arguments have been incorporated into a series of appeals now consolidated before the District of Columbia Circuit Court.  As detailed below, because still-unsettled and central issues will soon be determined via this appeal, the stay in place in this litigation should continue until the D.C. Circuit Court has ruled on the appeals of the contested 3-2 FCC Order.

Stay Motion at 1.

This framing of the case's procedural history is simply incorrect.  This case is currently stayed in order for the parties to engage in mediation, not because of prospective rulings from the FCC or the D.C. Circuit court.  *See* Dkt. No. 203 ("In light of the foregoing, and for good cause shown, IT IS HEREBY ORDERED that the case is stayed *pending the completion of mediation by the parties*. (emphasis added)).

Pursuant to the Court's order, the partied engaged in mediation.  On September 24, 2015, the parties mediated before the Honorable Irma Gonzalez.  *See* Dkt. No. 204.  While the parties did not resolve the case at that mediation, the mediation was highly productive, with both sides agreeing to meet with Judge Gonzalez again "to continue their discussions."  *Id.*

1    In the interim, however, it seems that momentum stalled from DIRECTV's

2   end following its purchase by AT&T.  A second mediation session has not

3   occurred, and there is no further mediation currently on the schedule.  *See* Dkt. No.

4   205.

5    Plaintiff continues to believe that a stay pending mediation is appropriate.  The

6   appropriateness of such a stay, of course, depends on DIRECTV's willingness to

7   engage in the process in good faith.  To the extent that DIRECTV agrees or the

8   Court orders continuing the mediation process, Plaintiff would agree to a continued

9   stay.

10    Such a stay, however, should be on the same terms as the current stay—

11   "pending competition of mediation by the parties."  As discussed above, Plaintiff's

12   position is that a stay pending the ACA petition in front of the D.C. Circuit is

13   inappropriate and unnecessary.  Plaintiff would respectfully request that the Court

14   ask DIRECTV to clarify its current settlement posture and, if appropriate,

15   encourage DIRECTV to continue to engage in the settlement process.

16   **V.    CONCLUSION**

17    For the foregoing reasons, Plaintiff respectfully requests that the Court deny

18   DIRECTV's Motion for a Continued Stay.  Alternatively, Plaintiff respectfully

19   requests that the Court seek clarification regarding DIRECTV's settlement posture.

20

21   Dated:  March 21, 2016                    Respectfully submitted,

22

23                                            By:  /s/ *Daniel M. Hutchinson*
                                                    Daniel M. Hutchinson

24                                            LIEFF CABRASER, HEIMANN &
25                                            BERNSTEIN LLP
                                             Daniel M. Hutchinson (SBN 239458)
                                             dhutchinson@lchb.com
26                                            275 Battery Street, 29th Floor
                                             San Francisco, CA  94111-3339
27                                            Telephone:  (415) 956-1000
                                             Facsimile:   (415) 956-1008

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIEFF CABRASER, HEIMANN &
BERNSTEIN LLP
Jonathan D. Selbin (SBN 170222)
jselbin@lchb.com
Douglas I. Cuthbertson (admitted *pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:   (212) 355-9500
Facsimile:    (212) 355-9592

BURKE LAW OFFICES,  LLC
Alexander H. Burke (admitted *pro hac vice*)
ABurke@BurkeLawLLC.com
155 N. Michigan Ave. Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile:   (312) 729-5289

MEYER WILSON CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone:  (614) 224-6000
Facsimile:   (614) 224-6066

PARISI & HAVENS LLP
David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
15233 Valleyheart Drive
Sherman Oaks, CA 91403
Telephone:  (818) 990-1299
Facsimile:   (818) 501-7852

HEALEY LAW, LLC
Robert T. Healey (admitted *pro hac vice*)
bob@healeylawllc.com
640 Cepi Drive, Suite A
Chesterfield, MO 63005
Telephone:  (636) 536-5175
Facsimile:   (636) 590-2882

*Attorneys for Plaintiff and the Proposed Class*