1  BURKE LAW OFFICES, LLC
   Alexander H. Burke (admitted *pro hac vice*)
2  ABurke@BurkeLawLLC.com
   155 N. Michigan Ave. Suite 9020
3  Chicago, IL 60601
   Telephone: (312)729-5288
4  Facsimile:  (312) 729-5289

5  LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
6  Jonathan D. Selbin (State Bar No. 170222)
   jselbin@lchb.com
7  Douglas I. Cuthbertson
   (admitted *pro hac vice*)
8  dcuthbertson@lchb.com
   250 Hudson Street, 8th Floor
9  New York, NY 10013
   Telephone:  (212) 355-9500
10 Facsimile:  (212) 355-9592

11 LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
12 Daniel M. Hutchinson
   (State Bar No. 239458)
13 dhutchinson@lchb.com
   275 Battery Street, 29th Floor
14 San Francisco, CA 94111-3339
   Telephone:  (415) 956-1000
15 Facsimile:  (415) 956-1008

16 Attorneys for Plaintiff *Jenny Brown and the Proposed Class*

17 [*Additional Counsel Appear on Signature Page*]

MEYER WILSON CO., LPA
Matthew R. Wilson
(SBN No. 290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone:  (614) 224-6000
Facsimile:   (614) 224-6066

PARISI & HAVENS LLP
David C. Parisi (162248)
dcparisi@parisihavens.com
212 Marine Street, Unit 100
Santa Monica, CA 90405
Telephone:  (818) 990-1299
Facsimile:   (818) 501-7852

18

19              UNITED STATES DISTRICT COURT

                CENTRAL DISTRICT OF CALIFORNIA
20
                     WESTERN DIVISION
21

22 JENNY BROWN, on behalf of              Case No. 2:13-cv-01170-DMG-E
   herself and all others similarly
   situated,                             **MEMORANDUM OF POINTS AND
23                                         AUTHORITIES IN SUPPORT OF
                                           PLAINTIFF'S MOTION FOR
24              Plaintiff,                  CLASS CERTIFICATION**

25 v.                                     Date:      June 29, 2018
                                          Time:      9:30 a.m.
26 DIRECTV, LLC,                          Place:     Courtroom 8C

27              Defendant.                Hon. Dolly M. Gee

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II. THE TELEPHONE CONSUMER PROTECTION ACT ............................ 2

III. STATEMENT OF FACTS ...................................................................... 5

    A.  DIRECTV Caused Prerecorded Calls to be Made. ............................ 5

    B.  DIRECTV Has No Evidence of Prior Express Consent from Plaintiff or Class Members to Receive Prerecorded Calls .................. 6

    C.  DIRECTV Has A Long History of TCPA Violations. ....................... 6

IV. LEGAL STANDARD ............................................................................ 7

V.  CERTIFICATION OF THE PRIMARY CLASS IS APPROPRIATE ......... 8

    A.  The Proposed Class and Subclass Are Objectively Defined. ............. 9

    B.  The Proposed Class Satisfies the Requirements of Rule 23(a) .......... 10

        1.  Numerosity. ............................................................................ 10

        2.  Commonality. ......................................................................... 11

        3.  Typicality. .............................................................................. 11

        4.  Adequacy of Representation .................................................... 12

    C.  The Requirements of Rule 23 (b)(3) are Satisfied ............................ 12

        a.  Questions of Law and Fact Predominate ...................... 13

        b.  A Class Action Is Superior to Individual Actions .......... 17

VI. APPOINTMENT OF CLASS COUNSEL .............................................. 18

VII. IN THE ALTERNATIVE, FURTHER CLASS DISCOVERY IS APPROPRIATE AND MAGISTRATE JUDGE EICK'S ORDER DENYING MOTION TO COMPEL SHOULD BE OVERRULED. ......... 20

    A.  The Class May Include DIRECTV Customers. ................................ 21

    B.  Class Discovery Is Not Overbroad. ................................................ 22

VIII. CONCLUSION .................................................................................. 25

1

2

## TABLE OF AUTHORITIES

**Page**

3

4

**Cases**

5

*Abdeljalil v. Gen. Elec. Capital Corp.*,
  306 F.R.D. 303 (S.D. Cal. 2015) ..................................................................8, 10

6

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................1, 7, 13, 14

7

*Baird v. Sabre, Inc.*,
  995 F. Supp. 2d 1100 (C.D. Cal. 2014) ...................................................................4

8

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) ..................................................................................7

9

*Bellows v. NCO Fin. Sys., Inc.*,
  No. 3:07-CV-01413-W-AJB, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) .......18

10

*Bickerstaff v. Suntrust Bank*,
  788 S.E.2d 787 (Ga. 2016) ...................................................................................22

11

*Booth v. Appstack, Inc.*,
  No. C13-1533JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016) ....................9

12

13

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017), *cert. denied* 138 S. Ct. 313 (2017) ......................9

14

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ................................................................................13

15

*Caldera v. Am. Med. Collection Agency*,
  320 F.R.D. 513 (C.D. Cal. 2017) ............................................................................8

16

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ................................................................................18

17

18

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ..................................................................................7

19

*Chem. Bank v. Sec. Pac. Nat'l Bank*,
  20 F.3d 375 (9th Cir. 1994) ..................................................................................16

20

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
  867 F.3d 434 (3d Cir. 2017) ............................................................................22, 23

21

*Comcast v. Behrend*,
  133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)............................................................8

22

23

*Cordoba v. DirecTV, LLC*,
  320 F.R.D. 582 (N.D. Ga. 2017) ............................................................................6

24

*Davis v. Prof'l Musicians Local 47*,
  No. SA CV 12-00960, 2014 WL 12479397 (C.D. Cal. Mar. 24, 2014) .............22

25

*Delarosa v. Boiron, Inc.*,
  275 F.R.D. 582 (C.D. Cal. 2011)..........................................................................18

26

*Donnelly v. NCO Fin. Sys., Inc.*,
  263 F.R.D. 500 (N.D. Ill. 2009)............................................................................23

27

*Ehret v. Uber Techs., Inc.*,

28

- ii -

# TABLE OF AUTHORITIES

**Page**

148 F. Supp. 3d 884 (N.D. Cal. 2015) ......................................................21

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ...............................................................11

*Gilman v. ER Solutions*,
No. C11-0806-JCC, Order, Dkt. No. 67 (W.D. Wash. Feb. 3, 2012) .................23

*Glazer v. Whirlpool Corp.*,
722 F.3d 838 (6th Cir. 2013) .................................................................8

*Gossett v. CMRE Fin. Servs.*,
142 F. Supp. 3d 1083 (S.D. Cal. 2015) ....................................................23

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) ...............................................................................7

*Gusman v. Comcast Corp.*,
298 F.R.D. 592 (S.D. Cal. 2014) ............................................................23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ......................................................7, 11, 13

*Ikuseghan v. MultiCare Health Sys.*,
No. C14-5539, 2015 WL 4600818 (W.D. Wash. July 29, 2015) ...................8

*In re Alcoholic Beverages Litig.*,
95 F.R.D. 321 (E.D.N.Y. 1982) .............................................................10

*In re Capital One Tel. Consumer Protection Act Litig.*,
Master Docket No. 1:12-cv-10064 (N.D. Ill.) ...........................................19

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .................................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011) .....................22

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
728 F.3d 682 (7th Cir. 2013) ..........................................................1, 13

*Jamison v. First Credit Servs., Inc.*,
290 F.R.D. 92 (N.D. Ill. 2013)...............................................................15

*Johns v. Bayer Corp.*,
280 F.R.D. 551 (S.D. Cal. 2012) .............................................................7

