Becca Wahlquist (SBN 215948)
bwahlquist@swlaw.com
SNELL & WILMER L.L.P.
350 South Grand Avenue, Suite 3100
Los Angeles, California 90071
Telephone: 213.929.2500
Facsimile: 213.929.2525

Hans Germann (admitted *pro hac vice*)
hgermann@mayerbrown.com
Kyle J. Steinmetz (admitted *pro hac vice*)
ksteinmetz@mayerbrown.com
MAYER BROWN LLP
71 S Wacker Drive
Chicago IL, 60606
Telephone: 312-701-8547
Facsimile: 312-706-9178

Attorneys for Defendant
DIRECTV, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| JENNY BROWN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, LLC,<br><br>Defendant. | Case No. 2:13-CV-01170-DMG-E<br><br>**DEFENDANT DIRECTV, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:  July 20, 2018<br>Time:  10:00 a.m.<br>Place:  Courtroom 8C<br><br>HON. DOLLY M. GEE |

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

4841-6347-3515

AMECURRENT 729099399.4 22-Jun-18 16:24

# Table of Contents

**Page**

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND .......................................................................... 3

STANDARD ..................................................................................................... 5

ARGUMENT .................................................................................................... 6

1. The Proposed Class Is a Fail-Safe Class ............................................ 6

2. Common Issues Do Not Predominate Over Individualized Issues ................. 7

    a. Individualized Inquiries Exist With Respect to Individuals Bound to Arbitrate Their Claims ........................................... 8

    b. Individualized Issues Related to Consent Predominate ..................... 11

        i. Determining if a Particular Dialed Number Was Provided on an Original Application for DIRECTV Service Involves an Individualized Inquiry ........................................... 12

        ii. Other Methods of Obtaining Consent Require Further Individualized Inquiries ........................................... 14

            A. Customers Provided Consent By Giving Their Telephone Numbers At Other Times ........................... 14

            B. Customers Provided Consent To Be Reached Through Their Customer Agreements ........................... 16

            C. Determining if Non-Customers Consented to Receive Calls Also Involves an Individualized Inquiry ........................... 18

    c. Individualized Issues Predominate With Respect to Whether a Given Call Was Prerecorded ........................... 19

    d. Individualized Issues Predominate With Respect to Vicarious Liability ........................... 20

3. A Class Action Would Not Be A Superior Method ........................... 21

    a. A Class Action Is Not Manageable ........................... 21

    b. Alternative Forums Exist for Alleged Class Members to Prosecute Their Claims ........................... 23

4. The Magistrate's Order on Class Discovery Should Be Upheld ........................... 24

    a. The Proposed Classes Contain Many People Subject to Arbitration Clauses That Prevent Class Certification ........................... 24

    b. The Discovery Requests Are Unduly Burdensome and Overbroad ........................... 25

CONCLUSION ........................... 25

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

# Table of Authorities

**Page**

## Cases

*ACA Int'l v. FCC,*
    885 F.3d 687 (D.C. Cir. 2018).................................................................. 1

*ADT Sec. Servs. v. Sec. One Int'l Inc.,*
    2013 WL 4766401 (N.D. Cal. Sept. 5, 2013)...................................... 18

*Amchem Prods. Inc., v. Windsor,*
    521 U.S. 591 (1997) ..................................................................................... 7

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011) ..................................................................................... 8

*Bickerstaff v. Suntrust Bank,*
    788 S.E.2d 787 (Ga. 2016) ...................................................................... 11

*Bridge v. Credit One Fin.,*
    294 F. Supp. 3d 1019 (D. Nev. 2018) ..................................................... 7

*Clements v. DIRECTV, LLC,*
    2014 WL 1266834 (W.D. Ark. Mar. 26, 2014) ................................... 8

*Comcast v. Behrend,*
    569 U.S. 27 (2013) ....................................................................................... 5

*Davis v. AT&T Corp.,*
    2017 WL 1155350 (S.D. Cal. Mar. 28, 2017)............................... 12, 18

*DCD Programs, Ltd. v. Leighton,*
    833 F.2d 183 (9th Cir. 1987) .................................................................... 9

*Ehret v. Uber Techs. Inc.,*
    148 F. Supp. 3d 884 (N.D. Cal. 2015)................................................... 11

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ............................................................. 5, 14

*Eminence Capital LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) .................................................................. 9

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-ii-

4841-6347-3515
AMECURRENT 729099399.4 22-Jun-18 16:24

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

1

2

**Table of Authorities**
**(continued)**

**Page**

3

4

*Ferrie v. DIRECTV LLC*,
2016 WL 183474 (D. Conn. Jan. 12, 2016) ........................................................ 8

5

6

*Gannon v. Network Tel. Servs. Inc.*,
2013 WL 2450199 (C.D. Cal. June 5, 2013).............................................. 12, 22

7

8

*Gene & Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ............................................................................. 11

9

10

*Gooden v. SunTrust Mortg. Inc.*,
2013 WL 6499250 (E.D. Cal. Dec. 11, 2013)................................................... 18

11

*Gusman v. Comcast Corp.*,
298 F.R.D. 592 (S.D. Cal. 2014) ....................................................................... 25

12

13

*Gutierrez v. Barclays Group*,
2011 WL 579238 (S.D. Cal. Feb. 9, 2011) ....................................................... 19

14

15

*Guzman v. Bridgepoint Educ., Inc.*,
305 F.R.D. 594 (S.D. Cal. 2015) .................................................................... 9, 11

16

17

*Henderson v. U.S. Aid Funds, Inc.*,
2017 WL 766548 (S.D. Cal. Feb. 28, 2017) ..................................................... 20

18

19

*Hill v. Homeward Residential Inc.*,
799 F.3d 544 (6th Cir. 2015) ....................................................................... 15, 16

20

21

*Hill v. T-Mobile USA, Inc.*,
2011 WL 10958888 (N.D. Ala. May 16, 2011) ................................................ 22

22

*Hudson v. Sharp Healthcare*,
2014 WL 2892290 (S.D. Cal. June 25, 2014) ................................................... 14

23

24

*In re TCT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 1753784 ..........................................................................................9, 10

25

26

*In re Wilborn*,
609 F.3d 748 (5th Cir. 2010) ............................................................................... 8

27

28

- iii -

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1

2

**Table of Authorities**
**(continued)**

**Page**

3

4

*Ira Holtzman, CPA v. Turza*,
  728 F.3d 682 (7th Cir. 2013) ................................................................ 12

5

6

*Joshua Brown v. DIRECTV*,
  2013 WL 3273811 (C.D. Cal. June 26, 2013) ................................... 8, 9

7

8

*Kamar v. RadioShack Corp.*,
  375 Fed. App'x 734 (9th Cir. 2010) ...................................................... 6

9

*Katz v. Am. Honda Motor Co.*,
  2017 WL 3084272 (C.D. Cal. June 29, 2017) ..................................... 12

