BURKE LAW OFFICES, LLC
Alexander H. Burke (admitted *pro hac vice*)
ABurke@BurkeLawLLC.com
155 N. Michigan Ave. Suite 9020
Chicago, IL 60601
Telephone: (312)729-5288
Facsimile: (312) 729-5289

LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP
Jonathan D. Selbin (SBN 170222)
jselbin@lchb.com
Douglas I. Cuthbertson
(admitted *pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP
Daniel M. Hutchinson
(SBN 239458)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

MEYER WILSON CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

PARISI & HAVENS LLP
David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
212 Marine Street, Unit 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Attorneys for Plaintiff *Jenny Brown and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| JENNY BROWN, on behalf of herself and all others similarly situated,<br><br>           Plaintiff,<br><br>v.<br><br>DIRECTV, LLC,<br><br>           Defendant. | Case No. 2:13-cv-01170-DMG-E<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF CLASS CERTIFICATION**<br><br>Date: July 20, 2018<br>Time: 10:00 a.m.<br>Place: Courtroom 8C<br><br>Hon. Dolly M. Gee |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION...................................................................................1

II.   PLAINTIFF AND DIRECTV RELY UPON COMMON EVIDENCE.........2

    A.    DIRECTV and Its Debt Collectors Had Standard Prerecorded Calling Practices. ......................................................................3

    B.    DIRECTV and Its Agent Debt Collectors Had Standard, Uniform Contracts.........................................................................3

    C.    DIRECTV's Database Is Common Evidence. ...............................3

    D.    DIRECTV's Conduct Was Knowing and/or Willful. .....................4

III.  SPECULATION CANNOT DEFEAT CLASS CERTIFICATION...............4

IV.   PLAINTIFF SATISFIES ASCERTAINABILITY, NUMEROSITY, TYPICALITY, AND ADEQUACY ........................................................5

V.    PLAINTIFF'S CLASS AND SUBCLASS ARE NOT FAILSAFE...............5

VI.   THE NON-CUSTOMER SUBCLASS MEETS THE COMMONALITY AND PREDOMINANCE STANDARD .......................7

VII.  THE CLASS MEETS THE COMMONALITY AND PREDOMINANCE STANDARD ..............................................................10

    A.    Common Evidence Regarding the Underlying TCPA Violations Supports a Finding of Predominance................................10

    B.    Common Liability Evidence Supports Predominance.....................11

    C.    Common Evidence Regarding DIRECTV's Affirmative Defenses Supports a Finding of Predominance. ...............................13

        1.    Common Evidence Regarding Prior Express Consent Supports a Finding of Predominance. ...................................14

            a.    Plaintiff Provided the Correct Standard for the Prior Express Consent Defense in a Debt Collection Case. ........................................................14

            b.    There Is Common Evidence Regarding Prior Express Consent. .............................................16

            c.    Even Under DIRECTV's Incorrect Legal Standard, There is Common Evidence Regarding Prior Express Consent. ..............................................18

        2.    DIRECTV Has No Arbitration Defense...................................18

        3.    In the Alternative, Common Evidence Regarding Arbitration Supports a Finding of Predominance.....................20

        4.    DIRECTV's Arbitration Defense Is Inapplicable Because It Does Not Apply to Plaintiff. ................................22

VIII. TRIAL OF THE PROPOSED CLASSES' CLAIMS IS MANAGEABLE AND SUPERIOR TO INDIVIDUAL ACTIONS ...........23

IX.   APPOINTMENT OF CLASS COUNSEL IS APPROPRIATE...................25

1

## TABLE OF CONTENTS
### (continued)

2

**Page**

3    X.    IN THE ALTERNATIVE, CLASS DISCOVERY SHOULD
        PROCEED ..................................................................................................... 25

4    XI.    CONCLUSION ............................................................................................. 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Abdeljalil v. Gen. Elec. Capital Corp.,*
  306 F.R.D. 303 (S.D. Cal. 2015) ................................................................. 9

*Ahmed v. HSBC Bank USA, N.A.,*
  2017 WL 5765734 (C.D. Cal. Nov. 6, 2017) ............................................... 6

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds,*
  568 U.S. 455 (2013) ....................................................................... 10, 13, 14

*Andrews Farms v. Calcot, Ltd.,*
  258 F.R.D. 640 (E.D. Cal. 2009), *order clarified on reconsideration,*
  268 F.R.D. 380 (E.D. Cal. 2010) ............................................................... 12

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) .................................................................................. 23

*Barrett v. Wesley Fin. Grp., LLC,*
  2015 WL 12910740 (S.D. Cal. Mar. 30, 2015) ......................................... 11

*Bickerstaff v. SunTrust Bank,*
  788 S.E.2d 787 (Ga. 2016), *cert. denied,* 137 S. Ct. 571 (2016) .......... 22, 23

*Birchmeier v. Caribbean Cruise Line, Inc.,*
  302 F.R.D. 240 (N.D. Ill. 2014) ................................................................ 12

*Breslow v. Wells Fargo Bank, N.A.,*
  857 F. Supp. 2d 1316 (S.D. Fla. 2012), *aff'd,* 755 F.3d 1265
  (11th Cir. 2014) ......................................................................................... 15

*Bridging Communities Inc. v. Top Flite Fin. Inc.,*
  843 F.3d 1119 (6th Cir. 2016), *cert. denied,* 138 S. Ct. 80 (2017) ........... 5

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796 (7th Cir. 2013), *cert. denied,* 134 S. Ct. 1277 (2014) ..... 10, 14

*Caldera v. Am. Med. Collection Agency,*
  320 F.R.D. 513 (C.D. Cal. 2017) ................................................ 8, 16, 17, 24

*Chapman v. Wagener Equities, Inc.,*
  No. 09 C 07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ............ 8, 9, 12

*Cordoba v. DirecTV, LLC,*
  320 F.R.D. 582 (N.D. Ga. 2017) ............................................................... 24

*Davis v. AT&T Corp.,*
  No.: 15cv2342-DMS (DHB), 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) ........ 9

*Del Valle v. Glob. Exch. Vacation Club,*
  2017 WL 433998 (C.D. Cal. Feb. 1, 2017) ............................................... 16

*Discover Bank v. Superior Court,*
  113 P.3d 1100 (2005) ................................................................................ 23

*Ehret v. Uber Techs., Inc.,*
  148 F. Supp. 3d 884 (N.D. Cal. 2015) ....................................................... 20

*Ewert v. eBay, Inc.,*
  No. C-07-02198 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ........... 18

**TABLE OF AUTHORITIES**
(continued)

Page

*Fisher v. A.G. Becker Paribas Inc.*,
791 F.2d 691 (9th Cir. 1986) ................................................................... 19

*Gamble v. New England Auto Fin., Inc.*,
No. 17-15343, 2018 WL 2446607 (11th Cir. May 31, 2018) ............................ 20

*Goel v. Coal. Am. Holding Co. Inc.*,
No. CV 11-2349 GAF (EX), 2011 WL 13128300 (C.D. Cal. July 5, 2011) ......... 6

*Gusman v. Comcast Corp.*,
298 F.R.D. 592 (S.D. Cal. 2014) ............................................................. 25

*Guzman v. Bridgepoint Educ., Inc.*,
305 F.R.D. 594 (S.D. Cal. 2015) ............................................................. 21

*Harris v. comScore, Inc.*,
292 F.R.D. 579 (N.D. Ill. 2013) .............................................................. 18

*Hawk Valley, Inc. v. Taylor*,
301 F.R.D. 169 (E.D. Pa. 2014) .............................................................. 12

*Herrera v. LCS Fin. Servs. Corp.*,
274 F.R.D. 666 (N.D. Cal. 2011) ............................................................. 21

*Hudson v. Sharp Healthcare*,
No. 13-CV-1807-MMA NLS, 2014 WL 2892290 (S.D. Cal. June 25, 2014) ..... 15