*Johnson v. Navient Solutions, Inc.*,
315 F.R.D. 501 (S.D. Ind. 2016) .............................................................8

*Kane v. Nat'l Action Fin. Servs., Inc.*,
No. 11–11505, 2012 WL 1658643 (E.D. Mich. May 11, 2012) .......................25

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012).......................................................10, 13

*Knutson v. Schwan's Home Serv., Inc.*,
No. 3:12-cv-0964, 2013 WL 3746118 (S.D. Cal. July 15, 2013) ....................23

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014).........................................................14

# TABLE OF AUTHORITIES

**Page**

*Leon v. Standard Ins. Co.*,
    No. 2:15-CV-07419-ODW, 2016 WL 768908 (C.D. Cal. Jan. 28, 2016) ............9

*Martin v. Bureau of Collection Recovery*,
    No. 10 C 7725, 2011 WL 2311869 (N.D. Ill. June 13, 2011) ..............................23

*Mazza v. Am. Honda*,
    666 F.3d 581 (9th Cir. 2012) ...............................................................................11

*Mbazomo v. ETourandTravel, Inc.*,
    No. 2:16-CV-02229-SB, 2017 WL 2346981 (E.D. Cal. May 30, 2017) .............23

*McGowan v. Credit Mgmt. LP*,
    No. 2:14-CV-00759-APG, 2015 WL 5682736 (D. Nev. Sept. 24, 2015)..............4

*McMillion v. Rash Curtis & Assocs.*,
    No. 16-CV-03396, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017)........................8

*Meredith v. United Collection Bureau, Inc.*,
    319 F.R.D. 240 (N.D. Ohio 2017) .......................................................................24

*Mey v. Enter. Fin. Grp., Inc.*,
    No. 2:15-CV-463, 2016 WL 9110357 (M.D. Fla. July 27, 2016)........................24

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. Cal. 2012)................................................................1, 3, 8

*Miller v. Directv, LLC*,
    3:13-cv-02073-L-JLB ...........................................................................................19

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012) ...........................................................................................2, 3

*Mitchem v. Ill. Collection Serv.*,
    271 F.R.D. 617 (N.D. Ill. 2011)............................................................................8

*Nigro v. Mercantile Adjustment Bureau, LLC*,
    769 F.3d 804 (2d Cir. 2014) .................................................................................15

*O'Shea v. Am. Solar Sol., Inc.*,
    2016 WL 701215 (S.D. Cal. Feb. 18, 2016)...........................................15, 24, 25

*Ossola v. Am. Express Co.*,
    No. 13 C 4836, 2015 WL 2330032 (N.D. Ill. Feb. 20, 2015) .......................15, 16

*Reid v. I.C. Sys. Inc.*,
    No. CV-12-02661-PHX-ROS, 2013 WL 12177463 (D. Ariz. Nov. 20, 2013)......4

*Roylance v. ALG Real Estate Servs., Inc.*,
    No. 5:14-CV-02445-PSG, 2015 WL 1522244 (N.D. Cal. Mar. 16, 2015) ..........16

*Satterfield v. Simon & Schuster*, *Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...........................................................................3, 14

*Stemple v. QC Holdings, Inc.*,
    No. 12-CV-01997-BAS WVG, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) ....15

*Thrasher v CMRE Fin. Servs., Inc.*,
    No. 14-CV-1540, 2015 WL 1138469 (S.D. Cal. March 13, 2015)......................23

*Turcios v. Carma Laboratories*, *Inc.*,
    296 F.R.D. 638 (C.D.Cal. 2014)..........................................................................10

# TABLE OF AUTHORITIES

**Page**

*United States v. DIRECTV, Inc.*,
  No. 09-02605 (C.D. Cal. May 14, 2009) .................................................................. 6

*United States v. DirecTV, Inc.*,
  No. 05-1211 (C.D. Cal. Dec. 14, 2005) .................................................................. 6

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) ..................................................................... 4, 14

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) ............................................................................. 18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................... 8, 11

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ............................................................................ 12

*West v. Cal. Servs. Bureau, Inc.*,
  No. 16-CV-3124, 2017 WL 6316823 (N.D. Cal. Dec. 11, 2017) ........................ 8

*Whitaker v. Bennett Law, PLLC*,
  No. 13-CV-3145-L NLS, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) .............. 8

*Whiteamire Clinic, P.A. v. Quill Corp.*,
  No. 12 C 5490, 2013 WL 5348377 (N.D. Ill. Sept. 24, 2013) ........................... 23

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ................................................................ 7, 11, 12

*Zyburo v. NCSPlus, Inc.*,
  44 F. Supp. 3d 500 (S.D.N.Y. 2014) ................................................................... 8

**Statutes**

105 Stat. 2394 ........................................................................................................ 2

23 F.C.C. Rcd. ...................................................................................................... 5

47 U.S.C. § 227(b) ............................................................................................... 3

Consumer Protection Act, 47 U.S.C. § 227 ......................................................... 1

Hobbs Act, 28 U.S.C. § 2342 ............................................................................... 4

**Rules**

Fed. R. Civ. P. 1 ................................................................................................. 22
Fed. R. Civ. P. 23(a) ......................................................................... 8, 12, 13, 16
Fed. R. Civ. P. 23(a)(1) ...................................................................................... 13
Fed. R. Civ. P. 23(a)(3) ...................................................................................... 15
Fed. R. Civ. P. 23(a)(4) ...................................................................................... 15
Fed. R. Civ. P. 23(b) ..................................................................................... 8, 16
Fed. R. Civ. P. 23(b)(2) ...................................................................................... 12
Fed. R. Civ. P. 23(b)(3) ................................................................................. passim
Fed. R. Civ. P. 23(c)(1)(A) .................................................................................. 1
Fed. R. Civ. P. 23(c)(1)(C) ................................................................................ 11
Fed. R. Civ. P. 23(g)(1) ...................................................................................... 24
L.R. 23-1 .............................................................................................................. 1

# TABLE OF AUTHORITIES

**Page**

**Treatises**

Black's Law Dictionary 323 (8th ed. 2004) ................................................................3

**Other Authorities**

5-23 Moore's Federal Practice - Civil § 23.22[1][b]................................................10

Wright, et al., 7A Fed. Practice & Proc. § 1751 (3d ed. 2010) ..................................7

Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986).......................13

## I.    **INTRODUCTION**

Plaintiff Jenny Brown brings this Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") action against DIRECTV, LLC ("DIRECTV") for its uniform policy of causing prerecorded debt collection calls to be made to consumers' cellular telephones on its behalf. Even though discovery is ongoing, Plaintiff has enough evidence to establish that this case is well-suited for class treatment.[1] Both the Supreme Court and Ninth Circuit have held that the class certification requirements are "readily met" in consumer protection cases where, as here, common factual questions necessarily center upon the defendant's course of conduct. *See Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The Ninth Circuit has found TCPA cases involving prerecorded calls to be amenable to class certification. *See Meyer v. Portfolio Recovery Assocs.*, *LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *see also Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under [the TCPA]."). In similar cases involving alleged violations of the TCPA, courts in this Circuit have not hesitated to certify classes. *See infra*, footnotes 3 & 4.