10

11

*Langfitt v. Fed. Marine Terminals, Inc.*,
  647 F.3d 1116 (11th Cir. 2011) ........................................................... 21

12

13

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) ........................................................... 15

14

15

*Mantolete v. Bolger*,
  767 F.2d 1416 (9th Cir. 1985) ............................................................. 24

16

17

*Messner v. Northshore Univ. Healthsystem*,
  669 F.3d 802 (7th Cir. 2012) ................................................................. 6

18

19

*Meyer v. Holley*,
  537 U.S. 280 (2003) ............................................................................. 21

20

21

*Pablo v. ServiceMaster Glob. Holdings Inc.*,
  2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) ........................................ 9

22

*Reyes v. Lincoln Auto. Fin. Servs.*,
  861 F.3d 51 (2d Cir. 2017) .................................................................. 16

23

24

*Rose v. Seamless Fin. Corp. Inc.*,
  916 F. Supp. 2d 1160 (S.D. Cal. 2013) ............................................... 21

25

26

*Ryan v. Jersey Mike's Franchise Sys.*,
  2014 WL 1292930 (S.D. Cal. Mar. 28, 2014) ..................................... 12

27

28

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

- iv -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

**Table of Authorities**
**(continued)**

**Page**

*Sartori v. Susan C. Little & Assocs., P.A.*,
571 Fed. App'x. 677 (10th Cir. 2014) ................................................. 15

*Shimozono v. May Dep't Stores Co.*,
2002 WL 34373490 (C.D. Cal. Nov. 20, 2002) .................................. 18

*Smith v. Microsoft Corp.*,
297 F.R.D. 464 (S.D. Cal. 2014) ................................................. 12, 24

*Stauffer v. Navient Solutions*,
241 F. Supp. 3d 517 (M.D. Penn. 2017) .......................................... 16

*U.S. v. Mitchell*,
49 F.3d 769 (D.C. Cir. 1995) ......................................................... 18

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ......................................................... 22

*Van Patten v. Vertical Fitness Group, LLC*,
847 F.3d 1037 (9th Cir. 2017) ................................................. 14, 19

*Wal-Mart Stores Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................... 5, 7

*Warnick v. DISH Network LLC*,
301 F.R.D. 551 (D. Colo. 2014) ................................................ 19, 23

*Westways World Travel Inc. v. AMR Corp.*,
218 F.R.D. 223 (C.D. Cal. 2003) ................................................... 14

*Zinser v. Accufix Research Inst.*,
253 F.3d 1180 (9th Cir. 2001) ......................................................... 8

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................. 6

47 U.S.C. § 227(b)(3) ..................................................................... 12

47 U.S.C. § 338(i)(4)(A) ............................................................ 22, 23

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

- v -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

**Table of Authorities**
**(continued)**

Page

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Fed. R. Civ. P. 23(a) ................................................................................................. 5

Fed. R. Civ. P. 23(b) ................................................................................................. 6

Fed. R. Civ. P. 26(b)(1) .......................................................................................... 25

Fed. R. Civ. P. 72(a) ............................................................................................... 24

*In re Matter of Rules & Regulations Implementing the Tel. Consumer*
    *Protection Act of 1991,*
    23 F.C.C. Rcd. 559 (2008) (hereinafter the "2008 Order") ......................... 15, 20

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue
Suite 3100
Two California Plaza
Los Angeles, California 90071

- vi -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

**INTRODUCTION**

On December 10, 2014, Magistrate Eick denied Plaintiff Jenny Brown's ("Brown") request for expansive class discovery from Defendant DIRECTV, LLC ("DIRECTV"). Dkt. # 196. In doing so, Magistrate Eick found that Brown could not make even a prima facie showing that her alleged class satisfied Fed. R. Civ. P. 23. *Id.* at 2. After a multiyear stay to allow the D.C. Circuit to consider the scope of relevant provisions of the Telephone Consumer Protection Act ("TCPA") in *ACA Int'l v. FCC,* 885 F.3d 687 (D.C. Cir. 2018), the Court ordered Brown to file any motion appealing that decision by May 25, 2018, as well as two other motions Brown's counsel mentioned at the status conference. Dkt. # 220.

Instead of appealing Magistrate Eick's order under Fed. R. Civ. P. 72, or bringing the other two motions, Brown chose to move for class certification. Brown seeks to certify a class consisting of:

> All persons residing within the United States who, on or after four years prior to the filing of this action, received a non-emergency telephone call(s) from DIRECTV and/or its third party debt collectors regarding a debt allegedly owed to DIRECTV, to a cellular telephone, through the use of an artificial or prerecorded voice and who did not provide the cellular phone number called on any initial application for DIRECTV service.

Mem. at 8-9. In the alternative, Brown seeks certification of a "subclass of such persons who are not DIRECTV customers." *Id.* The potential class is massive in size and scope, as it purports to cover calls going back to 2008 placed by more than twenty DIRECTV outside collection agencies (*id.* at 5), who have collectively handled millions of DIRECTV accounts (*id.* at 10).

Neither the proposed class nor the subclass pass muster for a variety of reasons. First, Brown's proposed class constitutes an impermissible "fail-safe" class. In particular, the putative class is inappropriately defined such that if it were

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION CASE NO. 2:13-CV-1170-DMG-E

found that DIRECTV did not violate the TCPA, no putative class member would be bound by the result because they would fall out of the class.

Further, Brown has not satisfied Fed. R. Civ. P. 23(b)(3)'s requirement that common questions predominate over individualized ones. Under her class definition, Brown argues that if a telephone number was not listed on the *initial* application for DIRECTV service, then the owner of the number, by definition, did not provide consent to receive collection calls by providing a number to DIRECTV or a collection agency.[1] Mem. at 3-4. First, determining who might meet this definition would require an individualized, account-by-account review of DIRECTV's records spanning multiple computer systems to attempt to determine whether a phone number was provided on an initial application. *See* Martin Decl., *passim.* Second, Brown's theory is wrong as a matter of law, since there are a variety of ways individuals can consent to receive calls, such as through their contracts with DIRECTV, by updating their numbers with DIRECTV, or by providing the number in subsequent conversations with a collection agency. Determining whether calls were made with consent thus requires an inquiry into how and when the number was obtained, a process that is individualized.

Similarly, the class includes DIRECTV customers. Mem. at 8-9. But each and every DIRECTV customer agreed to pursue claims against DIRECTV in arbitration, subject to a class waiver. Brown cannot cure this deficiency by asserting a subclass that does not include customers. All of the calls were intended to reach DIRECTV customers, and Brown identifies no way short of an individualized inquiry of showing which calls inadvertently went to a non-customer.

For similar reasons, Brown cannot satisfy the "superiority" requirement of Fed. R. Civ. P. 23(b)(3). A class action would not be superior to other methods of

---

[1] Brown also claims that consent otherwise exists only if a consumer clearly and unmistakably communicates permission to receive prerecorded calls. Mem. at 4.