*Ikuseghan v. MultiCare Health Sys.*,
2015 WL 4600818 (W.D. Wash. July 29, 2015 ....................................... 9, 11

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................. 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011) ...................... 21

*Ira Holtzman, C.P.A. v. Turza*,
728 F.3d 682 (7th Cir. 2013) ........................................................... 2, 8, 11

*Kamar v. RadioShack Corp.*,
375 F. App'x 734 (9th Cir. 2010) .......................................................... 5, 6

*Klay v. Humana*,
382 F.3d 1241 (11th Cir. 2004) .............................................................. 24

*Krakauer v. Dish Network L.L.C.*,
311 F.R.D. 384 (M.D.N.C. 2015) ............................................................. 5

*Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) 9,
11, 16

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 ...................................... 8, 11

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ........................................................... 19, 20

*McMillion v. Rash Curtis & Assocs.*,
No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) ....... passim

*Menagerie Prods. v. Citysearch*,
No. CV 08-4263 CAS (FMO), 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ..... 18

**TABLE OF AUTHORITIES**
(continued)

Page

*Mendez v. C-Two Grp., Inc.*,
   No. 13-CV-05914-HSG, 2015 WL 8477487 (N.D. Cal. Dec. 10, 2015)............11

*Meyer v. Kalanick*,
   185 F. Supp. 3d 448 (S.D.N.Y. 2016) ....................................................................23

*Meyer v. Kalanick*,
   200 F. Supp. 3d 408 (S.D.N.Y. 2016), *rev'd* 868 F.3d 66 (2d Cir. 2017) ..........23

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ............................................................2, 10, 16, 17

*Mortimore v. F.D.I.C.*,
   197 F.R.D. 432 (W.D. Wash. 2000) .....................................................................18

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015) ........................24

*Nigro v. Mercantile Adjustment Bureau, LLC*,
   769 F.3d 804 (2d Cir. 2014) .................................................................................15

*O'Shea v. Am. Solar Sol., Inc.*,
   318 F.R.D. 633 (S.D. Cal. 2017) .............................................................................3

*Pablo v. ServiceMaster Glob. Holdings Inc.*,
   No. C 08-03894 SI, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) ......................21

*Pace v. PetSmart Inc.*,
   No. SACV 13-00500, 2014 WL 2511297 (C.D. Cal. June 3, 2014)....................13

*Panacci v. A1 Solar Power, Inc.*,
   No. 15-cv-00532-JCS, 2015 WL 3750112 (N.D. Cal. Jun. 15, 2015) ..................6

*Renteria v. Resmae Mortg. Corp.*,
   No. CV 13-5802 PA (EX), 2013 WL 12113412 (C.D. Cal. Aug. 16, 2013) .......18

*Rodman v. Safeway, Inc.*,
   No. 11-cv-03003, 2015 WL 2265972 (N.D. Cal. May 14, 2015) ........................13

*Sali v. Corona Reg'l Med. Ctr.*,
   889 F.3d 623 (9th Cir. 2018) ..................................................................................8

*Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan.
   4, 2013) ...............................................................................................................9, 10

*Schaffer v. Litton Loan Servicing, LP*,
   No. 05-07673, 2009 WL 9436302 (C.D. Cal. Jan. 20, 2009) .............................24

*Slayman v. FedEx Ground Package Sys., Inc.*,
   765 F.3d 1033 (9th Cir. 2014) ..............................................................................12

*Sonic-Calabasas A, Inc. v. Moreno*,
   311 P.3d 184 (Cal. 2013)......................................................................................23

*Soppet v. Enhanced Recovery Co., LLC*,
   679 F.3d 637 (7th Cir. 2012) ................................................................................11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (1974)...............................................................................................22

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016).........................................................................................22

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

*United Steel Workers v. Conoco-Phillips Co.*,
  593 F.3d 802 (9th Cir. 2010) ............................................................................5, 17

4

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) .....................................................................14, 15

5

*Wagner v. Discover Bank*,
  No. 12-CV-02786, 2014 WL 128372 (D. Colo. Jan. 13, 2014) ...........................21

6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)....................................................................1, 8, 10, 14

7

*Waterbury v. A1 Solar Power Inc.*,
  No. 15CV2374-MMA, 2016 WL 3166910 (S.D. Cal. Jun. 7, 2016) .....................6

8

*Zeno v. Ford Motor Co.*,
  238 F.R.D. 173 (W.D. Pa. 2006) ........................................................................12

9

*Zyburo v. NCSPlus, Inc.*,
  44 F. Supp. 3d 500 (S.D.N.Y. 2014) ..........................................................9, 17

## STATUTES

42 U.S.C. 338................................................................................................24

## RULES

Fed. R. Civ. P. 8(c)(1)...........................................................................................18

Fed. R. Civ. P. 12.................................................................................................18

Fed. R. Civ. P. 23(b)(3) ......................................................................................10

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................24

Fed. R. Civ. P. 23(c)(4).......................................................................................22

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    **INTRODUCTION**

The "rigorous analysis" required at class certification "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Yet, remarkably, DIRECTV never addresses the merits of the TCPA claims at issue. DIRECTV *never contests* the common evidence that DIRECTV and its debt collectors made prerecorded calls to (1) Class Members who never provided their cellular telephone numbers to DIRECTV and (2) Subclass Members who were not DIRECTV customers. DIRECTV never addresses, and therefore concedes, the undisputed evidence that DIRECTV's actions were knowing and willful. DIRECTV is liable for its debt collectors' calls through agency agreements specifying they acted as DIRECTV's fiduciaries. Either these facts will be proven or they will not; the answer will not, indeed cannot, vary among class members. Accordingly, Rule 23 certification is appropriate and necessary to prove—or disprove—these essential facts.

This type of common proof is widely accepted and supports class certification in TCPA class actions involving debt collection calls. Plaintiff *and DIRECTV* rely upon on the same three types of *common* evidence: (1) DIRECTV and its debt collectors' standard calling practices, (2) DIRECTV's standard contracts with its debt collectors, and (3) DIRECTV's database.

DIRECTV ignores the common merits evidence, and instead urges the Court to absolve it of liability because of purportedly "individualized" issues related to its own database, a form arbitration clause, and Class and Subclass definitions it wrongly labels as "failsafe." These arguments cannot defeat class certification.

*First*, DIRECTV's claim of "individualized issues" is speculative and lacks any evidentiary support. In TCPA cases, courts uniformly reject hypothetical arguments of "prior express consent" where, as here, no evidence has been presented to support such speculation.

*Second*, DIRECTV acknowledges that the Court can make a *classwide*

1   determination—based on the arbitration clause's plain language—of whether or not
2   it applies to the TCPA claim at issue here.  But, because DIRECTV never pled an
3   arbitration defense or moved to compel arbitration in this action, that defense is
4   waived.  Even if it had, because Plaintiff is not a DIRECTV customer, and never
5   entered into a contract with DIRECTV, absent class members are not bound by it.

6       *Third*, the Class and Subclass definitions are not "failsafe" because they
7   employ objective criteria.  TCPA class actions have repeatedly been certified when
8   objective criteria are employed in class definitions.

9       In fact, courts routinely certify TPCA class actions—particularly where, as
10  here, the defendant and its agents engaged in skip tracing, *Meyer v. Portfolio*
11  *Recovery Assocs., LLC*, 707 F.3d 1036, 1042, 1043 (9th Cir. 2012), and placed debt
12  collection calls to non-customers.  *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-
13  03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017); *see also Ira Holtzman,*
14  *C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in
15  litigation under § 227, because the main questions . . . are common to all
16  recipients.").  Plaintiff respectfully submits that this case meets that standard and
17  that class certification is therefore appropriate.

18  **II.    PLAINTIFF AND DIRECTV RELY UPON COMMON EVIDENCE**

19      Plaintiff seeks to certify both a Class of persons who received prerecorded
20  calls on their cell phones from DIRECTV and/or its debt collectors, and a Subclass
21  of persons who are not DIRECTV customers.  DIRECTV agrees that now is the
22  appropriate time to decide class certification.  Dkt. No. 233-1 at ¶ 6 ("DIRECTV
23  has no objection to Plaintiff moving for class certification at this time.").