This case is the very embodiment of those holdings. As detailed below, it involves a consumer protection claim against a single defendant arising from telephone calls made to an identifiable group of individuals. The TCPA claims arise from and focus on DIRECTV's conduct, *i.e.*, employing third-party debt collectors to make prerecorded telephone calls, including calls to ***non-customers***. It also

---

[1] Although the parties have a discovery dispute (*see infra* Section VII), Plaintiff—based on the Court's suggestion during the most recent status conference—believes it would be more efficient to rule on class certification now. Such a ruling would be consistent with Rule 23's dictate that "the court must determine by order whether to certify the action as a class action" at "*an early practicable time*." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added); *see also* L.R. 23-1 (requiring a class certification motion within 90 days after service of a class action complaint unless otherwise ordered by the Court). If, however, the Court requires more information to rule on class certification, Plaintiff, in the alternative, requests that the Court order DIRECTV to produce further classwide discovery.

involves the application of a single federal statute, the TCPA.

Certification of the proposed TCPA class would further Rule 23's dual goals of efficiency and fairness. These claims involve common questions of law and fact that predominate over individual ones, and ought to be adjudicated only once, through a single proceeding, rather than repeatedly in thousands of individual trials based on identical evidence. Critically, given the relatively modest value of any individual claims, without class certification, most or all of the individuals' claims would never be heard in any forum, under any procedure. A class action is the only way to ensure the fair and efficient litigation of these claims.

For these reasons, Plaintiff respectfully seeks certification under Rule 23(b)(3) of a class of persons who received a prerecorded call regarding a debt allegedly owed to DIRECTV. Plaintiff also seeks certification of a subclass of non-customers of DIRECTV who received such calls. Plaintiff requests that the Court appoint named Plaintiff Jenny Brown as Class Representative of the Class and Subclass, and that her counsel be appointed Class Counsel.

In the alternative, if the Court lacks sufficient evidence to render a class certification decision, Plaintiff respectfully requests the Court order DIRECTV to produce call data, consumer complaints, TCPA investigations, and TCPA compliance documents. Magistrate Judge Eick's three-page order denying such discovery was in error as such production is frequently ordered in TCPA actions. Dkt. No. 196.

## II.    THE TELEPHONE CONSUMER PROTECTION ACT

As the Supreme Court has explained, Congress enacted the TCPA to prevent prerecorded calls by companies that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371, (2012). Indeed, unlike many federal statutes, Congress embedded the reasons for the TCPA into the statute itself with explicit "Congressional Findings." 105 Stat. 2394. Specifically, Congress found: "Evidence compiled by the Congress indicates

that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." *Id.* at § 10. *Mims* explicitly cited these Congressional Findings in noting that "'prerecorded telephone calls' made to private residences . . . were rightly regarded by recipients as 'an invasion of privacy.'" *Id.* at 372. In accord with these explicit findings, courts consistently hold the TCPA is designed to protect consumers' privacy interests. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("The purpose and history of the TCPA indicate that Congress was trying to prohibit . . . communicat[ion] with others by telephone in a manner that would be an invasion of privacy."). Congress concluded:

> ***Banning such*** automated or ***prerecorded telephone calls*** to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, ***is the only effective means of protecting telephone consumers*** from this nuisance and privacy invasion.

105 Stat. 2394 at § 12 (emphasis added).

Accordingly, the TCPA provides only two defenses: calls "made for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b). Under the TCPA, *prior* consent is "given before the call in question is placed," *Meyer*, 707 F.3d at 1042, and "*express* consent is 'consent that is clearly and unmistakably stated.'" *Satterfield*, 569 F.3d at 955 (quoting Black's Law Dictionary 323 (8th ed. 2004) (emphasis added)). Thus, for telemarketing calls, prior express consent must be "evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii). For the debt collection calls at issue here, the FCC has explained "that prior express consent is deemed to be granted *only if* the wireless number was provided by the consumer to the creditor, and that such

number was provided during the transaction that resulted in the debt owed." *Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2013 WL 12177463, at *2 (D. Ariz. Nov. 20, 2013) (emphasis in original) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 564-65 (2008) (hereinafter "2008 FCC Order"))[2]; *McGowan v. Credit Mgmt. LP*, No. 2:14-CV-00759-APG, 2015 WL 5682736, at *8 (D. Nev. Sept. 24, 2015) (same; denying summary judgment to the same DIRECTV vendor that called Plaintiff because "no documents have been produced showing [the plaintiff] provided her cell phone number when she signed up for [] service"). Thus, *express* consent exists only if a consumer clearly and unmistakably communicates permission to receive prerecorded calls; otherwise, prior express consent only materializes when a consumer provides her cellular telephone number *during the transaction that resulted in the debt owed*. *Accord Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1045 (9th Cir. 2017) ("giving a contact phone number is not prior express consent for any contact, instead 'prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction resulted in the debt owed'") (quoting 2008 FCC Order).

The ability to provide "deemed" prior express consent at account origination through a limited set of documents ("such as purchase agreements, sales slips, and credit applications") was a limited concession to debt collectors. The 2008 FCC Order explained:

> To ensure that creditors and debt collectors call only those consumers
> who have consented to receive autodialed and prerecorded message

---

[2] The 2008 FCC Order is the FCC's official interpretations of the governing provisions of the TCPA. Congress vested the FCC with authority to issue regulations implementing the TCPA and that, under the Hobbs Act, 28 U.S.C. § 2342, all FCC rulings are binding on this Court. *See*, *e.g.*, *Baird v. Sabre, Inc.*, 995 F. Supp. 2d 1100, 1104 (C.D. Cal. 2014).

calls, we conclude that the creditor should be responsible for
demonstrating that the consumer provided prior express consent. The
creditors are in the best position to have records kept in the usual
course of business showing such consent, such as purchase
agreements, sales slips, and credit applications. Should a question arise
as to whether express consent was provided, the burden will be on the
creditor to show it obtained the necessary prior express consent.
Similarly, a creditor on whose behalf an autodialed or prerecorded
message call is made to a wireless number bears the responsibility for
any violation of the Commission's rules. Calls placed by a third party
collector on behalf of that creditor are treated as if the creditor itself
placed the call.

23 F.C.C. Rcd. at 564-65.

## III.   STATEMENT OF FACTS

### A.   DIRECTV Caused Prerecorded Calls to be Made.

DIRECTV entered into a uniform Collection Services Agreement with
twenty vendors to collect debt on behalf of DIRECTV for a contingency fee.
Declaration of Daniel M. Hutchinson ("Hutchinson Decl."), ¶¶ 46, 51 & Ex. B at
144-45. By their plain terms, these are "AGENCY Agreement[s]," under which the
"AGENCY acknowledges and agrees that any [consumer] payment or settlement
amounts received by AGENCY are the *property of DIRECTV* and agrees to
segregate such amounts and hold them *in trust for DIRECTV as a fiduciary* until
such amounts are remitted to DIRECTV in accordance with the terms of this
Agreement." *Id.*, ¶¶ 52-53 & Ex. B at 145 (emphasis added).

DIRECTV provides each vendor with information to make debt collection
calls, including telephone numbers to be called, via its confidential Receivables
Management System ("RMS"). *Id.*, Ex. C at 172, 180 & Ex. B at 139 (§ 3.1).
DIRECTV permits its debt collectors to obtain additional skip-traced telephone

numbers to add to RMS. *Id.*, Ex. C at 178, 195. Through its Collection Services Agreement, DIRECTV requires each of its debt collectors to place a ***minimum*** of at least twenty-eight phone calls to each number. *Id.*, Ex. B at 144 (¶ 1.A.(iii)). It requires each DIRECTV debt collector to "complet[e] initial and follow-up telephone collection calls and maintain[] records of such calls." *Id.*, Ex. B at 145(¶ 2.A.(iii)).