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

adjudication in light of the individualized issues that would be involved, particularly when individual TCPA actions are a common alternative to class-wide litigation. Moreover, because the information necessary to conduct the individualized inquiries is subject to federal privacy guarantees that would require notice to the customers for Brown to even look at the data, proceeding on a class basis is impractical and extremely expensive, and raises considerable concerns regarding customer confusion regarding the security of their data.

## **FACTUAL BACKGROUND**

There is no record of DIRECTV placing a prerecorded call to Brown. Instead, (as she concedes), Brown received calls from a third-party collection agency (CMI). Mem. at 6. Brown received that call because her number was provided by a DIRECTV customer as a contact number and listed on that customer's DIRECTV account. *See* Martin Decl. ¶¶ 3-5, Ex. A.

CMI was one of more than twenty outside collection agencies that DIRECTV contracted with during the class period to aid in third-party collection services on its customers' accounts. *See* Husman Decl. ¶ 4. In third-party collections, a DIRECTV subscriber whose service has been disconnected will have that account balance written off by DIRECTV at a certain number of days after that disconnect. *Id.* at ¶ 5. If a subscriber's account is written off with an unpaid balance in excess of a certain amount, DIRECTV then contracts to place that account with independent businesses engaged in third-party collections. *Id.* at ¶ 6. Various third-party collectors specialize in collections at different stages after write-off; a third-party collector thus may contract with DIRECTV for primary, secondary, tertiary or quad placements, or some combination thereof. *Id.* at ¶ 7.

When an account is placed with a third-party collector, that business sends a notification to the consumer that it will be attempting to collect on a debt and provides its contact information so that the consumer can reach out directly to that

- 3 -

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

third-party collector for future correspondence. *Id.* at ¶ 9. The third-party collector then conducts all communications with the former DIRECTV customer as itself. *Id.* The third-party collection agencies (not DIRECTV) independently determine whether to dial a given telephone number. *Id.* at ¶ 10. DIRECTV does not control or oversee the third-party collectors' businesses outside of the contractual requirements it sets; indeed, those same collectors contract with many other large businesses to perform collections-related services. *Id.* at ¶ 11.

The collectors may have obtained from a variety of sources a telephone number that it then called. One source of telephone numbers are those that the customer provided to DIRECTV as customer contact numbers. That information (which DIRECTV stores in its STMS system (Martin Decl. ¶¶ 10-16)) is provided to collectors on a highly confidential basis through a computerized system—the Receivables Management System ("RMS"). *See* Husman Decl. ¶¶ 12-15. RMS contains in a file a snapshot of the current telephone numbers (as of the time of the write off) that DIRECTV received as contact numbers from the customer and stored in STMS, numbers that may or may not have been those provided with an initial order or on an application.[2] *See* Martin Decl. ¶¶ 10-17; Husman Decl. ¶¶ 13-15.

Telephone numbers maintained by DIRECTV for its customers in STMS are overwritten whenever a customer updates his or her number. *See* Martin Decl. ¶ 14. Thus, determining if a number from STMS was provided on a customer's original application for DIRECTV services would require a manual review of a separate system (OMS) that lists the number provided at the time of ordering, and then a comparison process with the data in STMS. *See* Martin Decl. ¶¶ 20-22. This process can take up to five minutes per customer to see whether a different

---

[2] Numbers that were not affirmatively provided by the customer, but rather captured by other means (*i.e.* the customer called in from that number), are not loaded into STMS or transferred into RMS. Martin Decl. ¶ 16.

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1   telephone number might have been given in the first equipment order and would not

2   always yield an originally-provided number (*i.e.*, if the customer had ordered

3   equipment from a dealer/retailer, and not directly from DIRECTV). *Id.* at ¶¶ 23-25.

4   In addition to the numbers provided by DIRECTV, collectors can independently

5   obtain different numbers on their own to contact a delinquent customer, because,

6   for example, the customer has given them an updated contact number. Husman

7   Decl. ¶ 17. Whether to dial those numbers or not, and how to dial those numbers, is

8   a matter for the collection agency to decide.[3] *Id.* at ¶ 18.

9                          **STANDARD**

10       A class action is an exception to the usual rule that litigation is conducted by

11  and on behalf of the individual named parties only. *Comcast v. Behrend*, 569 U.S.

12  27, 33 (2013). To show that a case falls within the exception, a plaintiff "must

13  affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores Inc. v.*

14  *Dukes*, 564 U.S. 338, 350 (2011). In determining whether to certify a class, "district

15  courts are not only at liberty to, but must perform a rigorous analysis to ensure that

16  the prerequisites of Rule 23(a) have been satisfied." *Ellis v. Costco Wholesale*

17  *Corp.,* 657 F.3d 970, 980 (9th Cir. 2011).

18       To certify a class, a plaintiff must first demonstrate that the four requirements

19  of Rule 23(a) are satisfied. This includes showing that (1) the proposed class is so

20  numerous that joinder of all members is impracticable, (2) there are questions of

21  law or fact common to the class, (3) the claims of the representative party are

22  typical of the claims of the class, and (4) the representative party will fairly and

23  adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Since Brown

24

25  [3] DIRECTV cautions its outside collection agency that any numbers other than

26  those provided to DIRECTV during the customer's term of service must be
    contacted only "with caution" and "in accordance with all applicable laws." Dkt. #

27  225 (hereinafter "Hutchinson Decl."); Ex. C at 195.

28                          - 5 -        DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
                                         POINTS AND AUTHORITIES IN OPPOSITION TO
                                         PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
                                         CASE NO. 2:13-CV-1170-DMG-E

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

moved for certification under Rule 23(b)(3), she must also show that common questions of law or fact predominate over any questions affecting individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b).

Brown's motion for class certification fails the Rule 23 analysis because (1) it is an impermissible "fail-safe class" and, thus, does not satisfy the commonality requirement; (2) individualized issues predominate over common issues; and (3) a class action is not a superior method to other available methods, including individual actions filed in federal court or in arbitration.

## ARGUMENT

### 1.    The Proposed Class Is a Fail-Safe Class.

Brown's proposed class definition tracks the elements of a claim for violation of 47 U.S.C. § 227(b)(1)(A)(iii) and is thus an inappropriate "fail-safe" class. A fail-safe class is one "defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 Fed. App'x 734, 736 (9th Cir. 2010). "When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class." *Id.* A fail-safe class definition "is improper because a class member either wins or, by virtue of losing, is defined out of the class." *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 825 (7th Cir. 2012).