24      Plaintiff and DIRECTV rely upon the same evidence to resolve this issue:
25  documents regarding DIRECTV and its debt collectors' standard calling practices;
26  standard contacts between DIRECTV and its debt collector agents; and
27  DIRECTV's database.  This common evidence supports class certification.

28

### A.    DIRECTV and Its Debt Collectors Had Standard Prerecorded Calling Practices.

Plaintiff presents common evidence of DIRECTV and its debt collectors' calling practices:  DIRECTV's own documents, Hutchinson Decl. (Dkt. No. 247), Exs. B-C, debt collector documents, *id.*, Exs. D-I, and call records showing prerecorded calls.  *Id.*, Ex. C.[1]  The documents demonstrate a standard practice of making prerecorded calls.  DIRECTV does not contest this evidence and thereby concedes that DIRECTV and its debt collectors made prerecorded voice calls.

### B.    DIRECTV and Its Agent Debt Collectors Had Standard, Uniform Contracts.

Plaintiff presents common evidence that DIRECTV has standard, uniform contracts with its debt collector agents.  Hutchinson Decl., ¶¶ 51-58 & Ex. B.

DIRECTV relies on the exact same standard, uniform contracts with its agents, but asserts that its debt collectors were independent contractors.  Opp. at 20.  Thus, whether the Court or jury ultimately sides with Plaintiff or DIRECTV on this issue, the parties will both rely on the same common proof on the merits.

### C.    DIRECTV's Database Is Common Evidence.

DIRECTV's database contains consumer telephone numbers.  Hutchinson Decl., ¶¶ 59-60 & Ex. C.  To interpret this database, Plaintiff relies upon DIRECTV's own documents, which describe its contents.  *Id.*  DIRECTV never addresses these documents and never disputes their authenticity or admissibility.

---

[1] DIRECTV either possesses or has a contractual right to obtain outgoing call data reflecting the numbers that DIRECTV and its debt collectors called.  *See* Hutchinson Decl., ¶¶ 51-58 & Ex. B.  Despite DIRECTV's right to obtain such records from its vendors, DIRECTV has not submitted *any* evidence that *any* Class member did *not* receive a prerecorded call.  The Court can only assume from this failure that no such evidence exists.  *O'Shea v. Am. Solar Sol., Inc.*, 318 F.R.D. 633, 639 (S.D. Cal. 2017) (certifying TCPA class action and noting that "the fact that Defendant has failed to locate a single record . . . despite having more than two years' time to do so strongly suggests the issue . . . will not be an individualized issue that the Court cannot efficiently address on a class wide basis.")

1    Instead, DIRECTV introduces counter-factual, speculative testimony from its own
2    representative of what the database *might* show.  The reliability of this counter-
3    factual speculation about DIRECTV's database cannot be determined by self-
4    serving testimony. Moreover, if given any weight at all, it is nevertheless *common*
5    evidence of the database.  Whether this common evidence supports Plaintiff's
6    position or DIRECTV's position can be determined on a classwide basis at trial.

### D.    DIRECTV's Conduct Was Knowing and/or Willful.

8         Finally, Plaintiff submitted evidence that DIRECTV's actions were knowing
9    and/or willful.  Hutchinson Decl., Exs. J-L.  DIRECTV did not present any
10   evidence on this issue.  Therefore, Plaintiff's uncontested evidence is common
11   evidence that supports class certification; either DIRECTV's actions were knowing
12   and/or willful – or they were not – as to the class as a whole.  *See also McMillion*,
13   2017 WL 3895764, at *5 (collecting cases holding that the "willfulness
14   determination will depend on defendant's general practices and procedures, which
15   is entirely suitable for class determination") (citations omitted).

### III.    SPECULATION CANNOT DEFEAT CLASS CERTIFICATION

17        Any challenge to class certification must be based on the facts or law.
18   However, instead of submitting actual evidence, DIRECTV relies solely upon
19   speculation, hypothesis, and conjecture from two employee declarations that
20   purport to testify about what DIRECTV *doesn't know*.  *See* Husman Decl. (Dkt.
21   No. 256-1); Martin Decl. (Dkt. No. 256-2).  DIRECTV claims that it "has no call
22   lists or detailed records regarding what calls [each DIRECTV debt collection]
23   vendor may have placed."  Husman Decl. ¶ 8.  DIRECTV admits that its debt
24   collectors "may have used prerecorded calls," but claims that "DIRECTV does not
25   have any specific information" regarding when vendors placed those calls.  *Id.* ¶ 19.
26        Yet, despite its own declarants' lack of knowledge about its debt collectors'
27   call records, DIRECTV's opposition hypothesizes that they present individualized
28   issues.  The Ninth Circuit specifically prohibits DIRECTV's counter-factual

- 4 -

attempt to defeat class certification through speculation:  "What a district court may not do is to assume, arguendo, that problems will arise, and decline to certify the class on the basis of a mere potentiality that may or may not be realized."  *United Steel Workers v. Conoco-Phillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010).  DIRECTV's *hypothetical* claims are inapposite because "unsubstantiated claims in a brief do not preclude class certification."  *See Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 398 (M.D.N.C. 2015) (certifying two TCPA classes); *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 80 (2017) (reversing denial of TCPA class certification, holding that district courts should not allow "speculation and surmise to tip the decisional scales in a class certification ruling").  TCPA debt collection classes are regularly certified despite the mere *possibility* of individualized issues.  If that possibility defeated class certification, few if any such classes could be certified, yet "[c]lass certification is normal in litigation under [the TCPA]."  *Holtzman*, 728 F.3d at 684.

## IV.  PLAINTIFF SATISFIES ASCERTAINABILITY, NUMEROSITY, TYPICALITY, AND ADEQUACY

DIRECTV does not address, and thereby concedes ascertainability, numerosity, typicality, and adequacy.

## V.  PLAINTIFF'S CLASS AND SUBCLASS ARE NOT FAILSAFE

Plaintiff's class definition is not "failsafe" because it relies upon clear, objective factual criteria consistent with the relevant legal standard.  "The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established."  *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010).  A class consisting of "everyone who has a valid TCPA claim against DIRECTV" would be failsafe; either the potential class member has a valid claim against DIRECTV, or they would fall outside the class definition.  Classes are failsafe where they rely upon subjective criteria, such as class member's state of

mind.[2]  "That is palpably unfair to the defendant, and is also unmanageable—for example, to whom should the class notice be sent?"  *Kamar*, 375 F. App'x at 736.

In DIRECTV's telling, the class is failsafe because its membership "tracks the elements of the TCPA."  Opp. at 6.  DIRECTV's argument fundamentally misunderstands the notion of a failsafe class.  TCPA classes are *not* failsafe where they rely upon "objective criteria,"[3] or where the court "need not make any legal conclusions establishing defendant's liability to determine whether a person belongs in one of the classes."[4]  Here, the proposed Class and Subclass rely on objective criteria, including whether Class and Subclass members received a debt collection call from DIRECTV and/or its debt collectors; whether the call was to a cellular phone; whether the call included a prerecorded voice; whether Class and Subclass members provided their cell phone numbers to DIRECTV on an initial service application; and whether Subclass members are DIRECTV customers.  That objective criteria define a group of persons is the *point* of a class action.  These objective, factual similarities do not require legal conclusions.  Including each criterion in the class definition does not render the class failsafe.  Liability for members of the Class and Subclass would not be determined after the Class and Subclass are certified because the common questions still need to be decided by the Court or the jury.  Indeed, the Class and Subclass definitions here are substantially similar to TPCA class definitions that courts have found are not failsafe.  *Waterbury*, 2016 WL 3166910, at *4-5 (TPCA class definition similar to the

---

[2] *Goel v. Coal. Am. Holding Co. Inc.*, No. CV 11-2349 GAF (EX), 2011 WL 13128300, at *9 (C.D. Cal. July 5, 2011) (rejecting class definition that depended upon whether class members knew about the defendant's conduct)

[3] *Ahmed v. HSBC Bank USA, N.A.*, 2017 WL 5765734, at *2 (C.D. Cal. Nov. 6, 2017) (collecting cases); *Waterbury v. A1 Solar Power Inc.*, No. 15CV2374-MMA, 2016 WL 3166910, at *4-5 (S.D. Cal. Jun. 7, 2016); *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. Jun. 15, 2015).