One such debt collector produced electronic records confirming that it made "prerecorded" calls to Plaintiff's cellular telephone on behalf of DIRECTV. *Id.*, Ex. D at 244, 246; Ex. E at 253-54 (containing standard recorded messages for outgoing calls). That same debt collector has proclaimed its use of "'agentless' recorded messages." *Id.*, ¶ 64 (quoting http://thecmigroup.com) & Ex. F at 264 (describing use of Outbound IVR Calls that make "agent-less calls" using standard recorded messages). It is therefore undisputed that DIRECTV's debt collectors made standard, prerecorded calls to Plaintiff, and Class and Subclass members.

### B.    DIRECTV Has No Evidence of Prior Express Consent from Plaintiff or Class Members to Receive Prerecorded Calls.

There is no evidence that DIRECTV obtained prior express consent to receive prerecorded calls from even a single Class member. In fact, because Plaintiff and Subclass members are not DIRECTV customers, it is logically impossible for DIRECTV to have obtained Plaintiff's prior express consent through any consumer transaction.

### C.    DIRECTV Has A Long History of TCPA Violations.

"DIRECTV is no stranger to TCPA litigation." *Cordoba v. DirecTV, LLC,* 320 F.R.D. 582, 588 n.3 (N.D. Ga. 2017) (certifying two nationwide TCPA classes challenging DIRECTV telemarketing calls). The Federal Trade Commission ("FTC") sued DIRECTV twice in this District for violations of the TCPA. *See United States v. DirecTV, Inc.,* No. 05-1211 (C.D. Cal. Dec. 14, 2005); *United States v. DIRECTV, Inc.,* No. 09-02605 (C.D. Cal. May 14, 2009). The cases ended

in civil penalties of $5,335,000 and $2,310,000, respectively, and mandatory injunctive relief. *See* Hutchinson Decl., Ex. J at 428-37 & Ex. K at 483-89. The Permanent Injunction enjoined DIRECTV—both directly and indirectly through its authorized telemarketers—from calling persons whose telephone numbers are on the National Do Not Call Registry and calling persons who request not to receive calls. Yet, from 2011 to 2015, over 8,800 consumers filed complaints with the FTC alleging TCPA violations by DIRECTV. *Id.*, Ex. L at 513.

## IV.   **LEGAL STANDARD**

Class certification is proper if Plaintiff satisfies the requirements of Rule 23(a) and one of the prongs of Rule 23(b). Rule 23's purpose is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there is none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, et al., 7A Fed. Practice & Proc. § 1751 (3d ed. 2010).

Consumer protection cases, like this one under the TCPA, which arise from a single course of conduct that affects large numbers of consumers, are particularly amenable to class treatment. *Amchem*, 521 U.S. at 625; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 555-56 (S.D. Cal. 2012) (class actions that promote compliance with consumer protection laws are "desirable and should be encouraged").

The Court has considerable discretion in making class certification decisions. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (district courts in best position to consider most fair and efficient procedure for litigation). It must, however, conduct a "rigorous analysis" to determine whether the putative class satisfies Rule 23's requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33

(2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Although in some circumstances this "rigorous analysis" may "entail some overlap with the merits of the Plaintiff's underlying claim," *id.* at 351, the Supreme Court "admonishes district courts to consider at the class certification stage only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-852 (6th Cir. 2013) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013)).

Courts routinely certify TCPA debt collection class actions. *See Meyer*, 707 F.3d at 1041 (certifying class of persons who received debt collection calls).[3] Courts also routinely certify TCPA debt collection classes and subclasses comprised entirely of non-customers.[4] This case should be no different.

## V.   CERTIFICATION OF THE PRIMARY CLASS IS APPROPRIATE

Plaintiff seeks certification under Rule 23(b)(3) of the following class:

> All persons residing within the United States who, on or after four years prior to the filing of this action, received a non-emergency telephone call(s) from DIRECTV and/or

---

[3] *See also Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (certifying class of consumers who received prerecorded calls from a collection agency, but did not give their cellular telephone numbers to the defendant); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (same); *Ikuseghan v. MultiCare Health Sys.*, No. C14-5539, 2015 WL 4600818, *8 (W.D. Wash. July 29, 2015) (debt collection TCPA class certified); *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 520 (C.D. Cal. 2017) (same; skip trace class); *Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398, at *4 (S.D. Cal. Oct. 27, 2014) (certifying class receiving debt collection calls "who did not provide prior express consent during the transaction that resulted in the debt owed").

[4] *See, e.g., McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396, 2017 WL 3895764, at *10 (N.D. Cal. Sept. 6, 2017) (certifying two "non-debtor" TCPA classes); *West v. Cal. Servs. Bureau, Inc.*, No. 16-CV-3124, 2017 WL 6316823, at *10 (N.D. Cal. Dec. 11, 2017) (certifying "wrong number" debt collection TCPA class); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (same); *Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same); *see also Munday v. Navy Fed. Credit Union*, No. 8:15-cv-01629-JLS, 2016 WL 7655807, at *12 (C.D. Cal. Sept. 15, 2016) (certifying "wrong number" TCPA settlement class).

its third-party debt collectors regarding a debt allegedly owed to DIRECTV, to a cellular telephone through the use of an artificial or prerecorded voice and who did not provide the cellular phone number called on any initial application for DIRECTV service. [5]

Plaintiff seeks certification of a subclass of such persons who are not DIRECTV customers. This class and subclass are appropriate for certification because they each satisfy the requirements of Rule 23(a) and Rules 23(b)(2) and/or (b)(3).

### A. The Proposed Class and Subclass Are Objectively Defined.

The Ninth Circuit has not adopted any ascertainability requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-25 n.4 (9th Cir. 2017), *cert. denied* 138 S. Ct. 313 (2017); *accord Caldera*, 320 F.R.D. at 517 n.4 (certifying TCPA class without addressing ascertainability). Here, the Class definition nonetheless relies on objective criteria verifiable through: (1) call records that show whether DIRECTV or its debt collectors made a prerecorded call, and (2) consumer applications that show whether DIRECTV obtained prior express consent to make such prerecorded calls. *See also* Hutchinson Decl., Ex. B at 145 (¶ 2.A.(iii)) (requiring each DIRECTV debt collector to "maintain[] records of such calls.") Indeed, DIRECTV's RMS system contains an electronic record clearly distinguishing every telephone number "originally provided to DIRECTV by the customer" from every number obtained through "Skip Tracing." *Id.*, Ex. C at 195. Through this common evidence, class membership can be readily determined.

---

[5] This class definition does not address calls made with an automatic telephone dialing system (ATDS), because discovery has not yet occurred regarding DIRECTV's or its debt collectors' dialing systems. *See Leon v. Standard Ins. Co.*, No. 2:15-CV-07419-ODW, 2016 WL 768908, at *5 (C.D. Cal. Jan. 28, 2016) (Plaintiff "may move to certify a class that is narrower than the class proposed in the Complaint."). If further discovery reveals the use of any ATDS, the Court may revise the class definition. *See, e.g.*, Fed. R. Civ. P. 23 (c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *1 (W.D. Wash. May 25, 2016) (reexamining the definition of a certified TCPA class in light of post-certification discovery).

That Subclass members that are DIRECTV non-customers can be determined objectively through DIRECTV's own records. Indeed, DIRECTV's vendors maintain call records that require a "wrong number" disposition code for each call that reaches a non-customer. *Id.*, Ex. G at 398; Ex. H at 422; Ex. I at 423 ("including Direct TV accounts"); *see, e.g., Abdeljalil*, 306 F.R.D. at 306 (certifying wrong number class where such disposition codes existed).

### B.    The Proposed Class Satisfies the Requirements of Rule 23(a).

Rule 23(a) sets forth four "threshold requirements" for all class actions— numerosity, commonality, typicality, and adequacy—which are all satisfied here.