Here, the class definition tracks the elements of the TCPA, as it purports to include only those individuals that DIRECTV called using a prerecorded voice where the individual did not provide his or her telephone number on DIRECTV's original application for service—which, according to Brown, means consent was lacking. Thus, what Brown identifies (at 11) as the "single common question apt to drive the resolution of the litigation" (*i.e.*, whether DIRECTV and its debt

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

- 6 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

collectors made non-emergency debt collection calls to their cellular telephones using a prerecorded voice) is in fact an illusionary question that shows the extent to which the class is actually fail-safe. If DIRECTV proves, for example, that certain calls were not made using a prerecorded voice, then those individuals would fall out of the class and not be bound by any judgment. If DIRECTV shows that it had consent to call because a number was provided by the customer on his or her original application for service, that number would also fall out of the class. "What matters to class certification . . . is not the raising of common questions–even in droves–but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (ellipses in original). Here, the common questions identified by Brown will only determine who is a member of the class, the hallmark of a failsafe class. *See Bridge v. Credit One Fin.,* 294 F. Supp. 3d 1019, 1035 (D. Nev. 2018) ("If the Court makes this determination and identifies the class members, the question is no longer a question common to be resolved on a class-wide basis. If the Court does not reach the merits of this question, no member of the proposed class can be identified.").

Brown may argue her class is not a fail-safe class because it contains one criterion not expressly included in the statute—that the calls be made to a number other than the one provided on the initial application for DIRECTV service. Mem. at 8-9. But this is a distinction without a difference. Brown's theory is that numbers that were not provided on an original application are co-extensive with numbers provided without consent. Mem. at 3-4. Changing the label on the elements of the class does not change its substance: a class of "John, Paul, George, and Ringo" and a class of "the Beatles" are functionally the same thing.

## 2. Common Issues Do Not Predominate Over Individualized Issues.

Predominance is meant to be a "far more demanding" standard than Rule 23(a)'s commonality requirement. *Amchem Prods. Inc., v. Windsor*, 521 U.S. 591,

- 7 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

623-24 (1997). It requires a court to "assess how the matter will be tried on the merits," which "requires an understanding of the relevant claims, defenses, facts and substantive law presented in the case." *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010); *see also Zinser v. Accufix Research Inst.,* 253 F.3d 1180, 1189 (9th Cir. 2001)("[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate."). Here, individualized inquiries abound and clearly predominate over the generic common questions identified by Brown.

### a. Individualized Inquiries Exist With Respect to Individuals Bound to Arbitrate Their Claims.

Brown's putative class fails to distinguish between DIRECTV customers and non-customers. Mem. at 8-9. DIRECTV has had binding terms of service in place throughout the class period. *See* Martin Decl. ¶¶ 27-28 & Exs. B-O. During the entire relevant time period, that agreement contained (and continues to contain) an arbitration provision and a class action waiver.[4] Inclusions of a non-trivial number

---

[4] Before the 2016 merger with AT&T, DIRECTV's arbitration clause provided that "any Claim either of us asserts will be resolved only by binding arbitration" and that "[n]either you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity." *See* Martin Decl., Exs. B-L at § 9(b)-(c). Since its merger with AT&T, DIRECTV has adopted the arbitration provision used by its corporate affiliates, which provides that "DIRECTV and you agree to arbitrate all disputes and claims between us" and "includes, but is not limited to," "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." Martin Decl. Exs. M at § 9, Exs. N-O at § 8. Both provisions have been widely enforced, including, in the case of AT&T's provision, by the Supreme Court. *See, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Ferrie v. DIRECTV LLC*, 2016 WL 183474, at *3-11 (D. Conn. Jan. 12, 2016); *Clements v. DIRECTV, LLC*, 2014 WL 1266834, at *3 (W.D. Ark. Mar. 26, 2014); *Joshua Brown v. DIRECTV*, 2013 WL 3273811, at *4 (C.D. Cal. June 26, 2013).

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

- 8 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

of class members who are subject to an arbitration provision is, in and of itself, enough to defeat class certification. *Pablo v. ServiceMaster Glob. Holdings Inc.*, 2011 WL 3476473, at *3 (N.D. Cal. Aug. 9, 2011) (denying certification where "defendants have presented significant evidence of numerous enforceable arbitration agreements"); *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 612 (S.D. Cal. 2015) ("Plaintiff fails to demonstrate an identifiable and ascertainable class" where many "may not even be eligible to participate in this class action" in light of arbitration agreements). Moreover, there is little doubt that the clause covers the conduct complained of, as the court has already found in a related matter that DIRECTV's arbitration clause applies to post write-off collection. *See Joshua Brown v. DIRECTV*, 2013 WL 3273811 (C.D. Cal. June 26, 2013).[5]

While Brown makes no attempt to address DIRECTV's arbitration clauses in her class certification motion, she does address the issue when asking the Court to separately compel the production of voluminous calling data, arguing that arbitration provisions do not necessarily defeat class certification. Mem. at 21-22. One case Brown cites in support of this proposition (*In re: TFT-LCD (Flat-Panel Antitrust Litig.*) is in fact illustrative of the dangers of allowing a class to go

---

[5] Brown claims DIRECTV waived an arbitration defense by not pleading it in its answer. Mem. at 21. But Rule 12 only requires pleading defenses to the "claims for relief" in the pleading, and DIRECTV does not have an arbitration defense against the claims alleged by the named plaintiff Brown. In any event, since the court does not intend to enter a scheduling order until after this motion is decided (Dkt. # 220), leave to amend the answer should be liberally granted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). When seeking leave to amend, "[p]rejudice is the touchstone of the inquiry under rule 15(a)." *Eminence Capital LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003). If an amendment is needed, no prejudice can result here since Brown is on notice of DIRECTV's intention to enforce its arbitration clauses against absent class members, given that it formed the basis of Magistrate Eick's discovery decision and Brown has fully briefed those issues.

- 9 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

forward that includes a number of individuals subject to arbitration agreements. Contrary to Brown's assertion (at 22), the defendant in *TFT-LCD did not* raise the issue of arbitrability at the class certification stage. Instead, in addressing the defendant's belated argument that the court should enforce arbitration clauses against some of the certified class and stay the case, the court expressed frustration that the issue had not been brought to its attention earlier since "the existence of such agreements with some members of the putative class but not others is a quintessential individualized issue that bears on the propriety of class certification."[6] *In re TCT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *3 (N.D. Cal. May 9, 2011). Here, should the proposed class be certified, the Court will have to either (i) conclude that the arbitration clause applies to all DIRECTV customers and then conduct individualized inquiries to locate those customers or (ii) address motions to compel arbitration against thousands (if not millions) of potential class members, each involving individual questions of contract formation and consent. Either way, it is "a quintessential individualized issue" that makes a class inappropriate.

Brown may attempt to argue that she can cure this defect through her proposed subclass consisting of non-DIRECTV customers. But Brown provides no indication as to how she intends to locate those individuals who might fit within the subclass, which would largely consist of "wrong number" recipients called in an effort to reach a DIRECTV customer. To identify the individuals who fit within the subclass, Plaintiff must identify some method by which she could distinguish calls to a customer from calls that mistakenly ended up reaching a non-customer. She has not made even a token attempt (much less put on any evidence) that would allow

---

[6] The Court did state that it was not addressing what impact the arbitration clause would have on class certification or revisiting its class decision in the order. *In re TCT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *3, n.2.