[4] *McMillion*, 2017 WL 3895764, at *10 n.14; *see also Panacci*, 2015 WL 3750112, at *8.

Class); *McMillion*, 2017 WL 3895764, at *10 (non-customer TCPA class definition similar to the Subclass).  There is no failsafe issue.

## VI.    THE NON-CUSTOMER SUBCLASS MEETS THE COMMONALITY AND PREDOMINANCE STANDARD

DIRECTV and its debt collectors undisputedly engaged in a uniform practice of making prerecorded calls to the cellular telephones of the non-customer Subclass.  As many courts have held, this practice in TCPA cases makes certification of the non-customer Subclass appropriate.  *See* Opening Br. (Dkt. 223) at footnote 4 (collecting five cases certifying similar non-customer classes).

DIRECTV does not contest this common practice—nor does it make any attempt to address or distinguish any of the cases Plaintiff cited in her opening brief.  In fact, DIRECTV scarcely addresses the Subclass—and for good reason, as there no basis to deny certification of the Subclass.  None of DIRECTV's limited arguments regarding the Subclass are sufficient to defeat class certification.

*First*, DIRECTV incorrectly argues that "there is no way of determining without an individualized inquiry whether anyone who received a call was *not* a customer."  Opp. at 10-11, 17 (emphasis in original).  But, such persons can be readily identified through company records, which clearly identify non-customers with a "wrong number" disposition code.  Hutchinson Decl., Ex. G at 398; Ex. H at 422; Ex. I at 423.  As noted above, because DIRECTV has neither addressed that evidence nor put in any contrary evidence, it is uncontested.

*Second*, DIRECTV argues that Plaintiff's evidence of wrong number disposition codes is "insufficient" because it comes from one of DIRECTV's debt collectors.  Opp. at 17-18.  But, Plaintiff has submitted DIRECTV's own standard form contracts and policy manuals that apply to DIRECTV and *all* of its debt collection vendors—and require them to maintain records of their calls.  *See* Hutchinson Decl. ¶ 58 & Ex. B at 145 (¶ 2.A.(iii)).  Again, DIRECTV has neither

contested that evidence nor submitted any contrary evidence.[5]

*Third*, DIRECTV argues that the wrong number codes "prove[] nothing" and claims that such evidence would not be admissible at trial. Opp. at 18. But Plaintiff is not required to *prove liability* at the certification stage. Rather, she must show only that there are common questions capable of generating common answers on a classwide basis. *Dukes*, 564 U.S. at 350. In arguing admissibility at the class certification stage, DIRECTV simply ignores binding Supreme Court and Ninth Circuit authority. In *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623 (9th Cir. 2018), the defendant also contested the purported failure of common evidence to meet evidentiary formalities. *Sali* squarely held that common "proof need not be admissible evidence." *Id.* at 632. Thus, even if it were inadmissible, Plaintiff's common proof still suffices at this stage.

In any case, there is no reason to doubt that the wrong number codes mean exactly what they say. Courts understandably have little patience for a TCPA defendant's arguments that its own vendors' records are inaccurate. *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 519 (C.D. Cal. 2017) (certifying TCPA class despite the defendant's deposition testimony that its disposition codes were inaccurate); *Turza*, 728 F.3d at 684-85 ("[N]o reasonable juror could conclude that these data are inaccurate."); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013) ("factual issues can and should be addressed largely through merits-based discovery into defendants' records."); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *10 (N.D. Ill. Feb. 11, 2014) (rejecting speculative expert testimony that records were unreliable where "the defendants offer no concrete evidence that false positives actually occurred"). These are business records, taken and maintained to comply with DIRECTV's own

---

[5] The only reason that Plaintiff has not submitted yet more evidence is that Magistrate Judge Eick's discovery order precluded Plaintiff from obtaining further classwide evidence. Dkt. No. 196.

requirements to keep accurate records.  Unlike defendants in the cases DIRECTV relies upon, DIRECTV has not submitted any contrary evidence.  *Compare Davis v. AT&T Corp.*, No. 15-cv-2342, 2017 WL 1155350, at *5 (S.D. Cal. Mar. 28, 2017) ("Defendant has come forward with *evidence*" contesting the wrong number codes) (emphasis added).  Plaintiff's common evidence supports class certification.

*Fourth*, DIRECTV argues (again without any evidentiary support) that non-customers might have consented to receive debt collection calls from DIRECTV. Opp. at 18-19.  Courts soundly reject this speculative argument where there is *no evidence* of *individualized* prior express consent.  *See McMillion* 2017 WL 3895764, at *5 (non-customer debt collection TCPA class certified where the defendant "offers no evidence demonstrating that will be an issue with respect to [prior express consent]"); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (non-customer debt collection TCPA class certified where "defendant's argument concerning a spouse or agent providing express consent is pure speculation"); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (non-customer debt collection TCPA class certified despite argument of consent given to the underlying creditor).[6]

Here, such hypothetical prior express consent from non-customer Subclass members is a factual and legal impossibility.  Moreover, it is absurd to argue that a person who does not have DIRECTV service, who informed DIRECTV that she

---

[6] *See also Ikuseghan v. MultiCare Health Sys.*, No. C14-5539, 2015 WL 4600818, at *7 (W.D. Wash. July 29, 2015) (debt collection TCPA class where the defendant's "theory [of] the [prior express] consent of a spouse or other individual . . . .is entirely speculative and thus insufficient to defeat class certification"); *Chapman*, 2014 WL 540250, at *5 ("[T]he mere possibility that some of the proposed class members may have independently consented does not warrant denial of class certification."); *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *3-4 (N.D. Ill. Jan. 4, 2013) (rejecting defendant's consent objection because defendant failed to offer specific evidence of consent); *Kristensen, v. Credit Payment Services*, 12 F. Supp. 3d  1292, 1307 (D. Nev. 2014) (holding that "in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer").

was not a DIRECTV customer, and who DIRECTV and/or its debt collectors coded in their business records as a "wrong party" would have ever agreed to receive debt collection calls from DIRECTV.

## VII.   THE CLASS MEETS THE COMMONALITY AND PREDOMINANCE STANDARD

DIRECTV engaged in a practice of making prerecorded calls to the cellular telephones of Class members –customers and non-customers alike—who *never* provided their telephone numbers to DIRECTV.  The Ninth Circuit has unambiguously held that such a skip-tracing practice supports both class certification and liability on the merits.  *Meyer*, 707 F.3d at 1042, 1043.  Yet, DIRECTV never even mentions, let alone makes any attempt to distinguish, this binding authority from the Ninth Circuit.  It cannot.  Instead, DIRECTV argues, incorrectly and with nothing more than self-serving declarations that contradict its own documents, that reviewing its own database and records would involve "individualized issues."  Courts repeatedly reject such evidence-free assertions.

### A.   Common Evidence Regarding the Underlying TCPA Violations Supports a Finding of Predominance.

The Supreme Court has held that while Rule 23(b)(3) requires a showing that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class.  *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013).  Therefore, any issue "'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment."  *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350).  In TCPA cases, courts "have agreed that the presence of some limited issues requiring individual inquiry do not defeat predominance."  *Savanna Grp., Inc.*, 2013 WL 66181, at *15 (citing cases).  Plaintiff respectfully submits that the facts here present precisely the type of efficiencies that Rule 23(b)(3) was designed to create.