#### 1.    Numerosity.

Before a class can be certified, the court must determine that it is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). As a general rule, classes of 40 or more are numerous enough. *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012); *see also* 5-23 Moore's Federal Practice - Civil § 23.22[1][b]. It is not necessary that the precise number of class members be known: "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982). "Courts . . . have held that [w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Turcios v. Carma Labs.*, *Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014) (internal quotation marks and citations omitted).

Here, because Magistrate Judge Eick denied Plaintiff's motion to compel (*see infra* Section VII), Plaintiff does not yet know the exact number of Class members, but common sense indicates that the numerosity requirement is satisfied. DIRECTV is a large company that has contracted with twenty debt collectors. Hutchinson Decl., ¶ 46. DIRECTV's Director of Recoveries admitted that it placed 7,074,322 accounts in third-party collections from October 1, 2009, to September 30, 2014. Dkt. 177-4 at ¶ 16. From this information, the Court can easily conclude

1   that the proposed class meets the (relatively lenient) numerosity requirement.

2   ### 2.   Commonality.

3   Commonality is satisfied where common questions are capable of generating

4   common answers apt to drive the resolution of the litigation. *Dukes*, 564 U.S. at

5   350. Commonality is a "limited burden": there need be only one common question

6   to certify a class. *Mazza v. Am. Honda*, 666 F.3d 581, 589 (9th Cir. 2012). In TCPA

7   cases, commonality is readily met, as class members receive the same or

8   substantially similar prerecorded messages by or on behalf of the same defendant.

9   *See Agne v. Papa John's Int'l*, 286 F.R.D. 559, 567 (W.D. Wash. 2012).

10   Here, Plaintiff, Class, and Subclass members share a single common question

11   apt to drive the resolution of this litigation: Whether DIRECTV and its debt

12   collectors made non-emergency debt collection calls to their cellular telephones

13   using a prerecorded voice. This question – and the answer it will generate – is

14   common to the Class and Subclass. Indeed, even with limited discovery to date,

15   Plaintiff has amassed undisputed evidence that standard calls on behalf of

16   DIRECTV employed a prerecorded voice. Hutchinson Decl., ¶¶ 61-64; Ex. D at

17   244, 246; Ex. E at 253-54; Ex. F at 264.

18   ### 3.   Typicality.

19   Rule 23(a)(3) requires Plaintiff to show that the "claims or defenses of the

20   representative parties are typical of the claims or defenses of the class." The

21   purpose of the typicality requirement is to assure that the interests of the named

22   representatives align with the interests of the class. *See Wolin*, 617 F.3d at 1175.

23   The interests and claims of the named Plaintiff and class members need not be

24   identical to satisfy typicality; so long as the claims of named Plaintiff and class

25   members are based on the same legal or remedial theory, differing fact situations of

26   the class members do not defeat typicality. *See Ellis v. Costco Wholesale Corp.*,

27   657 F.3d 970, 984 (9th Cir. 2011); *Wolin*, 617 F.3d at 1175; *see also Hanlon*, 150

28   F.3d at 1019.

1    Here, Plaintiff's claims are typical of the claims of all Class and Subclass

2    members because they arise from the same course of conduct. Plaintiff, like all

3    Class and Subclass members, received prerecorded calls on behalf of DIRECTV.

4    Hutchinson Decl., Ex. D. As with the other Subclass members, Plaintiff is not a

5    customer of DIRECTV, and thus did not provide (and could not have provided)

6    prior express consent to DIRECTV. Declaration of Jenny Brown ("Brown Decl."),

7    ¶¶ 4-7. DIRECTV has subjected all Class and Subclass members, including

8    Plaintiff, to the same harmful conduct. This common conduct provides a common

9    basis for Plaintiff's, Class members', and Subclass members' claims and damages.

10   Plaintiff therefore has satisfied the typicality requirement.

11   **4.    Adequacy of Representation**

12   Rule 23(a)(4) requires that "the representative parties will fairly and

13   adequately protect the interests of the class." Factual differences in the merits of the

14   named Plaintiff's underlying claims do not affect one's ability to vigorously

15   represent the class. *Wolin*,  617 F.3d at 1175; *Walters v. Reno*, 145 F.3d 1032, 1046

16   (9th Cir. 1998). Here, Plaintiff's interests are aligned with those of the Class and

17   Subclass because they have all been harmed by the same common misconduct –

18   namely, prerecorded calls to their cellular phones on behalf of DIRECTV; thus

19   Plaintiff has no conflicts of interest with other Class and Subclass members.

20   Further, for five years, Plaintiff has been, and continues to be, an engaged

21   participant in this litigation, staying abreast of developments in the case, staying

22   prepared to respond to discovery requests, and making herself available for

23   deposition testimony if the need arises. Brown Decl., ¶14. Thus, the adequacy

24   requirement is satisfied here.

25   **C.    The Requirements of Rule 23 (b)(3) are Satisfied**

26   In addition to meeting the four criteria of Rule 23(a), Plaintiff must

27   demonstrate that a proposed class action falls within one of the three categories

28   enumerated in Rule 23(b). To certify a class under Rule 23(b)(3) , Plaintiff must

show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### a.   Questions of Law and Fact Predominate

While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) further considers whether those common questions predominate. Predominance is "readily met" in certain consumer cases. *Amchem*, 521 U.S. at 625; *In re First Alliance Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006).

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan*, 284 F.R.D. at 526 (quoting *Hanlon*, 150 F.3d at 1022). To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

As the Supreme Court held, while Rule 23(b)(3) requires a showing that questions common to the class predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class. *Amgen*, 568 U.S. at 459. "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id*.

### i.   Statutory Violations of the TCPA Will Be Resolved With Proof Common to All Class Members.

"Class certification is normal in litigation under [the TCPA]." *Holtzman*, 728 F.3d at 684. TCPA claims, by their nature, involve large numbers of plaintiffs and a

common course of conduct that affected each class member in the same way. In this case, the issues to be resolved pertain to DIRECTV's conduct and its knowledge. Resolution of these core issues will turn on the same evidence. Indeed, it is difficult to imagine how such evidence could possibly vary between Class members. For this reason, courts in this Circuit readily certify similar TCPA class actions.[6]

Plaintiff's TCPA claims are particularly well-suited to class treatment because the case is entirely about a single uniform course of conduct directed to consumers –prerecorded calls. These are exactly the type of cases that "the Advisory Committee sought to cover[,] in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

### ii.    DIRECTV's Affirmative Defenses Will Be Resolved With Proof Common to All Class Members.

Under the TCPA, prior express consent "is not an element of a plaintiff's *prima facie* case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten*, 847 F.3d at 1044 (citing 2008 FCC Order). To meet its burden, DIRECTV must show "clearly and unmistakably stated" prior express consent. *Satterfield*, 569 F.3d at 955. "The Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) (citing *Meyer*, 707 F.3d at 1036, 1042).

Here, there is a lack of evidence that any absent Class member provided prior express consent to receive prerecorded calls. The Court may thus determine on a classwide basis that DIRECTV cannot meet its burden of establishing prior express consent to cause prerecorded calls to be made to any absent Class or Subclass

---

[6] *See* cases cited *supra* in footnotes 3 and 4.

member. *See, e.g.*, *O'Shea v. Am. Solar Sol., Inc.*, 318 F.R.D. 633, 639 (S.D. Cal. 2017) (certifying TCPA class action and noting that "the fact that Defendant has failed to locate a single record of prior express consent despite having more than two years' time to do so strongly suggests the issue of consent will not be an individualized issue that the Court cannot efficiently address on a class wide basis."). And, even if consent evidence were introduced, DIRECTV is the sole creditor that had a service agreement with any class members. As such, prior express consent (or lack thereof) could be determined based on common evidence. *Stemple v. QC Holdings, Inc.*, No. 12-CV-01997-BAS WVG, 2014 WL 4409817, at *1 (S.D. Cal. Sept. 5, 2014) (certifying TCPA debt collection class where the defendant used common loan application).