- 10 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

the Court to determine if this is possible or administratively feasible. *Accord Guzman,* 305 F.R.D. at 612 (S.D. Cal. 2015).

The cases cited by Brown do not contradict this principle. In *Ehret v. Uber Techs. Inc.*, the question of arbitrability could be established by class-wide proof because the individuals subject to the clause could be readily identified, and the arbitration clause was found to be "generally enforceable." 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015). Here, by contrast, arbitration is not subject to class-wide proof because there is no way of determining without an individualized inquiry whether anyone who received a call was *not* a customer and thus not subject to the clause. *Bickerstaff v. Suntrust Bank*, 788 S.E.2d 787 (Ga. 2016), is similarly inapplicable. There, the issue on appeal was whether a plaintiff filing a putative class action tolled the period of time in which other customers might opt-out of an arbitration clause in the limited period of time allowed by the clause. *Id.* at 791-92. The Court found that it did toll the period, but found that "Bickerstaff's complaint serves only to toll the contractual period for making such an election until such time as the class is certified, and does not improperly abridge the contractual rights of others." *Id.* at 793. There is nothing to toll here, as no such opt-out provision exists in DIRECTV's contracts and nothing in *Bickerstaff* suggests that individuals bound by an arbitration clause can avoid the enforcement of that clause because someone else filed a class action.[7]

### b. Individualized Issues Related to Consent Predominate.

Here, as in many TCPA cases, "[t]he predominant issue of fact is undoubtedly one of *individual* consent." *Gene & Gene LLC v. BioPay LLC*, 541

---

[7] Brown claims (at 22) that Bickerstaff shows that courts "frequently" allow persons who do not have arbitration agreements with a defendant to represent a class that includes persons subject to arbitration, but she cites only this single case arising under Georgia law.

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

F.3d 318, 327 (5th Cir. 2008) (emphasis in original). Thus, contrary to Brown's assertion (at 13) that class certification is "normal" in TCPA litigation,[8] courts frequently decline to certify TCPA class actions when individualized issues are present. *See, e.g., Ryan v. Jersey Mike's Franchise Sys.*, 2014 WL 1292930, at *7 (S.D. Cal. Mar. 28, 2014) (granting motion to deny class certification because of individual question of consent illustrated by Plaintiff's failures to recall his own consent); *Gannon v. Network Tel. Servs. Inc.*, 2013 WL 2450199, at *3 (C.D. Cal. June 5, 2013) (denying motion for class certification because plaintiff's proposed class was not identifiable or ascertainable where issues of consent would have to be determined for each individual class member); *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 472 (S.D. Cal. 2014) (class certification denied in TCPA text message action where court found that class action was not a superior vehicle for adjudicating claims where issues of consent had to be considered on an individual basis); *Davis v. AT&T Corp.,* 2017 WL 1155350, at *5-6 (S.D. Cal. Mar. 28, 2017) (denying motion to certify class based on individualized issues of consent, including the circumstances in which individuals indicated they were reached at a wrong number); *Katz v. Am. Honda Motor Co.,* 2017 WL 3084272, at *4-5 (C.D. Cal. June 29, 2017) (individualized issues of consent predominate due to need to determine whether individuals had entered into contracts, the scope of the contract entered into, and the timing of relevant calls).

        **i.   Determining if a Particular Dialed Number Was Provided on an Original Application for DIRECTV Service Involves an Individualized Inquiry.**

---

[8] The case cited by Brown for this proposition, *Ira Holtzman, CPA v. Turza*, involved an entirely separate provision of the TCPA which makes sending unsolicited faxes without proper opt-out language a violation of the TCPA. 728 F.3d 682, 683-84 (7th Cir. 2013). Those claims, unlike claims under 47 U.S.C. § 227(b)(3), do not involve issues of consent.

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

As an initial matter, even determining which telephone numbers meet the class definition because they were provided on an "initial application" would require a burdensome and individualized review. DIRECTV's STMS system contains two phone number fields populated with customer-provided numbers, but does not provide the date a number was given to DIRECTV. Instead it merely shows the most up-to-date number(s) provided by the customer to DIRECTV. *See* Martin Decl. ¶¶ 10-15. To determine whether a number dialed by a collection agency was provided in the initial application, DIRECTV would have to: (1) obtain a full list of telephone numbers dialed by each of the collection agencies; (2) match each individual number to a given account; (3) use that account number to research the original telephone number(s) provided with the first order from a different database, OMS (if it is even available); and then (4) compare to determine whether any of the called numbers aligns with the original number on the account. *See id.* at ¶¶ 19-26. This process of accessing OMS data must be done manually (*id.* at ¶¶ 21-22) and thus necessitates an individualized review across millions of accounts.

Brown suggests (at 9) that DIRECTV could compare the records RMS shows were provided to DIRECTV by customers with a list of dialed numbers to determine class membership through common proof. But this is wrong. The RMS data (originating from STMS data) would show *the current* numbers that DIRECTV has for customers (which are not necessarily, and often are not, the numbers provided at the time of an initial order or application) (Martin Decl. ¶¶ 10-17), and thus the numbers contained in the STMS and RMS telephone fields are broader than those excluded by Brown's class definition.

Moreover, *Brown's* number was listed on a DIRECTV account as a number provided by a customer, and is listed in OMS as a number provided as part of an order. Martin Decl. ¶¶ 3-5 & Ex. A. Thus, if this is the manner by which Plaintiff envisions identifying class members, it would exclude Brown from the class and

Snell & Wilmer
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

- 13 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

render her an inappropriate class representative, since of course one cannot represent a class if one is not a member of that class. *Westways World Travel Inc. v. AMR Corp.,* 218 F.R.D. 223, 230 (C.D. Cal. 2003) ("Implicit in Rule 23 is the requirement that a class exist and that the putative class representative be a member of the class.").

### ii.   Other Methods of Obtaining Consent Require Further Individualized Inquiries.

The individualized issues related to consent do not end with determining whether a particular number was provided with an initial application for service, as there are many other times and circumstances where customers provide consent.

### A. Customers Provided Consent By Giving Their Telephone Numbers At Other Times.

The FCC has held that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at that number which they have given, absent instructions to the contrary." *Hudson v. Sharp Healthcare*, 2014 WL 2892290, at *3 (S.D. Cal. June 25, 2014). Thus, "a prior knowing release" of a customer's cell number "is sufficient to establish prior express consent." *Id.* at *5; *see also Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044-46 (9th Cir. 2017) (consent associated with a customer providing its telephone number depends on the "transactional context").[9]

Plaintiff quotes an FCC order (at 3) for the proposition that for debt collection calls, prior express consent is "deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." This "language does not change the general definition of express consent; it instead 'emphasize[s]' that

---

[9] Brown may contend that this is a merits issue, but it is well-settled that "the merits of the class members' substantive claims are often highly relevant when determining whether to certify a class." *Ellis,* 657 F.3d at 981.