1   "Class certification is normal in litigation under [the TCPA]" precisely
2   because common issues predominate. *See Holtzman*, 728 F.3d at 684. Here,
3   Plaintiff can address the classwide violations of the TCPA through common
4   evidence that DIRECTV and its debt collectors placed prerecorded calls to
5   Plaintiff's, Class members', and Subclass members' cellular telephone numbers.
6   There are records showing the calls made as DIRECTV requires its debt collectors
7   to "complet[e] initial and follow-up telephone collection calls and maintain[]
8   records of such calls," Hutchinson Decl., Ex. B at 145(¶ 2.A.(iii)), including
9   precisely which calls contained prerecorded messages. *Id.*, ¶ 64, Ex. D at 244, 246;
10   Ex. E at 253-54 (containing standard recorded messages for outgoing calls), Ex. F
11   at 264 (describing use of Outbound IVR Calls that make "agent-less calls" using
12   standard recorded messages). This is common evidence.

13   **B.    Common Liability Evidence Supports Predominance.**

14       DIRECTV concedes that, under the 2008 FCC Order, it is liable for all illegal
15   debt collection calls made on its behalf. Opp. at 20; *see also* 2008 FCC Order ¶ 10;
16   *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012)
17   ("Indemnity may be ***automatic*** under ¶ 10 of the 2008 TCPA Order, which states
18   that calls placed by a third party collector on behalf of a creditor are treated as
19   having been made by the creditor itself.") (emphasis added). To achieve Rule 23's
20   efficiencies, courts frequently certify TCPA class cases involving allegations that a
21   vendor placed a call and adjudicate these claims in a single proceeding. *Ikuseghan*,
22   2015 WL 4600818, at *6 (certifying TCPA class and finding that whether the
23   creditor was liable for its vendor's debt collection calls was a common issue);
24   *Barrett v. Wesley Fin. Grp., LLC*, 2015 WL 12910740, at *7 (S.D. Cal. Mar. 30,
25   2015) (same).[7]   A class can, and should, proceed against DIRECTV based upon

26   ─────────────────
27   [7] Courts also find predominance when considering the related issue of whether a
company is liable for its telemarketers' calls under the TCPA. *Mendez v. C-Two
Grp., Inc.*, No. 13-CV-05914, 2015 WL 8477487, at *7 (N.D. Cal. Dec. 10, 2015)
28   (certifying class and finding predominance); *Lee*, 289 F.R.D. 292 (same);

*Footnote continued on next page*

common evidence of liability because "whether a particular defendant is liable is not an *individual* issue among class members." *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (emphasis in original). [8]

Here, consistent with such cases, common evidence regarding DIRECTV's relationship with its debt collectors supports class certification. As described above, both parties have used the *same* evidence to support (or assert there is no) liability: DIRECTV's own standard contracts with its debt collectors. Like Plaintiff, DIRECTV relies upon "the contracts between DIRECTV and its outside collection agencies." Opp. at 20. These are form agreements that contain the same language defining the relationship between DIRECTV and its debt collectors. Hutchinson Decl. ¶ 58. This standard contract states that DIRECTV's debt collectors act as DIRECTV's fiduciaries for purposes of debt collection – the precise activity at issue here. *Id.*, Ex. B at ¶ 1.A.(v). Pursuant to the contract, DIRECTV had the right to and did maintain constant interaction with, and oversight over, its debt collectors. *Id.*, ¶¶ 51-58 & Ex. B at 139 & 144-45. These debt collectors accessed DIRECTV's electronic systems and conducted their calling programs with DIRECTV's explicit knowledge and approval.

While DIRECTV claims that the contract's use of the term "independent contractor" is dispositive, Opp. at 20, the Ninth Circuit has repeatedly held that "a contract's recitation of an independent-contractor relationship is not dispositive. What matters is what the contract, in actual effect, allows or requires." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1042 (9th Cir. 2014).

*Footnote continued from previous page*
*Kristensen*, 12 F. Supp. 3d at 1302 (same); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 188 (E.D. Pa. 2014) (same); *Chapman*, 2014 WL 540250, at *11 (same).

[8] *See also Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 652 (E.D. Cal. 2009), *order clarified on reconsideration*, 268 F.R.D. 380 (E.D. Cal. 2010) (certifying as a common issue the question of fiduciary duty or agency relationship); *Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 193-94 (W.D. Pa. 2006) (certifying class where existence of an agency relationship could be determined by interpreting standard form agreements and a common course of conduct).

DIRECTV's attempt to rebut the clear terms of the contract with a few sentences from its declarant is unpersuasive. *See* Husman Decl. ¶¶ 10-11, 18. Ms. Husman says that "*other than the contracts' specifications*" "DIRECTV does not control or oversee the collection vendors' businesses." *Id.* (emphasis added). That merely reinforces Plaintiff's argument—the four corners of the contract contain the common evidence relevant to this issue.

In any case, the Court or jury will ultimately decide whether DIRECTV is liable for its debt collectors' calls. For purposes of class certification, however, what matters is that the evidence supporting and opposing that claim—and its ultimate resolution—cannot and will not vary as between class members. That is the very definition of a common issue, and, like materiality in *Amgen*, it is a "fatal similarity" that establishes predominance. *Amgen*, 568 U.S. at 470.

## C.    Common Evidence Regarding DIRECTV's Affirmative Defenses Supports a Finding of Predominance.

Hypothetical affirmative defenses do not present any class certification issues. Rather, "[c]ourts have traditionally been reluctant to deny class action status as failing the predominance requirement of Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Pace v. PetSmart Inc.*, No. SACV 13-00500, 2014 WL 2511297, at *9 (C.D. Cal. June 3, 2014) (quotation marks omitted). Affirmative defenses are generally not a basis for denying class status because the existence and applicability of affirmative defenses at this early stage of the litigation are hypothetical. "Because the legal effect of [defendant's] affirmative defenses has not yet been established, questions of law or fact common to class members continue to predominate over any questions affecting only individual members." *Rodman v. Safeway, Inc.*, No. 11-cv-03003, 2015 WL 2265972, at *3 (N.D. Cal. May 14, 2015) (quotation marks omitted).

Any non-hypothetical affirmative defense *supports* class certification. As the Supreme Court has stated, "an alleged failure of proof as to an element of the

plaintiffs' cause of action" does not create "some fatal dissimilarity among class members that would make use of the class-action device inefficient or unfair," but rather establishes "a fatal *similarity*" that "is properly addressed at trial or in a ruling on a summary-judgment motion" and "should not be resolved in deciding whether to certify a proposed class." *Amgen*, 568 U.S. at 470 (emphasis added, quotations omitted). Put differently: the very reason DIRECTV argues Plaintiff's claims fail on the merits—because it has a potential affirmative defense of prior express consent or arbitration—*apply equally to large numbers of Class members*. If DIRECTV is right, its potential affirmative defenses can be determined classwide. Those affirmative defenses succeed or fail together, ensuring that litigation of them on a classwide basis will "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 338 (emphasis in original). Indeed, DIRECTV's central argument proves too much: if it is right, it is "an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate [it]—a course it should welcome, as all class members who did not opt out of the class action would be bound by the judgment." *See Butler*, 727 F.3d at 799 (reversing district court denial of Rule 23(b)(3) class).

**1.   Common Evidence Regarding Prior Express Consent Supports a Finding of Predominance.**

**a.   Plaintiff Provided the Correct Standard for the Prior Express Consent Defense in a Debt Collection Case.**

DIRECTV is correct that "prior express consent" under the TCPA "depends on the transactional context." Opp. at 14 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044-46 (9th Cir. 2017)). Here, the sole context is debt collection calls. The Ninth Circuit reiterates that, for such debt collection calls:

> The FCC's 2008 Order interpreting prior express consent also indicates *a more narrow view than assuming that giving a phone number alone amounts to consent to receive calls or texts at that number* irrespective of purpose. In its 2008 Order, the FCC was asked

by a trade association to rule on whether a creditor has permission to call a debtor. *See* 2008 Order, 23 F.C.C. Rcd. at 563. The FCC "conclude[d] that the provision of a cell phone number to a creditor, *e.g.*, **as part of a credit application**, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *Id.* at 564 (second emphasis added). The FCC cited to the legislative history of the TCPA and the House Report's exception for "normal business communications." *Id.* The 2008 Order went on to state that giving a contact phone number is not prior express consent for any contact, instead "prior express consent is deemed to be granted **only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction resulted in the debt owed**."