### iii.    DIRECTV's Liability Will Be Resolved With Proof Common to All Class Members.

The 2008 FCC Order provides "special treatment" and "specific limits on automated calls by debt collectors." *Nigro v. Mercantile Adjustment Bureau, LLC*, 769 F.3d 804, 806 (2d Cir. 2014). Thus, DIRECTV should be held directly liable under the TCPA for calls placed by a third-party debt collector acting on its behalf. 2008 FCC Order at ¶10; *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012) ("Indemnity may be ***automatic*** under ¶ 10 of the 2008 TCPA Order, which states that calls placed by a third party collector on behalf of a creditor are treated as having been made by the creditor itself.") (emphasis added). Accordingly, courts hold that "the primary creditor[] may be held directly liable under the TCPA, even if the calls were placed by a third-party collector acting on its behalf." *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 2330032, at * 1 (N.D. Ill. Feb. 20, 2015); *accord Aghdasi v. Mercury Ins. Grp., Inc.*, No. CV 15-4030R, 2015 WL 5638086, at *1 (C.D. Cal. Aug. 18, 2015); *see also Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 99 (N.D. Ill. 2013) (holding that "[i]n the context of the 2008 TCPA Order, it is clear that the FCC intended that any calls

placed for the benefit of a creditor by a third party debt collector should be treated as if the creditor placed the call itself.").

Plaintiff has identified common issues that arise from DIRECTV's standard relationship with debt collection agencies. DIRECTV's s standard Collection Services Agreement defines each debt collector as its "fiduciary," which—*by definition*—is a common law agent. *See, e.g.*, *Chem. Bank v. Sec. Pac. Nat'l Bank*, 20 F.3d 375, 377 (9th Cir. 1994) ("The very meaning of being an agent is assuming fiduciary duties to one's principal.") (citing Restatement (Second) of Agency § 1). This evidence fully supports that DIRECTV's debt collectors call consumers "on behalf of" DIRECTV. Under its standard Collection Services Agreement, DIRECTV maintained constant interaction with, and oversight over, its debt collectors. Hutchinson Decl., ¶¶ 51-58 & Ex. B at 139 & 144-45. These debt collectors accessed DIRECTV's electronic systems and conducted their calling programs with DIRECTV's explicit knowledge and approval. Whether or not DIRECTV is liable for its debt collectors' actions is therefore a question that can be resolved on a classwide basis based on common evidence. It is a binary question: DIRECTV either is, or is not, liable for the calls made on its behalf pursuant to a standard Collection Services Agreement. The answer will not—cannot—vary from class member to class member.

### iv. Knowing and/or Willful Violations of the TCPA Will Be Resolved With Proof Common to All Class Members.

"Although neither the TCPA nor the FCC regulations define the terms 'willfully or knowingly'. . . courts have generally interpreted willfulness to imply only that an action was intentional." *Roylance v. ALG Real Estate Servs., Inc.*, No. 5:14-CV-02445-PSG, 2015 WL 1522244, at *10 (N.D. Cal. Mar. 16, 2015) (citing cases).[7] There is simply no question that DIRECTV intentionally employed debt

---

[7] *See also id.* ("[T]he Communications Act of 1943, of which the TCPA is a part,

*Footnote continued on next page*

1    collectors to make calls on its behalf: (1) *after* repeated TCPA litigation by the FTC

2    and private plaintiffs; (2) *after* record fines and a Permanent Injunction prohibited

3    DIRECTV from contracting with vendors violating the TCPA, and (3) *after* over

4    8,800 consumer complaints about DIRECTV's repeated TCPA violations.

5    Hutchinson Decl., Exs. J-L. The central question of whether DIRECTV's conduct

6    was knowing and/or willful is common and predominates.

7                    **b.    A Class Action Is Superior to Individual Actions**

8             The second prong of the analysis under Rule 23(b)(3) also requires a finding

9    that "a class action is superior to other available methods for fairly and efficiently

10   adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Fed. R. Civ. P. 1 ("[Federal

11   Rules] should be construed, administered, and employed by the court and the

12   parties to secure the just, speedy, and inexpensive determination of every action and

13   proceeding"). The Court considers: (A) the class members' interests in individually

14   controlling the prosecution or defense of separate actions; (B) the extent and nature

15   of any litigation concerning the controversy already begun by or against class

16   members; (C) the desirability or undesirability of concentrating the litigation of the

17   claims in the particular forum; and, (D) the likely difficulties in managing a class

18   action. Fed. R. Civ. P. 23(b)(3).

19            While not insignificant, courts routinely find that the statutory TCPA

20   damages of "[f]ive hundred dollars is not sufficient to compensate the average

21   consumer for the time and effort that would be involved in bringing a small claims

22   action against a national corporation." *Agne*, 286 F.R.D. at 571; *see also Kavu, Inc.*

23   *v. Omnipak Corp.*, 246 F.R.D. 642, 650 (W.D. Wash. 2007) (holding that claims

24   under the TCPA are sufficiently small such that they are unlikely to be litigated

25   individually); *Bellows v. NCO Fin. Sys.*, *Inc.*, No. 3:07-CV-01413-W-AJB, 2008

26

27   *Footnote continued from previous page*
      defines willful as 'the conscious or deliberate commission or omission of such act,

28   irrespective of any intent to violate any provision[], rule or regulation.'").

1    WL 4155361, at *8 (S.D. Cal. Sept. 5, 2008) (holding in a TCPA action that "[t]he

2    class action procedure is the superior mechanism for dispute resolution in this

3    matter. The alternative mechanism, permitting individual lawsuits for a small

4    statutory penalty, would be costly and duplicative."). A class action is therefore the

5    superior—indeed, the only practical—method of resolving these claims. *See*

6    *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (noting that

7    "[t]he realistic alternative to a class action is not 17 million individual suits, but

8    zero individual suits"). The obvious benefit of class treatment, therefore, is that it is

9    the only means by which these claims will be heard.

10           Furthermore, each member of the Class pursuing a claim individually would

11   burden the judiciary, which is contrary to the goals of efficiency and judicial

12   economy advanced by Rule 23. *See Vinole v. Countrywide Home Loans, Inc.*, 571

13   F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by

14   class representation would further the goals of efficiency and judicial economy.");

15   *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011). Yet the cost of

16   class treatment is negligible, because the claims will be established with common

17   proof, including standard call records. This proof does not vary from plaintiff to

18   plaintiff. Indeed, individual adjudications of liability would only result in a large

19   number of duplicative trials, presenting identical evidence in support of identical

20   claims, increasing overall litigation costs and the risk of inconsistent rulings—

21   counter to both the efficiency and fairness goals of Rule 23. Superiority is met here.