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

- 14 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

creditors can call debtors only 'to recover payment for obligations owed.'" *Hill v. Homeward Residential Inc.*, 799 F.3d 544, 551-52 (6th Cir. 2015). Thus, whether a telephone number was provided with an initial order for service, or at some other point in time, it can still constitute consent if given before the call was placed. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1122 (11th Cir. 2014); *Sartori v. Susan C. Little & Assocs., P.A.*, 571 Fed. App'x. 677, 683 (10th Cir. 2014). Indeed, in the same order, the FCC "f[ound] that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party," and hence it "clarify[ied] that such calls are permissible." *In re Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 564 (2008) (hereinafter the "2008 Order").

Further, DIRECTV does not sell cars (*i.e.*, a one-time transaction). It sells satellite programming service, and hence the "transaction" that "result[s] in the debt owed" is an ongoing one, continuing as long as a customer chooses to keep obtaining service (and incurring new debt). Thus, a customer who provides one number when she opens her account and another years later while still receiving service has provided both numbers in connection with the same global transaction (*i.e.*, her receipt of satellite service from DIRECTV). Customers may provide their up-to-date contact numbers, and hence consent to collections calls, under all manner of different circumstances, such as when calling DIRECTV about their accounts, upgrading service, adding a receiver, changing their programming packages, etc. As the Sixth Circuit explained, "the FCC never uses the words *initial* or *original* before 'transaction.'" *Hill*, 799 F.3d at 551. "A debtor consents to calls about 'an existing debt' when he gives his number 'in connection with' that debt . . .including after his initial signing of the loan," and "[w]hile debtors may '[t]ypically' give their cellphone number 'as part of a credit application' at the

Snell & Wilmer
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

- 15 -

beginning of the debtor-creditor relationship . . . it doesn't *have* to be that way." *Id.* at 552 (internal citations omitted). *Accord Stauffer v. Navient Solutions*, 241 F. Supp. 3d 517, 523 (M.D. Penn. 2017) ("context controls when measuring consumer consent," and "[c]ourts regularly reject debtors' attempts to wield the 2008 Ruling as a shield from calls otherwise consented to.")

### B. Customers Provided Consent To Be Reached Through Their Customer Agreements.

Another method through which consent can be obtained under the TCPA is through a contract. *See Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 57 (2d Cir. 2017) (consent can be included as a term in a binding contract). DIRECTV's customer contracts have consistently provided authority for it to contact its customers, but that provision has changed over time. For example, prior to its merger with AT&T, versions of DIRECTV's customer agreements contained this language in which a customer expressly agrees to receive collection calls:

> If you provide a cellular telephone number, you acknowledge and consent that we may call you on your cellular phone for business purposes, including collections calls.

Martin Decl. ¶ 28, Ex. H, § 3(b). By 2014, the provision had been amended to read as follows:

> With regard to all telephone numbers, including cellular numbers, you or an Authorized User choose to provide on your account, you and/or such Authorized User acknowledge and consent to receive business and informational calls relating to your Service to such numbers, including collections calls. You agree such calls may be pre-recorded messages or placed with an automatic telephone dialing system. In addition, you agree that we may send non-marketing service or account related text messages to cellular phone numbers provided on your account.

*Id.*, at Ex. K at § 3(b). After DIRECTV's merger with AT&T, the provision changed again, and its current iteration reads as follows:

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

> With regard to all telephone numbers, including cellular numbers, you or an Authorized User choose to provide on your account, you and/or such Authorized User expressly consent and agree to receive business and informational calls relating to your Service to such numbers, including collections calls. You agree such calls may be pre-recorded messages or placed with an automatic telephone dialing system. In addition, you agree that we may send non-marketing service or account related text messages to cellular phone numbers provided on your account. . .You agree that DIRECTV, and its affiliates, agents and service providers may contact you at any email address or any telephone number you provide, now or in the future, or that we otherwise identify as your number, including a number for a cellular phone or other wireless device or service.

*Id.*, at Ex. O, § 3(b).

That DIRECTV's agreement has changed over time introduces another individualized inquiry. For any calls that were made, the Court would be required to decide which contract governed at the time of the calls, determine the circumstances by which a given number was provided, and then determine whether those circumstances fall within the consent provided by the applicable contract.

As with the arbitration clauses, Brown may attempt to fall back on her putative subclass to avoid issues of consent relating to DIRECTV customers. But this argument suffers from the same defects as it does on arbitration—Brown has provided no way to determine who is a DIRECTV customer without an individualized inquiry. Indeed, the only method Plaintiff even suggests to determine who are not DIRECTV customers (at 10) is using "wrong number" disposition codes from the collection agencies. But Plaintiff's proof on this point is woefully insufficient. It cites three documents that purport to show DIRECTV "vendors" maintain call records that use a wrong number disposition code, but all three of those documents actually come from **one** vendor, CMI. Hutchinson Decl. Ex. G, Ex. H., Ex. I. There is no evidence in the record regarding what any of the 19 other vendors used for disposition codes over the multiyear proposed class period.

- 17 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

Moreover, there is no evidence discussed in Plaintiff's brief that would allow the Court to determine how CMI used this code, or whether it was accurate.

Finally, class certification based simply on a "wrong number" designation is improper. A "'wrong number' notation proves nothing because many customers tell callers they have reached the wrong number, though the customer's number was dialed, as a 'procrastination tool' to avoid speaking on the phone." *Davis*, 2017 WL 1155350, at *5 (internal citations omitted). In addition, even to the extent there are notations reporting that a called party said the caller reached a wrong number, such notations would be rank hearsay, and hence could not be used at trial. *ADT Sec. Servs. v. Sec. One Int'l Inc.*, 2013 WL 4766401, at *3 (N.D. Cal. Sept. 5, 2013) ("Rule 803(6) does not cover records based on information obtained from an outsider because such persons have no business duty to report accurate information to the record preparer and the record therefore does not have the presumption of accuracy that statements made during the regular course of business have); *U.S. v. Mitchell*, 49 F.3d 769, 778 (D.C. Cir. 1995); *Shimozono v. May Dep't Stores Co.*, 2002 WL 34373490, at *13 (C.D. Cal. Nov. 20, 2002). Brown, then, could not introduce the notations themselves at trial but would instead need to call every individual she purports to identify as a class member to provide sworn testimony that the number was a wrong number and subject those witnesses to cross-examination. Since Courts must consider whether "the claims [are or] are not capable of proof at trial" in assessing class certification, *Gooden v. SunTrust Mortg. Inc.*, 2013 WL 6499250, at *6 (E.D. Cal. Dec. 11, 2013), these mini-trials constitute another reason why common proof would not predominate.