*Van Patten*, 847 F.3d 1037, 1045 (9th Cir. 2017) (emphases added).[9] Thus, DIRECTV's argument that "other methods of consent" may be available has been rejected by both the 2008 FCC Order and the Ninth Circuit. *See id.*[10] Rather, prior express consent in this debt collection case is an affirmative defense governed by the single legal standard in the 2008 FCC Order. Under that standard, the burden falls on the *defendant* to demonstrate that it obtained the necessary prior express

---

[9] *Accord Nigro v. Mercantile Adjustment Bureau, LLC*, 769 F.3d 804, 806 (2d Cir. 2014) ("Under [the 2008 FCC Order], Nigro plainly did not consent. He did not provide his phone number 'during the transaction that resulted in the debt owed.'"); *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) (describing 2008 FCC Order), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

[10] For example, DIRECTV cites *Hudson v. Sharp Healthcare*, No. 13-CV-1807, 2014 WL 2892290, at *3 (S.D. Cal. June 25, 2014), and suggests just releasing your phone number constitutes consent, but fails to mention that *Hudson*'s holding fully complied with the 2008 FCC Order because "Plaintiff provided prior express consent to call her cellular telephone number when she provided that number during the admissions process." *Id.* at *3. DIRECTV's remaining cases are out-of-Circuit, do not follow the rule in this Circuit, and are therefore inapposite. Opp. at 15 (citing a case from the Sixth, Tenth, and Eleventh Circuits).

consent of the called party.  DIRECTV can only meet that burden by showing Class members provided their cell phone numbers on initial DIRECTV applications.

### b.     There Is Common Evidence Regarding Prior Express Consent.

Here, Plaintiff's only job at class certification is to show that consent, or lack thereof, can be resolved "on evidence and theories applicable to the entire class." *Kristensen*, 12 F. Supp. 3d at 1307.  Here, prior express consent involves not only a single legal standard, but common factual evidence.  Specifically, whether prior express consent exists can be determined based on DIRECTV's databases showing every telephone number "originally provided to DIRECTV by the customer" and every number obtained through "Skip Tracing."  Hutchinson Decl., Ex. C at 195. DIRECTV's opposition curiously never mentions the fact that it used skip tracing. That is likely because "where the classes are limited to those whose phone numbers defendant obtained through skip tracing rather than from . . . the individuals themselves, there is no need for an individualized inquiry regarding [prior express] consent."  *McMillion*, 2017 WL 3895764, at *5 (citations omitted); *accord Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 519 (C.D. Cal. 2017). Indeed, where such skip tracing occurs, the Ninth Circuit has found not only that class certification is appropriate, but also "a likelihood of success on the merits" because "numbers obtained via skip-tracing had not been given to the creditors in the course of the underlying consumer transactions."  *Meyer*, 707 F.3d at 1042, 1043.

The 2008 FCC Order also directs that consent must be tracked "in the usual course of business." 2008 FCC Order at ¶ 10.  Therefore, DIRECTV's argument that it overwrote and destroyed certain prior express consent records (Opp. at 4) presumes that it flouted the FCC order.  This argument has been soundly rejected and cannot defeat class certification. *See Del Valle v. Glob. Exch. Vacation Club*, 2017 WL 433998, at *8 (C.D. Cal. Feb. 1, 2017) ("Class certification cannot be

defeated by Defendants' poor [prior express consent] record-keeping."); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (granting TCPA class certification where the defendant "keeps poor or nonexistent records of which class members have given consent"; "Defendant is in effect asking the Court to reward its imperfect record-keeping practices by precluding class certification.").

Moreover, even if DIRECTV did overwrite certain numbers, DIRECTV admits there is "a separate system (OMS) that lists the number provided at the time of ordering."  Opp. at 4.  Thus, DIRECTV has both a searchable database and a backup electronic database containing all records relevant to prior express consent.

This case provides a textbook example of why the alleged presence of a hypothetical prior express consent defense should not preclude certification based on predominance.  Despite full access to its own databases, DIRECTV has not submitted any evidence that even a *single class member* provided DIRECTV with her prior express consent to receive prerecorded calls to a cellular telephone.  *See Meyer*, 707 F.3d at 1042 (certifying TCPA class action challenging debt collection calls where "PRA did not show a single instance where express consent was given before the call was placed"); *Caldera*, 320 F.R.D. at 519 ("Where a party has not submitted any evidence of ... express consent, courts will not presume that resolving such issues requires individualized inquiries.") (citing cases).  Because the burden of establishing prior express consent falls on DIRECTV, not the class, *see* 2008 FCC Order ¶ 10, this failure is fatal to DIRECTV's argument.  For purposes of class certification, the critical point is that DIRECTV's prior express consent defense is purely speculative (and, in fact, highly unlikely).  The Court may not deny class certification based on the mere possibility that evidence of prior express consent exists.  *See Conoco-Phillips*, 593 F.3d at 810.

In sum, the actual, concrete common issues in the case predominate over the hypothetical possibility of an individualized prior express consent defense.  For this reason, class certification is appropriate.

### c. **Even Under DIRECTV's Incorrect Legal Standard, There is Common Evidence Regarding Prior Express Consent.**

DIRECTV argues, based on a single Second Circuit case, that it can obtain prior express consent through a boilerplate, unsigned consumer agreement. Opp. at 16-17. That case has not been cited or accepted by any court in the Ninth Circuit. But, even if it were good law in this Circuit, DIRECTV also relies on common evidence—its consumer agreement—under which it claims it always obtained prior express consent. This is "classic" common evidence. *See Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 WL 3770668, at *10 (C.D. Cal. Nov. 9, 2009) (certifying consumer class action); *Ewert v. eBay, Inc.*, No. C-07-02198 RMW, 2010 WL 4269259, at * 7 (N.D. Cal. Oct. 25, 2010) (same); *Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) (same).[11]

DIRECTV also argues that it can obtain consent from a consumer at any time. Opp. at 14-15. Again, that is not the law in this Circuit. But, if it were, DIRECTV admits that its "system contains two phone number fields populated with customer-provided numbers." Opp. at 13. In other words, DIRECTV's system contains all the common evidence necessary to resolve this factual inquiry.

### 2. **DIRECTV Has No Arbitration Defense.**

By failing to present any arbitration defense in its answer, which DIRECTV concedes, Opp. at 9 n.5, DIRECTV waived its right to bring an arbitration defense. Rule 8 requires that, in responding to a pleading, a party "must affirmatively state" the arbitration defense. Fed. R. Civ. P. 8(c)(1); *accord Renteria v. Resmae Mortg. Corp.*, No. CV 13-5802 PA (EX), 2013 WL 12113412, at *5 (C.D. Cal. Aug. 16, 2013) (quoting Rule 8); Fed. R. Civ. P. 12 ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading"). Courts—including the

---

[11] *See also Harris v. comScore, Inc.*, 292 F.R.D. 579, 585 (N.D. Ill. 2013) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action.") (citation and quotation marks omitted); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) (same).

1   Ninth Circuit—have repeatedly held that failure to raise an arbitration defense in a

2   timely fashion constitutes waiver. *Martin v. Yasuda*, 829 F.3d 1118, 1124-28 (9th

3   Cir. 2016) (collecting cases holding that parties litigating at least 9-18 months

4   before moving to compel arbitration prejudiced the opposing party and waived any

5   right to arbitration); *see also Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698

6   (9th Cir. 1986) ("the interest of justice would be served . . . [with] a bright line

7   rule . . . that waiver of arbitration will be found as a matter of law unless the party

8   claiming arbitration asserts that right in his answer.") (concurring op.)