22   **VI.    APPOINTMENT OF CLASS COUNSEL**

23           Plaintiff requests that Lieff Cabraser Heimann & Bernstein, LLP ("LHCB");

24   Meyer Wilson Co., LPA; and Burke Law Offices, LLC be appointed as Class

25   Counsel for this action. Fed. R. Civ. P. 23(g)(1) provides that "a court that certifies

26   a class must appoint class counsel" and instructs the Court to consider: "(i) the

27   work counsel has done in identifying or investigating potential claims in the action;

28   (ii) counsel's experience in handling class actions, other complex litigation, and the

types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Here, Plaintiff's Counsel has already invested time and effort preparing this case. In addition to the hotly contested motion practice against DIRECTV, Plaintiff's Counsel have conducted thorough pre-filing investigations, conducted first and third-party discovery, met and conferred with DIRECTV, and performed the critically important task of filing for class certification. Hutchinson Decl., ¶¶ 35-47; Wilson Decl., ¶¶ 5-6; Burke Decl., ¶¶ 2, 7. Each of the steps has ensured that this case will proceed efficiently. Indeed, the *Brown* case is the *only* pending case where plaintiffs' counsel have pursued discovery.[8]

In addition, Plaintiff's Counsel's demonstrated track record before this and other courts supports their designation as Class Counsel. Plaintiff's Counsel have unmatched experience and expertise litigating consumer class action cases generally—and particularly cases under the TCPA. Hutchinson Decl., ¶¶ 2-34 & Ex. A; Wilson Decl., ¶¶ 1-4 & Ex. A; Burke Decl., ¶¶ 3-8. Plaintiff's Counsel have served as lead or co-lead counsel in a series of TCPA class actions against the largest and most important financial institutions in the country—and world—and recovered over $400 million for consumers nationwide. Hutchinson Decl., ¶¶ 5-19; Wilson Decl., ¶ 3; Burke Decl., ¶ 7. For example, in *In re Capital One Telephone Consumer Protection Act Litigation*, Master Docket No. 1:12-cv-10064 (N.D. Ill.), LCHB served as Co-Lead Counsel in MDL litigation under the TCPA following a formal application and demonstration that LCHB satisfied each of the elements of Rule 23(g). Hutchinson Decl., ¶ 8. On July 29, 2014, the court granted preliminary

---

[8] Almost two years after this case was filed, on September 5, 2013, Plaintiff Tara Miller filed a copycat class action against DIRECTV in the Southern District of California. *Miller v. Directv, LLC*, 3:13-cv-02073-L-JLB. Plaintiffs' counsel in *Miller* are the firms Kazerounian Law Group, APC; Law Offices of Todd M. Friedman, P.C.; and Hyde & Swigart. *Miller*'s counsel have not conducted any formal discovery. *See* Hearing Tr. at 13:17-19 (Dkt. 221).

1  approval of a $75,455,098.74 class settlement—the largest in the history of the

2  TCPA. *Id.*

3       Plaintiff's Counsel have substantial professional and financial resources to

4  litigate this case, and a record of committing all resources necessary to litigate an

5  action such as this one effectively. *See* Hutchinson Decl., ¶ 5 & Ex. A; Wilson

6  Decl., ¶ 1 & Ex. A; Burke Decl., ¶ 2. LCHB, in particular, is one of the largest

7  plaintiffs-side class action law firms in the country. Hutchinson Decl., Ex. A at 1.

8  Collectively, cases in which LCHB played a lead role have resulted in verdicts and

9  court-approved class action settlements with a combined total recovery for class

10 members exceeding $118 billion in cash, plus other relief (such as extended and

11 enhanced warranties and injunctive relief). *Id.*, Ex. A at 2. Plaintiff's counsel

12 therefore have deep experience prosecuting similarly complex consumer class

13 actions, and are committed to provide significant resources to prosecuting this case.

14      For these reasons, Plaintiff's Counsel satisfy Rule 23(g)(1) and should be

15 appointed Class Counsel.

16 **VII.  IN THE ALTERNATIVE, FURTHER CLASS DISCOVERY IS
       APPROPRIATE AND MAGISTRATE JUDGE EICK'S ORDER**
17     **DENYING MOTION TO COMPEL SHOULD BE OVERRULED.**

18      A party may "obtain discovery regarding any nonprivileged matter that is

19 relevant to any party's claim or defense and proportional to the needs of the case,

20 considering the importance of the issues at stake in the action, the amount in

21 controversy, the parties' relative access to relevant information, the parties'

22 resources, the importance of the discovery in resolving the issues, and whether the

23 burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.

24 Civ. P. 26(b)(1).

25      Here, Plaintiff sought two types of discovery typically sought in all TCPA

26 class actions. First, Plaintiff requested call data identifying the persons to whom

27 DIRECTV and its debt collectors made prerecorded calls. Hutchinson Decl., Ex. M

28 (RFP No. 13). Second, Plaintiff has requested basic policy, compliance, and

investigatory documents to determine whether DIRECTV knowingly or willfully violated the TCPA. *Id.*, Ex. M (RFP Nos. 10-12) & N (Interrogatory No. 12).

Magistrate Judge Eick denied Plaintiff's discovery requests. Hutchinson Decl., Ex. O at 538-39 (Dkt. No. 196). In a three-page order, Magistrate Judge Eick denied all "pre-certification class-related discovery" sought by Plaintiff. *Id.* Magistrate Judge Eick reasoned that, because the proposed class "would include persons subject to the mandatory arbitration of their disputes . . ., Plaintiff has failed to define a viable, certifiable class." *Id.* Judge Eick further held, without analysis or explanation, that "even if the Court were to assume arguendo Plaintiff has defined a viable, certifiable class, all of the discovery requests that are the subject of the Motion are so unreasonably overbroad that the Motion would be denied under Federal Rule of Civil Procedure 26(b)(2)(C)(iii)." Magistrate Judge Eick's ruling was erroneous.

### A.  The Class May Include DIRECTV Customers.

The potential presence of an arbitration clause *does not* preclude class discovery for at least three separate reasons.

First, DIRECTV has not raised any arbitration defense in this case. *See* DIRECTV's Answer to Fourth Amended Complaint, Dkt. 154 (containing no arbitration defense). DIRECTV is therefore precuded from raising arbitration as a defense in this matter. Fed. R. Civ. P. 12 ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading").

Second, even if DIRECTV had presented an arbitration defense, "the presence of an arbitration clause does not create a predominance of individual issues." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015) (collecting cases and certifying consumer class action). Rather, "[class] certification is the process by which a named party may begin representing a class of individuals who are not named and do not otherwise participate in the litigation." *Davis v. Prof'l Musicians Local 47*, No. SA CV 12-00960, 2014 WL 12479397, *2 (C.D.

1    Cal. Mar. 24, 2014). Accordingly, DIRECTV cannot move to compel arbitration

2    against absent class members prior to the certification because "putative class

3    members are not parties to an action prior to class certification." *In re TFT-LCD*

4    *(Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 1753784, at *4 (N.D.

5    Cal. May 9, 2011) (citing *Saleh v. Titan Corp.*, 353 F.Supp.2d 1087, 1091 (S.D.

6    Cal. 2004)); *accord Laguna v. Coverall N. Am., Inc.*, No. 09CV2131-JM BGS,

7    2011 WL 3176469, at *8 (S.D. Cal. July 26, 2011). Thus, in *TFT-LCD Antitrust*

8    *Litigation*, Judge Illston certified the class and directed the defendants "as an initial

9    step … [to] locate and identify every arbitration agreement that they intend to assert

10   against unnamed members of the [] class," "produce a comprehensive list of class

11   members against which defendants will move to compel arbitration," "identify, by

12   bates number, the specific contract that will form the basis of defendants' motion,"

13   and "file (if they desire) an omnibus motion to compel arbitration regarding each

14   plaintiff listed." *Id.* at *5-6. For instance, there is no way for Plaintiff or the Court

15   to know, in a vacuum, to whom DIRECTV's potential arbitration clause might

16   apply or whether it changed over time. Yet DIRECTV has taken no such steps.