### C. Determining if Non-Customers Consented to Receive Calls Also Involves an Individualized Inquiry.

Even calls to non-customers would require an individualized inquiry into the circumstances under which the number was obtained by the collection agency.

- 18 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

Consider, for example, former customers. As noted above, DIRECTV had consent to make collection calls to individuals that voluntarily provided their number to DIRECTV. That consent survives the termination of service, meaning that DIRECTV can continue to make prerecorded voice collection calls to former customers that have amounts owed. *See, e.g., Van Patten*, 847 F.3d at 1048 (cancellation of gym membership did not terminate consent).

Similarly, if DIRECTV's customer supplied a number belonging to another person, an individualized inquiry into the customer's authority to provide consent to call that number would be required. Family members and others can provide consent to call a cellular telephone number even if they are not the "subscriber" to that number. *See, e.g., Gutierrez v. Barclays Group*, 2011 WL 579238, at *3 (S.D. Cal. Feb. 9, 2011) (husband can provide consent for subscriber wife, if she "possessed common authority over or other sufficient relationship to the" phone.). For example, in *Warnick v. DISH Network LLC*, 301 F.R.D. 551, 557 (D. Colo. 2014), the court refused to certify a class of persons called by DISH "who were either not a DISH customer or who previously asked DISH to cease making such calls through a suppression request," as reflected in DISH's records. As the court noted, "there are many different scenarios in which the numbers provided to [DISH] may have been associated with someone other than the named account," such as households that subscribe to video service "under one named account holder for a family, friends, or roommates, all of whom may have provided consent to be called." *Id.* at 558-59. Similarly, here, the putative class members have not been identified, and no attempt has been or could be made at actually performing the individualized inquiry that would be required to determine precisely how each number was obtained, whether it was from the customer, and whether the customer providing the number had authority to provide the number.

### c. Individualized Issues Predominate With Respect to Whether a Given Call Was Prerecorded.

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

Brown asserts (at 14) that "prerecorded calls" represent a "uniform course of conduct directed to consumers." But in reality, as Brown recognizes (at 5), this case involves more than 20 collection agencies, all of whom had their own collection strategies and differing collection campaigns over the many years at issue. *See* Husman Decl. ¶¶ 4, 10-11, 18. Not all of those vendors placed prerecorded calls during all periods covered by the class. *Id.* at ¶ 19. Thus, far from a single uniform course of conduct, determining *which* calls may have resulted in prerecorded messages would require the court to undertake a vendor-by-vendor, campaign-by-campaign, and call-by-call analysis of records to assess whether the call was included in a program that *may* have left prerecorded messages, and then to determine whether the call actually left said message.[10]

### d. Individualized Issues Predominate With Respect to Vicarious Liability.

It is certainly true that under the TCPA a creditor may be held liable for calls made by a debt collector who acts "on behalf of that creditor." 2008 Order at ¶ 10. However, the question of whether a collection agency has acted "on behalf of" the creditor is a question of agency law. *Henderson v. U.S. Aid Funds, Inc.*, 2017 WL 766548, at *6-7 (S.D. Cal. Feb. 28, 2017). That issue is disputed here. The contracts between DIRECTV and its outside collection agencies state that these are separate companies acting as independent contractors. *See, e.g.,* Hutchinson Decl. Ex. B at 159, § 13.13.[11] Moreover, control and consent to act on behalf of the principle are

---

[10] Brown has provided no evidence as to whether records showing a prerecorded message was left is available from the records of the outside collection agencies.

[11] Plaintiff disingenuously claims (at 5) that the contracts in question are "Agency" agreements. But it is apparent from the face of the contracts that the term agency refers to the counterparties' status as collection agencies, not the relationship between the parties. Hutchinson Decl. Ex B at 137, Preamble. In reality, the contracts make clear that the collection agencies serve as independent contractors. *Id.* at 159, § 13.13. Similarly, Plaintiff's claim that the collection agencies act as a fiduciary (at 16) is misleading. That contractual provision applies only when the

S<small>NELL</small> & W<small>ILMER</small>
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

both essential elements of an agency relationship. *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011) ("The essence of the common law's test for whether an agent is an employee or an independent contractor is the control of details")' *Rose v. Seamless Fin. Corp. Inc.*, 916 F. Supp. 2d 1160, 1168 (S.D. Cal. 2013). ("ordinary principal/agency relationship demands . . . the manifestation of consent by one person to another that the other shall act on his behalf . . . and consent by the other so to act."). Neither in present in the relationship here. The *agencies* decide what collection methods to use (including what numbers to call), not DIRECTV. *See* Husman Decl. ¶¶ 10-11. Moreover, to the extent such decisions violate the TCPA, those collection agencies would be acting outside their contract (*id.* at ¶ 18; Hutchinson Decl. Ex. B at 150, § 1.4), and thus outside any authority delegated by DIRECTV. *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees *in the scope of their authority or employment*") (emphasis added).

A final determination of agency, however, is almost always fact-intensive. Thus, if the case should proceed as a class action, the Court would be tasked with conducting individualized inquiries in DIRECTV's relationship with twenty (20) collection agencies (including how much control DIRECTV exercised over the agencies' practices), how those relationships changed over time, and how much control DIRECTV exercises in different situations (such as when a debt has been written off), another classic individualized inquiry.

**3.    A Class Action Would Not Be A Superior Method.**

**a.  A Class Action Is Not Manageable.**

---

agency is holding customer payments that it is contractually bound to remit to DIRECTV, not when it is making collection calls. *Id.* at 144-45, Attachment 1 § 1(a)(v).

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

Rule 23(b)(3) also requires showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Here, Brown's proposed class action would not be a superior method for the litigation, as other alternatives would be more manageable and efficient.

As explained above, in light of the individualized issues, Brown cannot establish liability by some generalized, class-wide method of proof. Because common issues would not predominate, a class action would not be superior to other methods for fairly and efficiently adjudicating the controversy. *Gannon,* 2013 WL 2450199, at *4. Similarly, a class action would not be superior in light of DIRECTV's arbitration agreements. *See Hill v. T-Mobile USA, Inc.,* 2011 WL 10958888, at *19 (N.D. Ala. May 16, 2011) (superiority requirement not satisfied where plaintiffs "neglected to suggest how to manage the rather thorny issue of putative class members" who may be subject to "a class action waiver provision, an agreement to arbitrate, or both.").