9        Here, DIRECTV's answer did not raise any arbitration defense.  In over five

10  years of litigation, DIRECTV never sought to enforce its arbitration clause.  The

11  reason is simple:  DIRECTV believes the presence of persons potentially subject to

12  an arbitration clause gives it a strategic advantage.  DIRECTV used its arbitration

13  clause as a shield to successfully avoid further class discovery, as Magistrate Judge

14  Eick relied upon the arbitration clause to deny such classwide discovery.  *See* Dkt.

15  No. 196.  And here, DIRECTV has employed the same tactic to oppose class

16  certification, claiming that the arbitration clause presents "individualized issues,"

17  while never seeking to enforce that clause.  For over five years, DIRECTV took full

18  advantage of its presence in federal court to move to strike class allegations, avoid

19  class discovery, stay this action for years under the primary jurisdiction doctrine,

20  and, now, attempt to defeat class certification.  *See* Hutchinson Decl., ¶¶ 37-47.

21      DIRECTV now claims that it should receive leave to amend its answer.  Opp.

22  at 9 n.5.  But, DIRECTV has not filed any motion to amend its answer, nor has it

23  cited any case allowing leave to amend to add an untimely arbitration defense after

24  five years of litigation.  No cause exists for such amendment.  Plaintiff filed this

25  case over five years ago.  DIRECTV chose not to assert any arbitration defense,

26  even though it was aware of the potential issue years ago.

27      DIRECTV cannot amend its answer and succeed on a motion to compel

28  arbitration because it has waived its right to arbitrate.  A party waives the right to

- 19 -

arbitrate where it: (1) has knowledge of an existing right to compel arbitration; (2) acts inconsistently with that right; and (3) prejudices the party opposing arbitration by such inconsistent acts. *Martin*, 829 F.3d at 1124-28. Here, DIRECTV obviously had knowledge of its arbitration clause and mentioned it in court filings as early as October 2013. *See* Dkt. No. 125. DIRECTV acted inconsistently with that right by litigating this matter in federal court for over five years, seeking every advantage from its presence in federal court. *See Martin*, 829 F.3d at 1125 (defendants act inconsistent with right to arbitrate when they "choose[] to delay [their] right to compel arbitration by actively litigating [their] case to take advantage of being in federal court"). Plaintiff and the proposed Class have been prejudiced by DIRECTV's actions—most significantly by the lengthy ligation and stay that would not have been present in arbitration. *Id.* at 1127 (finding that "the plaintiffs here easily meet the prejudice requirement" by "[s]pending a lengthy amount of time litigating in the more complex federal court" because "arbitration is designed to provide a simpler and more expeditious system of resolving certain types of disputes").

### 3.  In the Alternative, Common Evidence Regarding Arbitration Supports a Finding of Predominance

DIRECTV has form arbitration agreements. They do not vary by customer. Courts repeatedly hold the applicability of such form documents can be decided on a group basis. *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015) ("the presence of an arbitration clause does not create a predominance of individual issues") (collecting cases and certifying consumer class action). Indeed, DIRECTV's *own brief* acknowledges that, if a Class is certified, the Court may "conclude [whether or not] the arbitration clause applies to all DIRECTV customers" based on the plain language of the arbitration clause. Opp. at 10; *see also Gamble v. New England Auto Fin., Inc.*, No. 17-15343, 2018 WL 2446607, at *2 (11th Cir. May 31, 2018) (per curiam) (holding, based on the plain language of

the arbitration clause, that TCPA claims fall outside its scope); *Wagner v. Discover Bank*, No. 12-CV-02786, 2014 WL 128372, at *5 (D. Colo. Jan. 13, 2014) (same).

The cases cited by DIRECTV, in contrast, did not involve a single form arbitration agreement that applied to all of the defendants' customers. *Cf. Pablo v. ServiceMaster Glob. Holdings Inc.*, No. C 08-03894 SI, 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011) (noting the presence of "numerous arbitration agreements" that would require "significant portion of this litigation would be devoted to discovering which class members signed such agreements"); *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 611 (S.D. Cal. 2015) (noting the presence of eight template agreements that "include a significant difference," an opt out provision that created "uncertainty" and required individualized determinations regarding "whether students are bound by the arbitration provision or whether they opted out"). In fact, these cases reiterated the general rule that "class certification should not be denied merely because some class members may be subject to the [arbitration] defense." *Guzman*, 305 F.R.D. at 611 (quoting *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 673 (N.D. Cal. 2011)); *Pablo*, 2011 WL 3476473, at *2 (noting that the *Herrera* holding "may well be an appropriate procedure to follow" in less complex cases). DIRECTV claims that the varied arbitration agreements in *TFT-LCD* – which, unlike here, were individually negotiated by sophisticated purchasers of wholesale electronics – involved "individualized issues," Opp. at 10, but fails to acknowledge that, even there, the court *granted* the plaintiffs' class certification motion. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 1753784, at *2 (N.D. Cal. May 9, 2011).

DIRECTV's claim that determining whether each Class member is a DIRECTV customer requires an individualized inquiry is illogical because DIRECTV has a comprehensive database identifying each of its customers. Opp. at 11. Because DIRECTV claims that *all* of its customers are subject to its form arbitration agreement, there cannot be any individualized inquiries.

1  In short, there is no evidence of any individualized issues regarding
2  arbitration.  There is only common evidence that supports class certification.  Even
3  if DIRECTV's arbitration defense were not based on DIRECTV's standardized
4  documents and was "peculiar to some class members," Supreme Court
5  jurisprudence would still support certification, given the predominance of other
6  common issues:

> when 'one or more of the central issues in the action are common to
> the class and can be said to predominate, the action may be considered
> proper under Rule 23(b)(3) even though other important matters will
> have to be tried separately, such as damages or some affirmative
> defenses peculiar to some individual class members.'

12  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations
13  omitted).[12]  Here, common issues predominate over any individualized issues.

### 4.  **DIRECTV's Arbitration Defense Is Inapplicable Because It Does Not Apply to Plaintiff.**

16  Plaintiff may represent a class including persons with potential arbitration
17  agreements.  *See, e.g*, *Bickerstaff v. SunTrust Bank*, 788 S.E.2d 787, 791 (Ga.
18  2016), *cert. denied*, 137 S. Ct. 571 (2016).  DIRECTV tries to distinguish
19  *Bickerstaff* by arguing that it "aris[es] under Georgia law."  But, it analyzed
20  "decisions of the federal courts interpreting and applying Rule 23."  *Id.* at 791.

21  Under Rule 23, Plaintiff can represent *all* absent class members for purposes
22  of determining DIRECTV's liability.  *See* Fed. R. Civ. P. 23(c)(4) ("When
23  appropriate, an action may be brought or maintained as a class action with respect
24  to particular issues.").  An arbitration agreement does not in any way affect
25  substantive rights; it is simply a type of forum selection clause that limits where
26  individuals may assert their claims.  *See, e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds*

---

27  [12] Any absent class members with unique defenses to arbitration could also opt out
28  after receiving class notice.

*Int'l Corp.*, 559 U.S. 662, 698 (1974).  DIRECTV's pre-merger arbitration clause is similarly limited and addresses only "any Claim either of us asserts."  Opp. at 8 n.4.[13]  Absent class members are not asserting any claims. Therefore, nothing prevents Plaintiff from representing absent Class members in a class proceeding. *Bickerstaff*, 788 S.E.2d at 793 ("reject[ing] [defendant's] assertion that permitting [plaintiff's] rejection of arbitration to be applied to other [class members] illegally permits [plaintiff] to abridge the contractual rights of others").