17        Third, courts frequently allow persons who do not have arbitration

18   agreements with a defendant to represent a class including persons with potential

19   arbitration agreements. *See Bickerstaff v. Suntrust Bank*, 788 S.E.2d 787, 792-93

20   (Ga. 2016) (finding plaintiff who opted out of arbitration could adequately

21   represent absent class members who had not opted out). Nothing in DIRECTV's

22   purported arbitration clause precludes that outcome here.

23        Magistrate Judge Eick's Order does not address any of these reasons.

24   **B.    Class Discovery Is Not Overbroad.**

25        Magistrate Judge Eick's position is also directly contradicted by TCPA cases

26   ordering production of call data sufficient to ascertain a proposed class. For

27   example, in *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434

28   (3d Cir. 2017), the TCPA plaintiff sought production of the phone number of each

person in the proposed class. The magistrate judge denied that motion. *Id.* at 437 n.1. Following a ruling on class certification, the plaintiff appealed. The Third Circuit's ascertainability standard requires a plaintiff to show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 439 (internal quotations and citations omitted). The *City Select* court held: "because the [the defendant's] database was not produced during discovery, plaintiff was denied the opportunity to demonstrate whether a reliable, administratively feasible method of ascertaining the class exists based, in whole or in part, on that database." *Id.* at 440-41. The court vacated and remanded to the district court with instructions that the defendant's records be produced. *Id.* at 443.

Courts throughout the Ninth Circuit have likewise found that production of call data sufficient to ascertain the proposed class in TCPA class actions is relevant and not premature at this stage.[9] Such data is relevant because it speaks to issues upon which a district court frequently must pass in deciding whether a suit should

---

[9] *See, e.g.*, *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (call logs and dialing lists relevant to numerosity and commonality); *Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015) (outbound calls lists relevant to class claims); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-0964, 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013) (ordering the production of a "dial list" consisting of everyone in the plaintiff's proposed class); *Thrasher v CMRE Fin. Servs., Inc.*, No. 14-CV-1540, 2015 WL 1138469, at *2 (S.D. Cal. March 13, 2015) (same); *Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014) (same); *Webb v. Healthcare Revenue Recovery Grp. LLC*, No. C. 13-00737, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014) (same); *Gilman v. ER Solutions*, No. C11-0806-JCC, Order, Dkt. No. 67, at 4 (W.D. Wash. Feb. 3, 2012) ("Class certification cannot fairly be evaluated without information on whether others received automated calls to which they did not expressly consent, and Plaintiffs have no way to gather this information aside from the discovery requests [defendant] opposes."); *see also Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *2 (N.D. Ill. Sept. 24, 2013) (same); *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *4-5 (N.D. Ill. June 13, 2011) (same); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 503-04 (N.D. Ill. 2009) (same).

1  proceed as a class action under Rule 23, such as numerosity, ascertainability,

2  commonality, and predominance.

3      The same holds true for non-customer TCPA class actions like the Subclass

4  here. *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240 (N.D. Ohio

5  2017), recently compelled the defendant to provide data responsive to requests that

6  are substantially similar to those at issue here. *Meredith*, like this case, involved a

7  proposed wrong number class of persons who received debt collection calls despite

8  having no contractual relationship with the defendant. The plaintiffs requested those

9  "portions of [the defendant's] database that would permit Plaintiff to determine how

10  many, and which, calls Defendant made to wrong numbers using its dialer or a

11  prerecorded voice message." *Id.* at 242. *Meredith* found that the information was

12  "relevant and necessary to" the plaintiffs' wrong number TCPA claims and that any

13  "burden does not outweigh the likely benefit of production." *Id.* at 244.

14  Accordingly, the court ordered the defendant either to "write the program that

15  would produce the class data of wrong number calls and associated account notes

16  for the class period or produce the relevant portions of its database to Plaintiff." *Id.*

17      Similarly, many courts have likewise ordered production of consumer

18  complaints and investigations in TCPA actions;[10] and TCPA compliance

19

20

---

21  [10] *See, e.g., O'Shea v. Am. Solar Sol., Inc.*, No. 14cv894–L, 2016 WL 701215, at *7

22  (S.D. Cal. Feb. 18, 2016) (granting plaintiffs' motion to compel the production of
consumer complaints in TCPA class action); *Donnelly*, 263 F.R.D. at 505 (granting

23  motion to compel prior TCPA complaints because, if defendant "has been charged
with violations on numerous prior occasions, that is certainly relevant to its

24  knowledge of the TCPA and the actions it did or did not take to ensure compliance
with the statute."); *Meredith*, 2016 WL 6649279, at *7 (compelling response to

25  request for consumer complaints in TCPA action because it "seeks information that
could have bearing on plaintiff's class claims as well as defendant's alleged

26  willfulness"); *Mey v. Enter. Fin. Grp., Inc.*, No. 2:15-CV-463, 2016 WL 9110357,
at *7 (M.D. Fla. July 27, 2016) (requiring the defendant "to identify any consumer

27  complaints, government investigations, and lawsuits involving allegations of a
TCPA violation filed or asserted against [it]").

28

documents.[11] Magistrate Judge Eick's order did not address any of these authorities and should be overruled.

## VIII.  **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for class certification should be granted, the Plaintiff, Ms. Brown, should be appointed as Class Representative, and Plaintiff's counsel Lieff Cabraser Heimann & Bernstein, LLP; Meyer Wilson Co., LPA; and Burke Law Offices, LLC should each be appointed Class Counsel.

Dated: May 25, 2018                  Respectfully submitted,


                                     By: /s/ *Daniel M. Hutchinson*
                                          Daniel M. Hutchinson


                                     LIEFF CABRASER, HEIMANN &
                                     BERNSTEIN, LLP
                                     Jonathan D. Selbin (SBN 170222)
                                     jselbin@lchb.com
                                     Douglas I. Cuthbertson
                                     (admitted *pro hac vice*)
                                     dcuthbertson@lchb.com
                                     250 Hudson Street, 8th Floor
                                     New York, NY 10013
                                     Telephone:   (212) 355-9500
                                     Facsimile:   (212) 355-9592

                                     LIEFF CABRASER, HEIMANN &
                                     BERNSTEIN, LLP
                                     Daniel M. Hutchinson (SBN 239458)
                                     dhutchinson@lchb.com
                                     275 Battery Street, 29th Floor
                                     San Francisco, CA 94111-3339
                                     Telephone:   (415) 956-1000
                                     Facsimile:   (415) 956-1008

---

[11] *See, e.g.*, *O'Shea*, 2016 WL 701215, at \*5 (granting motion to compel the defendant to either produce TCPA compliance documents and communications, or state that no responsive documents exist); *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 WL 1658643, at \*2-3, \*8 (E.D. Mich. May 11, 2012) (granting motion to compel regarding TCPA compliance documents).

BURKE LAW OFFICES, LLC
Alexander H. Burke (admitted *pro hac vice*)
ABurke@BurkeLawLLC.com
155 N. Michigan Ave. Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile:    (312) 729-5289

MEYER WILSON CO., LPA
Matthew R. Wilson (SBN No. 290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone:  (614) 224-6000
Facsimile:    (614) 224-6066

PARISI & HAVENS LLP
David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
212 Marine Street, Unit 100
Santa Monica, CA 90405
Telephone:  (818) 990-1299
Facsimile:    (818) 501-7852

HEALEY LAW, LLC
Robert T. Healey (admitted *pro hac vice*)
bob@healeylawllc.com
640 Cepi Drive, Suite A
Chesterfield, MO 63005
Telephone:  (636) 536-5175
Facsimile:    (636) 590-2882

*Attorneys for Plaintiff and the Proposed
Class*