In addition, the inherent difficulties in managing a class action are heightened here because of confidentiality concerns. Satellite providers like DIRECTV are subject to strict limitations on the disclosure of their customers' private data. Thus, "a satellite carrier shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or satellite carrier." 47 U.S.C. § 338(i)(4)(A). In the absence of such prior consent, such information can only be disclosed pursuant to one of a limited number of statutory exceptions, including (i) if the disclosure is necessary to render or conduct a legitimate business activity related to satellite service; (ii) if the disclosure occurs pursuant to a court

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

order and with notification to the affected customers; (iii) if the disclosure is limited to names and addresses, when the customer has been given an opportunity to limit the disclosure and the disclosure does not reveal a customer's viewing habits or the extent of any transaction related to the account; and (iv) certain authorized disclosures to government entities. *Id*. at § 338(i)(4)(B).[12]

Thus, if the case proceeds as a class action, the Court will have to order notice and a corresponding opportunity to object to the millions of customers whose accounts were subject to collection activities. Such a notice campaign would be incredibly expensive, since millions of notices would be sent and, given the length of the class period, substantial resources would have to be spent on an administrator to obtain up-to-date customer information. Providing the notice would confuse customers, and (in this era of increased privacy concerns), no doubt lead many people to needlessly worry that they have been the victim of a data breach when they receive the notice. This substantial cost and burden associated with obtaining and analyzing the underlying data is, in and of itself, a sufficient reason to deny class certification. *Warnick,* 301 F.3d at 557-58 (finding that providing notice to DISH's entire customer base to allow for the location of class members would impose an enormous and disproportionate burden on DISH, thus rendering the class not administratively feasible).

### b. Alternative Forums Exist for Alleged Class Members to Prosecute Their Claims.

Moreover, in light of the high minimum level of statutory damages and the possibility of treble damages, if any other persons were allegedly aggrieved in the same manner as Brown, they have a quick, adequate and superior remedy elsewhere and every incentive to pursue such a remedy. "The TCPA allows a litigant to seek statutory damages of $500 for each violation, and potentially treble damages," and

---

[12] There is no exception for disclosure to opposing parties in litigation.

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

this "statutory remedy is designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf." *Smith*, 297 F.R.D. at 469 (S.D. Cal. 2014) (quoting *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995). Brown asserts (at 17) that the amount at issue is not sufficient to compensate a consumer for the time and effort associated with bringing a claim in court, but experience defies that argument. The courts have been inundated with individual TCPA claims. For example, the Northern District of Illinois alone appears to have received more than 60 individual claims already in 2018. Steinmetz Decl. Ex. A.

### 4. The Magistrate's Order on Class Discovery Should Be Upheld.

Brown requests that the Court overturn Magistrate Eick's discovery ruling and order production of voluminous calling data and related documents. But, for precertification discovery, "the plaintiff bears the burden of advancing a prima facie showing that the requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). Here, Brown sought an early ruling on certification; if the Court refuses to certify the class, then *of course* a prima facie showing has not been made that a class is appropriate and Brown should not be permitted to fish through confidential records for another attempt at certification. Moreover, Brown has not met her burden to show that the ruling was "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

#### a. The Proposed Classes Contain Many People Subject to Arbitration Clauses That Prevent Class Certification.

Magistrate Eick concluded that "it is apparent that both the putative class and putative subclass as defined by Plaintiff would include persons subject to the mandatory arbitration of their disputes." Dkt # 196 at 2. This is clearly correct. The collection calls at issue were targeted to DIRECTV subscribers, all of whom agreed to arbitrate claims against DIRECTV. Brown does not even attempt to argue in its motion that the class would *not* contain individuals subject to arbitration, but

- 24 -

instead asserts (at 21) that a class can nevertheless include individuals who are subject to the arbitration clause. But that position is incorrect since Brown provided no mechanism by which individuals who are subject to arbitration clauses can be identified or have the issue resolved by class-wide proof.

### b. The Discovery Requests Are Unduly Burdensome and Overbroad.

Magistrate Eick also found that the discovery sought was "so unreasonably overbroad that the Motion would be denied under Federal Rule of Civil Procedure 26(b)(c)(iii)." *See also* Fed. R. Civ. P. 26(b)(1) (under current Rules, discovery must be "relevant to any party's claim or defense and proportional to the needs of the case."). Undue burden is a proper reason to deny production of a call list in a TCPA case, *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 598 (S.D. Cal. 2014), and here, a finding of undue burden is plainly correct. As described in DIRECTV's initial submission, a call log of calls actually placed by DIRECTV would be irrelevant, as those sorts of service and other calls are not within Plaintiff's class and the calls were directed at customers. Dkt # 177 at 34-37. And, assuming that the information *could* be obtained, the data would all be subject to STELA.

Here, Brown envisions a situation where the Court informs her that her class cannot be certified, but then, she is nevertheless permitted to engage in an extremely costly fishing expedition to try and substantiate her failed claims. Brown's motion contains no analysis of what she believes she might find in this data that might change the underlying facts. Nor could she, as the proposed class will always include customers subject to arbitration, consent will always require an individualized inquiry, and STELA will always make the class unmanageable.

## **CONCLUSION**

For the reasons explained above, Plaintiff's motion should be denied.

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:        June 22, 2018

Respectfully submitted,

SNELL & WILMER L.L.P.

By: */s/ Becca Wahlquist*

Becca Wahlquist
Attorneys for Defendant
DIRECTV, LLC

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

- 26 -

AMECURRENT 729099399.4 22-Jun-18 16:24

## PROOF OF SERVICE

I, Becca Wahlquist, declare as follows:

I am employed in Los Angeles County, Los Angeles, California.  I am over the age of eighteen years and not a party to this action.  My business address is Snell & Wilmer L.L.P., 350 S. Grand Avenue, Suite 3100, Los Angeles, California 90071.  On June 22, 2018, I served the within:

**DEFENDANT DIRECTV, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**DECLARATION OF GAIL HUSMAN IN SUPPORT OF DIRECTV'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**DECLARATION OF NICOLE MARTIN IN SUPPORT OF DIRECTV'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**DECLARATION OF KYLE STEINMETZ IN SUPPORT OF DIRECTV'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

on the interested parties in this action, including those addressed as follows:

- **Michael Joseph Boyle , Jr**
  mboyle@meyerwilson.com
- **Alexander H Burke**
  ABurke@BurkeLawLLC.com,
- **Douglas I Cuthbertson**
  dcuthbertson@lchb.com
- **Daniel M Hutchinson**
  dhutchinson@lchb.com,
- **Sean A Petterson**
  spetterson@lchb.com
- **Matthew Ryan Wilson**
  mwilson@meyerwilson.com

☒     (**BY ELECTRONIC MAIL**) By transmitting such document(s) electronically via the Central District of California's CM/ECF system, to the persons at the electronic mail addresses listed above.

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24

Snell & Wilmer
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1         I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct and that this declaration was executed on June 22, 2018, at Los

3    Angeles, California.

4

5                                              /s/ Becca Wahlquist

6                                                Becca Wahlquist

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

- 28 -

DEFENDANT DIRECTV, LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 2:13-CV-1170-DMG-E

AMECURRENT 729099399.4 22-Jun-18 16:24