The class action waiver clause is likewise expressly limited and purports to preclude only "join[ing] or consolidating claims *in arbitration*."  *See supra* footnote 13.  Thus, by its express terms, it does not apply in a lawsuit *outside of arbitration*. *See also Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (2005) (holding that class action waivers are unconscionable), *abrogated in part by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 201 (Cal. 2013) ("[S]tate-law rules that do not interfere with fundamental attributes of arbitration do not implicate *Concepcion*'s limits on state unconscionability rules.") (citations and quotations omitted); *Meyer v. Kalanick*, 185 F. Supp. 3d 448, 457 (S.D.N.Y. 2016) (applying California law and holding that "class action waivers are unconscionable in the circumstances discussed above, *except in the case of an arbitration proceeding*") (emphasis added).[14]

## VIII. TRIAL OF THE PROPOSED CLASSES' CLAIMS IS MANAGEABLE AND SUPERIOR TO INDIVIDUAL ACTIONS

"Questions of manageability involve the weighing of the judicial efficiency or benefits the class action will produce against the corresponding administrative

---

[13] Martin Decl., Ex. B at 15, Ex. C at 20; Ex. D at 23; Ex. E at 26; Ex. F at 29; Ex. G at 31; Ex. H at 33; Ex. I at 42; Ex. J at 46; Ex. K at 48; Ex. L at 50.

[14] Uber later intervened in the *Kalanick* case and moved to compel arbitration. *Meyer v. Kalanick*, 200 F. Supp. 3d 408 (S.D.N.Y. 2016), *rev'd* 868 F.3d 66 (2d Cir. 2017).  That subsequent proceeding has no bearing on *Meyer*'s analysis of a class action waiver outside of the arbitration context, which remains good law.

complexity that may arise." *Schaffer v. Litton Loan Servicing, LP*, No. 05-07673, 2009 WL 9436302, at *5 (C.D. Cal. Jan. 20, 2009) (quotation marks and alteration omitted)). "Under this comparative framework, refusing to certify on manageability grounds alone should be the last resort." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). "Courts are generally reluctant to deny class certification based on speculative problems with case management." *Klay v. Humana*, 382 F.3d 1241, 1272-73 (11th Cir. 2004) (citation omitted).

"[T]he Supreme Court has specifically contemplated plaintiffs bringing TCPA cases as class actions." *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 519 (C.D. Cal. 2017). DIRECTV's naked assertion that the case is not manageable does not pass muster. Even though discovery is ongoing, the types of common proof already in the record can be presented at a trial focused solely upon common questions of liability. Plaintiffs will demonstrate defendant's liability by using common, class-wide evidence showing that: (1) DIRECTV and its debt collectors made prerecorded telephone calls; (2) to Class members' cellular telephones; (3) without their prior express consent. Common evidence can be presented in a class trial: call data (through the parties' experts) and company testimony and documents. Statutory damages can be determined by simply adding the number of calls to each Class member.

DIRECTV's assertion that providing notice pursuant to 42 U.S.C. § 338 will present a manageability issue is odd since, as DIRECTV well knows, it already provided such notice in another TCPA class action. *See Cordoba v. DirecTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017) (certifying two nationwide TCPA classes challenging DIRECTV telemarketing calls). DIRECTV can do the same thing here. Indeed, class notice is required. *See* Fed. R. Civ. P. 23(c)(2)(B) ("the court must direct to class members the best notice that is practicable under the circumstances").

A class trial is the best method to adjudicate this case fairly and efficiently— and vastly superior to individual litigation. *See Agne v. Papa John's Int'l*, 286

1   F.R.D. 559, 571 (W.D. Wash. 2012) ($500 "is not sufficient to compensate the

2   average consumer for the time and effort that would be involved in bringing a small

3   claims action.").  These claims should be presented once, in this Court, rather than

4   burdening multiple courts with the same company-wide proof in many cases.

## IX.   APPOINTMENT OF CLASS COUNSEL IS APPROPRIATE

6        DIRECTV does not challenge the appointment of Plaintiff's Counsel as Class

7   Counsel on behalf of the Class and Subclass.

## X.   IN THE ALTERNATIVE, CLASS DISCOVERY SHOULD PROCEED

9        Plaintiff meets all the requirements for Rule 23 certification of the Class and

10  Subclass.  However, if the Court requires more information to make that

11  determination, Magistrate Judge Eick's ruling should be overruled and Plaintiffs

12  should receive call data and basic policy, compliance, and investigatory documents

13  to determine whether DIRECTV knowingly or willfully violated the TCPA.  *See*

14  Opening Br. at 20-25 (citing 15 cases ordering the discovery sought here).

15  DIRECTV did not address any of the cases mandating such production.  Rather,

16  DIRECTV cites a single case, which confirms that "the outbound dial list is

17  relevant to the issue of commonality."  *See Gusman v. Comcast Corp.*, 298 F.R.D.

18  592 (S.D. Cal. 2014) (declining to order to production only because, unlike here the

19  discovery could be "obtained from some other source that is more convenient, less

20  burdensome, or less expensive").  Because the discovery is relevant, and DIRECTV

21  has not met the requirement to show undue burden, class discovery should proceed.

## XI.   CONCLUSION

23       For the foregoing reasons, Plaintiff's motion for class certification of the

24  Class and Subclass should be granted; the Plaintiff, Ms. Brown, should be

25  appointed as Class Representative; and Plaintiff's counsel Lieff Cabraser

26  Heimann & Bernstein, LLP; Meyer Wilson Co., LPA; and Burke Law Offices, LLC

27  should each be appointed Class Counsel.

28

1    Dated: July 6, 2018                    Respectfully submitted,

2
                                            By:  /s/ *Daniel M. Hutchinson*
3                                                Daniel M. Hutchinson

4
                                            LIEFF CABRASER, HEIMANN &
5                                           BERNSTEIN, LLP
                                            Jonathan D. Selbin (SBN 170222)
6                                           jselbin@lchb.com
                                            Douglas I. Cuthbertson (admitted *pro hac*
7                                           *vice*)
                                            dcuthbertson@lchb.com
8                                           Sean A. Petterson (admitted *pro hac vice*)
                                            spetterson@lchb.com
9                                           250 Hudson Street, 8th Floor
                                            New York, NY 10013
10                                          Telephone:  (212) 355-9500
                                            Facsimile:   (212) 355-9592
11
                                            LIEFF CABRASER, HEIMANN &
12                                          BERNSTEIN, LLP
                                            Daniel M. Hutchinson (SBN 239458)
13                                          dhutchinson@lchb.com
                                            275 Battery Street, 29th Floor
14                                          San Francisco, CA 94111-3339
                                            Telephone:  (415) 956-1000
15                                          Facsimile:   (415) 956-1008

16                                          BURKE LAW OFFICES, LLC
                                            Alexander H. Burke (admitted *pro hac vice*)
17                                          ABurke@BurkeLawLLC.com
                                            155 N. Michigan Ave. Suite 9020
18                                          Chicago, IL 60601
                                            Telephone: (312) 729-5288
19                                          Facsimile:   (312) 729-5289

20                                          MEYER WILSON CO., LPA
                                            Matthew R. Wilson (SBN 290473)
21                                          mwilson@meyerwilson.com
                                            Michael J. Boyle, Jr. (SBN 258560)
22                                          mboyle@meyerwilson.com
                                            1320 Dublin Road, Ste. 100
23                                          Columbus, OH 43215
                                            Telephone:  (614) 224-6000
24                                          Facsimile:   (614) 224-6066

25

26

27

28

1    PARISI & HAVENS LLP
     David C. Parisi (SBN 162248)
2    dcparisi@parisihavens.com
     212 Marine Street, Unit 100
3    Santa Monica, CA 90405
     Telephone:   (818) 990-1299
4    Facsimile:   (818) 501-7852

5    HEALEY LAW, LLC
     Robert T. Healey (admitted *pro hac vice*)
6    bob@healeylawllc.com
     640 Cepi Drive, Suite A
7    Chesterfield, MO 63005
     Telephone:  (636) 536-5175
8    Facsimile:   (636) 590-2882

9    *Attorneys for Plaintiff and the Proposed*
     *Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 27 -